UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case Number: 9:24-cv-80702-RLR

RICHARD MAROUS, on behalf of all others similarly situated,

Plaintiff,

vs.

NOW OPTICS HOLDINGS, LLC d/b/a STANTON OPTICAL,

Defendant.
_______________________________________ /

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT**

Defendant, Now Optics Holdings, LLC ("Now Optics"), by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7.1 respectfully files it Response to Plaintiff's Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment and states the following:

## I. INTRODUCTION

Now Optics, through its subsidiaries, operates hundreds of retail eye care locations across the country. Prior to the fourth quarter of 2023, these stores were branded either My Eyelab or Stanton Optical. At the end of 2023, the My Eyelab stores were rebranded to Stanton Optical. As part of that brand transition, Now Optics sent a set of four text messages to inform and remind its customers that the brand was transitioning. Now Optics sent these messages in an effort to avoid the confusion that customers might face when they no longer saw their former My Eyelab location.

Plaintiff, who was a My Eyelab customer and voluntarily provided his phone number, received these transition messages in addition to several other text messages reminding him about

the expiration of his prescriptions and overdue eye exams. After receiving eight (8) text messages, Plaintiff replied "STOP" and Defendant removed from its list of text message recipients.

Now, Plaintiff, despite having voluntarily provided his phone number and never revoking consent, claims that Defendant violated the Do-Not-Call provisions of the Telephone Consumer Protection Act ("TCPA") when it sent the brand transition text messages. Not so.

As demonstrated below, the text messages sent to the Plaintiff are not considered "solicitations" under the TCPA and, as a result the Do-Not-Call provisions do not apply to those text messages. The evidence demonstrates, unequivocally, that the messages were sent solely for the purposes of informing customers about the transition in an effort to avoid confusion. Furthermore, Plaintiff consented to receiving these text messages by voluntarily providing his phone number for transactional communications. Thus, Plaintiff's request for summary judgment is not appropriate. To the contrary, this Court should grant summary judgment in favor of the Defendant as this issue is dispositive.

Plaintiff also takes aim at several of Defendant's affirmative defenses; however, summary judgment is not appropriate as to Defendant's affirmative defenses because the evidence, as shown below, presents genuine issue of material fact that precludes summary judgment on those issues.

## II. ARGUMENT

### A. Summary Judgment Standard

Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Rubinstein v. Keshet Inter Vivos Tr.*, 2019 WL 4739402, at *4 (S.D. Fla. July 10, 2019). The inquiry, as is the inquiry for a directed verdict, is "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). When determining a motion for summary judgment, "[a]ll the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party." *Wiand v. Waxenberg*, 611 F. Supp. 2d 1299, 1308 (M.D. Fla. 2009). However, if more than one inference can be drawn from the fact, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment. *Allen v. Bd. Of Pub. Educ.*, 495 F. 3d 1306, 1315 (11th Cir. 2007).

**B. The Subject Text Messages are Not Solicitations**

The text messages sent to the Plaintiff by Now Optics do not constitute "telephone solicitations" and, thus, do not violate the TCPA. Now Optics' text messages to the Plaintiff could be split into two categories: (1) brand transition messages and (2) overdue exam reminders. As demonstrated below in detail, these messages were sent for informational purposes and not to encourage the sale of Defendant's goods or services. Furthermore, the inclusion of a link to the Stanton Optical website did not convert these messages into solicitations for many reasons, including the fact that Now Optics does not sell eye exams. Out of the eight (8) text messages sent to Plaintiff, at most, only one text message could constitute a solicitation as that term has been defined by the TCPA and applicable regulations. However, sending one solicitation message does not trigger liability under the Do-Not-Call provisions of the TCPA. *See* 47 U.S.C. § 227(c).

Plaintiff's cause of action alleges a violation of 47 C.F.R. § 64.1200(c), which states that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations." The term solicitation is defined in this

regulation as follows, "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services . . . ." 47 C.F.R. § 64.1200(f). In a similar context, the Eleventh Circuit has ruled that faxes that do not "draw attention to the '**commercial availability or quality**'" of a product to promote its sale do not qualify as solicitations under the TCPA. *See Florence Endocrine Clinic, PLLC v. Arriva Med., LLC*, 858 F.3d 1362, 1367 (11th Cir. 2017) (holding that faxes requesting information from physicians were not advertisements under the TCPA) (emphasis supplied). Under these circumstances, even dismissal of a complaint is appropriate. *See Mackinnon v. HOF'S Hut Restaurants, Inc.*, 2017 WL 5754308 (E.D. Cal. Nov. 28, 2017) (dismissing complaint with prejudice because text messages confirming dinner reservation were not advertisements); *Daniel v. Five Stars Loyalty, Inc.*, 2015 WL 7454260(N. D. Cal. Nov. 24, 2015)(finding that text message regarding "free pts" to be redeemed on Defendant's website did not constitute advertising or telemarketing since it just informed plaintiff that joining a rewards program would result in free rewards points); *see also Hulce v. Zipongo, Inc.*, 2024 WL 1251108, at *6 (E.D. Wis. Mar. 18, 2024) ("In sum, because the calls and text messages at issue did not encourage the purchase of any good or service, they were not telephone solicitations sent in violation of the TCPA's do-not-call regulation.").

This case involves eight (8) text messages.[1] Plaintiff has focused on four of those text messages in his Motion for Summary Judgment. *See* Plaintiff's Motion for Summary Judgment [DE 81] at 3-4. None of the text messages at issue can be considered solicitations because they do

[1] In its Motion for Class Certification and his Motion for Summary Judgment, Plaintiff appears to have abandoned his claims regarding all but four of the text messages. However, because Defendant is cross-moving for summary judgment on all of the messages, Defendant is addressing all of the text messages in this paper.

not draw any attention to the commercial availability or quality of a particular good or service; rather, the text messages either remind the Plaintiff about his overdue eye exam or inform Plaintiff that the branding for the store he previously attended is changing or has changed. *See* Defendant's Statement of Material Facts ("Def. SOMF") [DE 88] at ¶ 7 ("We wanted to make sure that all My Eyelab customers knew that this location store was now going to be a Stanton Optical store. So, they would know where to go to the next time they needed services from their local optical store."). These text messages are purely informational and were not sent with the intention to sell anything. *Id.*

*i. Brand Transition Messages*

As part of its transition of some stores from the My Eyelab brand to the Stanton Optical brand, Now Optics' marketing department coordinated an information campaign involving four messages to inform its customers about the transition. *Id.* at ¶ 6. The messages informed the customers about the transition before, during, and after the transition. *Id.* Now Optics sent these messages in order to inform customers about the transition and avoid confusion as much as possible. *Id.* at ¶ 7. This purpose is evident on the face of the messages. For example, the October 9, 2023, message states:

> ATTN: Your My Eyelab is converting to its sister brand: Stanton Optical! Same location team, with faster service & better value. Questions? Call 800-305-9577.

*See* First Amended Complaint at ¶ 15.

Notably, there's absolutely no description of any specific good or service. Thus, on their face, these messages do not constitute solicitations. *Florence Endocrine Clinic, PLLC,* 858 F.3d at 1367 (11th Cir. 2017).

*ii. Overdue Eye Exam*

In addition to the brand transition messages, Plaintiff received three (3) messages

reminding him that he was overdue for an eye exam. *See* First Amended Complaint at ¶ 15. The first of these three messages reads as follows:

> Stanton Optical: Time is running out! Independent eye doctors are available. Schedule your overdue eye exam NOW . . .

*Id.* As with the brand transition messages, on their face these overdue eye exam messages are not solicitations. They do not describe any particular good or service. Moreover, the FTC has determined that similar messages do not constitute unsolicited advertisements under the TCPA. *See Latner v. Mount Sinai Health Sys., Inc., No. 16 CIV. 683 (AKH)*, 2016 WL 10571897, at *3 (S.D.N.Y. Dec. 14, 2016), *aff'd sub nom. Latner v. Mount Sinai Health Sys., Inc*, 879 F.3d 52 (2d Cir. 2018), *as amended (Jan. 9, 2018)* ("[T]he Commission finds the calls at issue here are intended to communicate health care-related information rather than to offer property, goods, or services and conclude that such calls are not unsolicited advertisements.") (*quoting In re: Telephone Consumer Protection Act of 1991*, 77 Fed. Reg. 34233, ¶¶ 46 (June 11, 2012)).

*iii. Plaintiff's Arguments*

Plaintiff argues that the four branding transition text messages here constitute solicitations, either on their own or as "dual purpose" messages. As demonstrated above, the text messages at issue do not describe Now Optics' goods or services and, as a result, do not qualify as solicitations under the TCPA. However, the undisputed facts in this case further support Defendant's position.

The law is clear that courts must consider both context and content of the text message when determining whether a message is a solicitation. *Newhart v. Quicken Loans Inc.*, No. 9:15-CV-81250, 2016 WL 7118998, at *4 (S.D. Fla. Oct. 12, 2016) ("[T]o determine the purpose of each call (and necessary level of prior express consent), the trier of fact must evaluate evidence (testimony, recordings, and call records and notes) about the content of each call and the events that preceded it—a need inconsistent with class treatment."). Furthermore, it is the purpose of each

individual message, rather than an overall campaign, that must be considered. *Id.* at *3 ("The FCC's regulation refers to the 'purpose' of each singular call and contains no reference to the purpose of the overall campaign."). Thus, the fact that the messages were included in an overall campaign that may have a marketing component is not material. *Id.* Finally, contrary to Plaintiff's assertion, on summary judgment the Court must consider evidence of the purpose of each text message, including testimony and documentary evidence from the Defendant. *Id.*[2]

Now Optics sent these messages to avoid confusion because customers could easily believe that My Eyelab went out of business. *See* Def. SOMF at ¶ 7. Customer confusion was a very real concern as demonstrated by the marketing department's internal communications. For example, prior to the transition text messages, Lukana Justin wrote in an email,

[redacted]

*See* Def. SOMF at ¶ 10.

On October 14, 2023, [redacted]. *See* Def. SOMF at ¶ 11.

[redacted]. *Id.* Similarly, [redacted] Def. SOMF at ¶ 12 [redacted]. Even Plaintiff demonstrated confusion about the

[2] In effort to avoid the consideration of Defendant's evidence, Plaintiff cites to cases applying the motion to dismiss standard, which does not apply here.

brands. Def. SOMF at ¶ 9 ("I don't remember if My Eyelab ever sent me any text messages, but Stanton Optical sent me text messages.").

Furthermore, Plaintiff's position that the inclusion of a link where the recipient could book an eye exam converted the subject text messages to solicitations or "dual purpose" text messages is wrong for various reasons. First, to the extent that the Plaintiff refers to the promotion of free eye exams on the Stanton Optical website, as stated *infra*, there is no such promotion on the page that is linked in the text messages. In any event, the promotion of free services does not constitute a solicitation under the statute. *See e.g., Five Stars Loyalty, Inc.*, 2015 WL 7454260, at *5–6 (N.D. Cal. Nov. 24, 2015) (granting dismissal of plaintiff's TCPA claims based on a text message stating, "Welcome to Five Stars, the rewards program of Flame Broiler. Reply with your email to finish registering and get free pts! Text STOP to unsubscribe."); *Morris v. Unitedhealthcare Ins. Co.*, 2016 WL 7115973 (E.D. Tex. Nov. 9, 2016) (recommending summary judgment be granted on plaintiff's TCPA claims because defendant offered "in-home medical examination ... to members who already have coverage for [ ] no-additional-cost benefit through a qualified plan"); *Trujillo v. Free Energy Savs. Co., LLC*, 2020 WL 7768722 (C.D. Cal. Dec. 21, 2020) (granting summary judgment on plaintiff's TCPA claims because text messages offering free weatherization services were not telephonic solicitations).

Second, it is undisputed that Now Optics does not sell or offer eye exams; rather, the eye exams are offered and performed at Stanton Optical locations by independent physicians. Def. SOMF at ¶ 1. Thus, Plaintiff cannot make a credible argument that the purpose for sending these messages was to sell a service that Now Optics does not provide.

Third, the inclusion of this link to the location search page on the Stanton Optical website is far too attenuated from the actual purpose of the message to convert them into "dual purpose"

messages. *See Edelsberg v. Vroom, Inc.*, No. 16-CV-62734, 2018 WL 1509135, at *6 (S.D. Fla. Mar. 27, 2018) ("[C]ommunications that merely include collateral opportunities to purchase something from the caller do not constitute dual purpose messages where the opportunity to purchase something from the caller is too attenuated from the purpose of the initial communication."); *see also Smith v. Blue Shield of Cal. Life & Health Ins. Co.*, 228 F. Supp. 3d 1056, 1067 (C.D. Cal. Jan. 13, 2017) ("The mere fact that parts of [a defendant's] website contain[ ] the capability of allowing consumers to engage in commerce does not transform any message including its homepage into telemarketing or advertising."); *Five Stars Loyalty, Inc.*, 2015 WL 7454260, at *4 (N.D. Cal. Nov. 24, 2015) (finding that even though the defendant's text "could result in an increase in the chances of [the plaintiff] making future purchases" from the defendant, "that purpose is simply too attenuated to make the text telemarketing within the meaning of 47 C.F.R. § 64.1200(f)(12)"); *Aderhold v. Car2go N.A., LLC*, No. 13-0489, 2014 WL 794802, at *9 (W.D. Wash. Feb. 27, 2014) (finding that a text message instructing the plaintiff to enter an activation code on the defendant's website was not telemarketing even though the plaintiff "could, after choices of his own making, divert himself from the registration process to car2go marketing"). The reason that a link was included as part of these transition messages was because the domain changed from myeyelab.com to stantonoptical.com and it was necessary to inform customers of the new website. Def. SOMF at ¶ 3. Moreover, the links in the text messages direct the Plaintiff to the location search page which does not include any advertisements or descriptions of any products or services.[3]

---

[3] The shortened links in the subject text messages still function and direct the recipient to the search page for Stanton Optical Stores. Stanton Optical, www. Stantonoptical.com, https://www.stantonoptical.com/schedule-exam/?utm_source=Emarsys&utm_medium=SMS&utm_campaign=MEL_SOPhase3Transition (last visited Mar. 7, 2025). Notably, there is no description of any products or services offered by

*Smith v. Blue Shield of Cal. Life & Health Ins. Co.*, 228 F. Supp. 3d at 1058-59, is particularly on point. There, a health insurer called Plaintiff (an insured) with a message informing her about changes to her health plan and indicating that she could find out more at the defendant's website. *Id.* Plaintiff argued that the call was an advertisement because the call was discussed "as part of a retention strategy," the script was written by the marketing team, and it was initially drafted to include the text "We want to keep you covered." *Id.* at 1065-66. In other words, as is the case here, Plaintiff argued that the message was dual purpose because there was a goal to retain her as a customer. The court rejected plaintiff's arguments noting that:

> The content of the call also contrasts starkly with messages that courts have deemed to be telemarketing or advertising. Unlike the call in question here, those messages unequivocally evoke or reference commerce. *See, e.g., Larson v. Harman Mgmt. Corp.*, No. 116CV00219DADSKO, 2016 WL 6298528, at *1, *3–4 (E.D. Cal. Oct. 27, 2016) ("Float into A & W for a 99 cent Reg. Sized Root Beer Float! Limit 1."); *Drew v. Lexington Consumer Advocacy, LLC*, No. 16-CV-00200-LB, 2016 WL 1559717, at *1, *6 (N.D. Cal. Apr. 18, 2016) ("Struggling to get ahead but your cash advances holding you back? We can make them go away ... call 4753291921 for info."); *Chesbro*, 705 F.3d at 918 (calls urging recipient to "redeem" Reward Zone points); *Consumer Prot. Corp. v. Neo–Tech News*, No. CV 08-1983-PHX-JAT, 2009 WL 2132694, at *1 (D. Ariz. July 16, 2009) (fax listing the share price of JYTO [a stock] and stating that "JYTO IS ALREADY A WINNER!" and is a "Strong Buy"); *Meyer v. Bebe Stores, Inc.*, No. 14-CV-00267-YGR, 2015 WL 431148, at *3 (N.D. Cal. Feb. 2, 2015) (message offering "10% OFF reg-price in-store/online").

*Id.*

Additionally, the court rejected the plaintiff's contention that the inclusion of defendant's website converted the message into telemarketing. *Id.* at 1067 ("The mere fact that parts of Blue Shield's website contains the capability of allowing consumers to engage in commerce does not transform any message including its homepage into telemarketing or advertising.") (citing *Aderhold*, No. C13-489RAJ, 2014 WL 794802, at *9).

---

Defendant on the page that is linked.

Here, similar to the insurer in *Smith*, Defendant sent text messages to its customers to inform them that their local store would be changing, namely, all branding would change from My Eyelab to Stanton Optical. *See* Def. SOMF at ¶ 7:

> We wanted to make sure that all My Eyelab customers knew that this location store was now going to be a Stanton Optical store. So, they would know where to go to the next time they needed services from their local optical store.

Thus, there is no credible argument that these messages were sent for solicitation purposes.

Furthermore, as noted in *Smith*, the inclusion of a link to Stanton Optical's website did not convert the messages to solicitations as argued by the Plaintiff.

Plaintiff also argues that the inclusion of these messages in a "remarketing" campaign is evidence of their solicitous purpose. This contradicts the evidence proving that there was an effort to avoid any solicitous language in these messages. First, Defendant did not increase its sales goals in the fourth quarter of 2023 due to the brand transition, and Ms. Lukana advised a franchisee [redacted]. Def. SOMF at ¶ 13. In other words, Defendant did not expect any immediate increase in business as a result of the transition.

Second, while determining the specific text to be included in the initial message about the transition, a draft was submitted that had promotional language. *See* Exhibit B to Def. SOMF at p. 3:

> [redacted]

Consistent with her testimony that these messages were not intended to be promotional, Ms. Justin edited the proposed message to <u>remove the last sentence containing promotional language</u> as follows:

> [redacted]

[redacted]

*Id.*

Thus, the evidence demonstrates that the transition messages were not sent with the intention of soliciting sales or promoting Stanton Optical's goods or services; rather, the messages were sent simply to inform customers about the brand transition. The only evidence demonstrates that Defendant intended that the messages should not contain solicitations or promotions.

For all of these reasons, the undisputed material facts in this case demonstrate that the text messages at issue do not constitute solicitations under the TCPA. There is no genuine issue of material fact as to that issue, and Defendant is entitled to summary judgment as a matter of law. Thus, the Court should deny Plaintiff's Motion for Summary Judgment and enter summary judgment in favor of the Defendant, finding that the text messages alleged in paragraph 15 of the First Amended Complaint do not constitute telephone solicitations under the TCPA.

**C. The Residential Line Issue was not Resolved by Stipulation**

Plaintiff continues to repeat his meritless argument that the parties' stipulation as to an administrative matter in the event of class certification somehow waived Defendant's right to rebut the presumption afforded to Plaintiff by registering his phone number on the Do-Not-Call list. The Parties did stipulate with respect to the administrative task of determining whether a phone number was on the Do-Not-Call list, and defendant did so to avoid the disclosure of personally identifying information of the class members. *See* First Amended Joint Stipulation Regarding Numerosity and Personally Identifying Information Concerning Called Persons ("Stipulation") [DE 54]. The relevant language in the stipulation is the following:

> The parties further stipulate, for the purposes of this case only, that in the event a class is certified and notices must be sent out, determining whether a cellular telephone number is residential is an administrative task that will be performed by the class administrator by reviewing whether the telephone number is registered on

the National Do-Not-Call Registry.

Stipulation [DE 54] at ¶ 4. Notably, this stipulation only applies in the event a class is certified and notices must be sent out. *Id*. Thus, Plaintiff's attempt to rely on this stipulation to avoid a proper defense before the class has been certified should be rejected by the Court.

Furthermore, the law is clear that registration on the Do-Not-Call list only affords a rebuttable presumption that a phone number is residential. *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1225 (9th Cir. 2022) (explaining that "defendants may rebut the presumption [that a number is residential] and show that the cell phone is a business line."). In this case, the Plaintiff testified to using his phone for a business purpose. Plaintiff's Statement of Material Facts [DE 80] at ¶ 29; Def. SOMF at ¶ 14. He also lists his phone number for his photography business on Google. *Id*. The evidence demonstrates that the phone is used for a business purpose and, as a result, there is a genuine issue of material fact that precludes summary judgment is not appropriate on this issue.

Plaintiff's cited cases are inapposite. None of the cases cited by Plaintiff stand for the proposition that a phone used for a home-based business is deemed residential. Rather, the cases permit the review of evidence to rebut the presumption that is afforded by registration on the Do-Not-Call list or are otherwise distinguishable. Two of the cases cited by plaintiff were decided at the motion to dismiss stage, where pleadings are to be taken as true. *See Clements v. Porch.com, Inc.*, No. 1:20-CV-00003-SLG, 2020 WL 5739591, at *6 (D. Alaska Sept. 24, 2020) (motion to dismiss granted); *Escano v. RCI LLC*, No. CV 22-360 DHU/GJF, 2022 WL 17251273, at *21 (D.N.M. Nov. 28, 2022), report and recommendation adopted, No. 222CV00360DHUGJF, 2023 WL 34525 (D.N.M. Jan. 4, 2023) (motion to dismiss granted in part and denied in part). Plaintiff also relies on *Mantha v. QuoteWizard.com, LLC*, for the proposition that Defendant's business is directed towards consumers and, thus, it sends messages to residential customers. 347 F.R.D. 376,

398 (D. Mass. 2024). *Mantha* does not support that position. First, *Mantha* is not a summary judgment case; it is an order on class certification. There, the Court found that the defendant had not presented any evidence that the determination of residential vs. commercial would result in mini-trials, whereas the plaintiff presented evidence that the determination could be made on a class-wide basis. *Id.* Here, there is evidence in the Plaintiff's own case that demonstrates his phone number was not residential, an issue that should be presented to the jury. Thus, summary judgment is simply not appropriate.

**D. Plaintiffs and Class Members Provided Consent and did not Revoke it**

Plaintiff argues that summary judgment is appropriate as to Defendant's second (failure to respond "STOP") and fifth (consent) affirmative defenses. Because these two defenses are related, Defendant is addressing them together.

***i. Consent***

Plaintiff has argued that under the TCPA consent must be in writing, but that is simply a misstatement of the law. Courts have found that a lower standard of consent is necessary when the text messages at issue do not involve an advertisement or telemarketing. *See An Phan v. Agoda Co. Pte. Ltd.*, 351 F. Supp. 3d 1257, 1262 (N.D. Cal. 2018), *aff'd sub nom. Phan v. Agoda Co. Pte. Ltd.*, 798 Fed. Appx. 157 (9th Cir. 2020) ("If the text message does not contain advertising and is not telemarketing, the requirements for prior express consent are less stringent. A consumer must only 'knowingly' agree to receive such messages by providing his phone number for the reasons served by the message . . . ."); *see also Moskowitz v. Am. Sav. Bank, F.S.B.*, No. CV 17-00299 HG-RT, 2020 WL 61576, at *6 (D. Haw. Jan. 6, 2020), *aff'd*, 37 F.4th 538 (9th Cir. 2022) ("The text messages that American Savings Bank sent to Plaintiff's cellular telephone do not constitute either 'advertising' or 'telemarketing' such that prior express written consent from Plaintiff was

[not] required.”).

Defendant has always maintained the position that all but one of the text messages at issue are informational/transactional. *See* Defendant’s Response to Plaintiff’s First Set of Interrogatories attached hereto as **Exhibit A** at 1. Furthermore, all of the phone numbers that Defendant sent text messages to were voluntarily provided by customers of the Defendant for the purpose of receiving informational/transactional text messages or calls. *Id.* at 5. Plaintiff also voluntarily provided his phone number, thereby consenting. Def. SOMF. at ¶ 15; *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1045 (9th Cir. 2017) (“To aid the FCC’s interpretation of ‘prior express consent’ in its 1992 Order, the FCC cited a House of Representatives report on the TCPA, which stated that when people provide their telephone numbers, ‘the called party has in essence requested the contact by providing the caller with their telephone number for use in *normal business communications*.’”) (emphasis in original).

Thus, Defendant rightfully asserted its defense of consent and the evidence in this case, at the very least, precludes summary judgment in favor of the Plaintiff.

***ii. Revocation of consent***

With respect to the second affirmative defense, the law is clear that a person can revoke consent under the TCPA in a variety of ways, including texting “STOP” to the sender. *See, e.g.*, *Legg v. Voice Media Group, Inc.*, 20 F. Supp. 3d 1370, 1378 (S.D. Fla. 2014) (“A party may revoke consent to receive text messages by sending an “opt-out” text message to the calling party.”). As stated above, all of the recipients that received text messages – including the Plaintiff -- from the Defendant consented by voluntarily providing their phone number for that purpose. Defendant’s second affirmative defense refers to the lack of revocation of this consent, which results in the claims being barred.

Plaintiff has not provided any evidence that consent was revoked for any of the four text messages addressed in the Motion for Summary judgment. Indeed, Plaintiff himself did not revoke consent until after receiving these messages. Def. SOMF at ¶ 15.

Thus, at the very least there is a genuine issue of material fact and the Court should not grant summary judgment on this affirmative defense.

**E. Safe Harbor Defense**

Plaintiff argues that Defendant's violations of the TCPA were intentional, rather than erroneous, and, as a result, the safe harbor provisions of the TCPA, 47 C.F.R. § 64.1200(c)(2)(i), do not apply. Plaintiff seems to ignore the fact that the Complaint lists more than the four text messages he cites in the Motion for Summary Judgment. First, as set forth above, Defendant has always intended and believed that the text messages complained of are informational/transactional and therefore not violative of the TCPA. Second, one of the text messages identified in the Complaint (but not in this Motion), an April 11, 2024 text message, is arguably solicitous and that text message was sent in error. Def. SOMF at ¶ 17.

Thus, summary judgment is not appropriate as to this affirmative defense because the evidence shows that Defendant always intended to comply with the TCPA, and the evidence demonstrates that the April 11, 2024 text message was sent in error.

**F. Defendant's Seventh and Tenth Affirmative Defenses are Sufficient**

Plaintiff takes issue with the sufficiency of Plaintiff's Seventh (defenses under the Act) and Tenth (waiver, estoppel, and ratification), but Plaintiff's objections are untimely and should be rejected by this Court. *See* Fed. R. Civ. P. 12(f)(2). All but one of the cases cited by the Plaintiff involved motions to strike rather than motions for summary judgment. *Sandifer v. Copiah Bank, N.A.*, No. 3:19-CV-623-DPJ-FKB, 2020 WL 854194, at *2 (S.D. Miss. Feb. 20, 2020) (granting a

motion to strike under Rule 12(f); *Galeano v. Elbardi Int'l Mgmt., LLC*, No. 1:20-CV-24017-UU, 2021 WL 8821542, at *4 (S.D. Fla. Feb. 22, 2021) (same); *U.S. Equal Employment Opportunity Comm'n v. O'Reilly Auto. Stores, Inc.*, No. 619CV882ORL31LRH, 2020 WL 13547859, at *8 (M.D. Fla. Jan. 21, 2020), *report and recommendation adopted*, No. 619CV882ORL31LRH, 2020 WL 13547822 (M.D. Fla. Feb. 24, 2020) (same). Thus, by not moving to strike, Plaintiff has waived his objections to the sufficiency of the defenses.

Nevertheless, even if the objection is not waived, the defenses are sufficient. An affirmative defense will be held insufficient as a matter of law only if it appears that the defendant cannot succeed under any set of facts which it could prove. *Equal Employment Opportunity Comm'n v. First Nat'l Bank*, 614 F.2d 1004, 1008 (5th Cir.1980), *cert. denied*, 450 U.S. 917 (1981). To the extent that a defense puts into issue relevant and substantial legal and factual questions, it is "sufficient" and may survive a motion to strike, particularly when there is no showing of prejudice to the movant. *Reyher v. Trans World Airlines, Inc.*, 881 F. Supp. 574, 576 (M.D. Fla. 1995).

Here, the defenses put into issue relevant factual and legal questions. For example, Defendant's seventh affirmative defense raises any available defense under the applicable statute (i.e. the TCPA). As discussed below *infra*, Plaintiff has taken issue with Defendant's assertion of the Established Business Relationship ("EBR") defense, arguing that the defense was not raised and therefore was waived. But Defendant was not required to raise this issue as an affirmative defense because it does not apply to the Plaintiff's individual claim. *Hall v. Marriott Int'l, Inc.*, 344 F.R.D. 247, 269 (S.D. Cal. 2023), *on reconsideration in part*, No. 19CV1715-JO-AHG, 2023 WL 9692466 (S.D. Cal. June 6, 2023) ("Additionally, while a party can waive a defense, it generally does not do so by failing to act with regard to putative, unnamed class members prior to class certification."); *Diamond v. Allstate Ins. Co.*, 91 F.3d 151 (9th Cir. 1996); *see also Standard*

*Fire Ins. Co. v. Knowles*, 568 U.S. 588, 593 (2013) (" '[A] nonnamed class member is [not] a party to the class-action litigation *before the class is certified*' ") (citation omitted) (emphasis in original); *Moser v. Benefytt, Inc.*, 8 F.4th 872, 878 (9th Cir. 2021) (finding that defendant did not waive jurisdictional affirmative defense against absent class members by not moving to dismiss "putative class members who were not then before the court"). Nevertheless, Plaintiff is not prejudiced as he anticipated the assertion of that defense by attempting to build it into the class definition. Thus, thus this defense does raise legal and factual issues with respect to absent class members.

With respect to the defense of waiver, estoppel, or ratification, there is no dispute that Plaintiff received eight text messages and did not revoke consent to receive them until after receipt of the last (eighth) message. Def. SOMF at ¶ 15. This fact alone supports the defenses of waiver, estoppel, or ratification sufficient to preclude summary judgment. Furthermore, Plaintiff does not claim that these defenses are not proper defenses to a TCPA claim. *Cf. Nghiem v. Dick's Sporting Goods, Inc.*, 318 F.R.D. 375, 383 (C.D. Cal. 2016) (denying class certification and noting that "[i]t does not matter whether Defendants will ultimately prevail on these defenses [of waiver and estoppel]. What matters is that Defendants will assert these defenses, and they have a factual basis for doing so."). Plaintiff has not presented any evidence to contradict Defendant's assertion that all of the phone numbers were voluntarily provided and, more importantly, Plaintiff has not presented any evidence that absent class members revoked the consent to receive these text messages. Thus, there is a genuine issue of material fact as to these defenses and the Court should deny summary judgment.

**G. Defendant Did not Waive its EBR Defense**

As stated above, Plaintiff argues that Defendant has waived the defense of an Established

Business Relationship (EBR) because the defense was not specifically raised in the answer and affirmative defenses. This ignores the fact that the defense does not apply to Plaintiff, and thus Defendant had no reason to raise that defense with respect to Plaintiff's claims. The TCPA provides an exception for calls made to individuals that have an "established business relationship" ("EBR") with the caller. 47 C.F.R. § 64.1200(f)(15). That term is defined as follows:

> The term established business relationship for purposes of telephone solicitations means a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call or on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call, which relationship has not been previously terminated by either party.

47 C.F.R. § 64.1200(f)(15). Furthermore, courts have determined that the EBR exception should be interpreted broadly. The legislative history indicates that Congress intended the relationship to be interpreted broadly and contemplated that it could be formed through a single purchase. *Hand v. Beach Entm't KC, LLC,* 456 F. Supp. 3d 1099, 1122 (W.D. Mo. 2020). *See, also, In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14082–83, n. 382 (2003) ("[T]he EBR should not be limited by product or service. In today's market, many companies offer a wide variety of services and products. Restricting the EBR by product or service could interfere with companies' abilities to market them efficiently"); ("[I]f a consumer purchases a seller's products at a retail store or from an independent dealer, such purchase would establish a business relationship with the seller, entitling the seller to call that consumer under the EBR exemption."); *H. Rep. No. 102–317,* at 14–15 (1991) ("[A]n 'established business relationship' [ ] could be based upon any prior transaction, negotiation, or inquiry between the called party and the business entity"); *Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 387–88 (M.D.N.C. 2015)

(An EBR "is created after an individual makes a purchase, inquiry, or application for products or services and lasts for a certain number of months.").

Here, it is undisputed that Plaintiff's last purchase and contact with Defendant was greater than 18 months before the first text and, as a result, the EBR exception does not apply in his case. However, that does not mean that it does not apply to potentially thousands of other customers. *See* Declaration of Lukana Justin in Support of Opposition to Motion for Class Certification [DE 68-6] at ¶¶ 5-8.

Furthermore, even if this Court entertains Plaintiff's position that the defense was required to be pled, that does not automatically result in waiver. *See Theunissen v. GSI Group*, 109 F. Supp. 2d 505, 509 (N.D. Miss. 2000) ("Based on the foregoing, the court is of the opinion that the Defendant raised the defense at a pragmatically sufficient time to allow the Plaintiff to respond without prejudice."); *Cornell v. Council of Unit Owners Hawaiian Vill. Condominiums, Inc.*, 983 F. Supp. 640, 642–43 (D. Md. 1997) ("Failure to raise an affirmative defense until the summary judgment phase of a case does not waive the defendant's ability to assert the defense absent a showing of prejudice to the plaintiff."). Here, Plaintiff has not been prejudiced. First, Plaintiff anticipated this defense when it revised its class definition to exclude any individuals that had made a purchase within the preceding 18-months. But a purchase is not the only way to determine an EBR. *See Krakauer*, 311 F.R.D. at 387–88. Second, because the determination of an EBR is broad, Defendant needs to make an individual inquiry as to each putative class member to identify evidence of an EBR. For instance, in response to Plaintiff's Motion for Class Certification, Defendant demonstrated that a customer's inquiry about his or her purchases after the initial transaction results in an EBR. *See* Declaration of Lukana Justin in Support of Opposition to Motion for Class Certification [DE 68-6] at ¶¶ 5-8. Thus, the Court should reject Plaintiff's argument and

allow Defendant to pursue its EBR defense as to the absent class members.

## III. CONCLUSION

Based on the reasons set forth above, this Court should deny Plaintiff's Motion for Summary Judgment and grant Defendant's Cross-Motion for Summary Judgment.

Dated: March 7, 2025

Respectfully submitted,

***By: /s/ Frank A. Zacherl***
Frank A. Zacherl, Esq.
Florida Bar No. 868094
FZacherl@shutts.com
Oliver Sepulveda, Esq.
Florida Bar No. 111763
OSepulveda@shutts.com

**SHUTTS & BOWEN LLP**
200 South Biscayne Blvd., Suite 4100
Miami, Florida 33131
Telephone: (305) 347-7305
Facsimile: (305) 347-7705
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of March 2025, a true and correct copy of the foregoing has been furnished via CM/ECF to all parties on attached service list.

*/s/Frank A. Zacherl*
FRANK A. ZACHERL

**RICHARD MAROUS,**
**individually and on behalf of all others similarly situated,**
**v.**
**NOW OPTICS HOLDINGS, LLC d/b/a STANTON OPTICAL**
**United States District Court**
**Southern District of Florida**
**Case No. 9:24-cv-80702-RLR**

**SERVICE LIST**

Rachel N. Dapeer, Esq.
DAPEER LAW, P.A.
20900 NE 30th Avenue
Suite 417
Aventura, Florida 33180
rachel@dapeer.com

*Counsel for Plaintiff*

Manuel S. Hiraldo, Esq.
HIRALDO P.A.
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
mhiraldo@hiraldolaw.com

*Counsel for Plaintiff*