**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 9:24-cv-80702-ROSENBERG/Reinhart**

RICHARD MAROUS, individually and
on behalf of all others similarly situated,

Plaintiff,

**CLASS ACTION**

**JURY TRIAL DEMANDED**

v.

NOW OPTICS HOLDINGS, LLC d/b/a
STANTON OPTICAL,

Defendant.
_____________________________________________/

**PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS**
**AND PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS**

Plaintiff Richard Marous, pursuant to Local Rule 56.1(a), hereby submits his Response to Defendant's Statement of Material Facts, [DE 88], and states:

1. Undisputed.

2. Undisputed.

3. Undisputed.

4. Disputed. The text messages at issue in this case were sent not only to inform, but also to promote Defendant's goods and services, as well as encourage recipients to schedule eye exams and/or purchase eyeglasses for which they would have been charged. Justin Dep. at 11:21 – 12:3; 13:1-4; Marous Dep. at 48:17-23; 50:22 – 51:3. Specifically, the messages discuss Defendant's "faster service & better value" and three of them encourage recipients to "Book your eye exam today" and provide links for booking the exams. Ex. B to Justin Dep.; Justin Dep. 53:24 – 54:3. Moreover, Defendant referred to the text messages as "[redacted]" and generally to the text messages as part of its "[redacted]" and [redacted]

[redacted]. Justin Dep. at 26:8-14; Document entitled "CRM/Digital Cross-Functional Marketing Plan", Defendant's Supplemental Production at Bates 000020.

5. Undisputed.

6. Undisputed that Plaintiff received text messages from Defendant on October 9, 2023, October 16, 2023, November 2, 2023, and January 17, 2024. Disputed that the text messages were sent only to inform. The texts were also sent to promote Defendant's goods and services, as well as to encourage recipients to schedule eye exams and purchase eyeglasses for which they would have been charged. Justin Dep. at 11:21 – 12:3; 13:1-4; Marous Dep. at 48:17-23; 50:22 – 51:3. Specifically, the messages discuss Defendant's "faster service & better value" and three of them encourage recipients to "Book your eye exam today" and provide links for booking the exams. Ex. B to Justin Dep.; Justin Dep. 53:24 – 54:3. Moreover, Defendant referred to the text messages as "[redacted]" and generally to the text messages as part of its "[redacted]" and [redacted]. Justin Dep. at 26:8-14; Document entitled "CRM/Digital Cross-Functional Marketing Plan", Defendant's Supplemental Production at Bates 000020.

7. Disputed. The text messages at issue in this case were sent not only to inform, but also to promote Defendant's goods and services, as well as encourage recipients to schedule eye exams and/or purchase eyeglasses for which they would have been charged. Justin Dep. at 11:21 – 12:3; 13:1-4; Marous Dep. at 48:17-23; 50:22 – 51:3. Specifically, the messages discuss Defendant's "faster service & better value" and three of them encourage recipients to "Book your

eye exam today" and provide links for booking the exams. Ex. B to Justin Dep.; Justin Dep. 53:24 – 54:3. Moreover, Defendant referred to the text messages as "[redacted]" and generally to the text messages as part of its "[redacted]" and [redacted]. Justin Dep. at 26:8-14; Document entitled "CRM/Digital Cross-Functional Marketing Plan", Defendant's Supplemental Production at Bates 000020.

8. Disputed. The hyperlink in the messages was included to encourage recipients to "book your appointment." Justin Dep. 53:24 – 54:3.

9. Undisputed but immaterial.

10. Undisputed but immaterial.

11. Undisputed but immaterial.

12. Undisputed but immaterial.

13. Undisputed but immaterial.

14. Disputed. Plaintiff's cellular telephone is his home phone, and Plaintiff occasionally utilizes the number for his home-based photography business. Marous Dep. at 41:10-12; 92:10-12; 117:4-23.

15. Undisputed but immaterial.

16. Undisputed but immaterial.

17. Undisputed but immaterial.

## ADDITIONAL FACTS

Plaintiff Richard Marous, pursuant to Local Rule 56.1(b)(2)(D), hereby submits his Additional Facts that are material to Defendant's Motion for Summary Judgment, and states:

1. Defendant will charge customers for an eye exam if they do not purchase eyeglasses from Defendant. Justin Dep. at 11:21 – 12:3; 13:1-4.

2. Defendant operates an in-house Marketing Department that manages all customer communications regarding Defendant's products, services, and offerings. Justin Dep. at 10:14-22; 11:1-6.

3. Defendant's Marketing Department directs marketing for all 280 Stanton Optical locations. Justin Dep. at 18:13-21.

4. Defendant sends both "informational" and "promotional" text messages to its customers. Justin Dep. at 22:22 – 23:5.

5. Promotional text messages consist of sales Defendant is advertising, "like, buy one, get one free this week only[,]" but can also include an offer for an "eye exam." Justin Dep. at 24:2-6; 24:18 – 25:1.

6. As part of the rebranding effort, Defendant launched a text messaging campaign that was internally referred to as the "transitional" campaign. Justin Dep. at 25:16-25.

7. The name of one of the text messaging campaigns that Defendant utilized internally when transitioning the My Eyelab brand to Stanton Optical was the "transitional remarketing" campaign. Justin Dep. at 25:16-25.

8. According to Defendant, "[r]emarketing means that we sent you a message and you may not have opened it, so we're going to send you a reminder." Justin Dep. at 26:4-7.

9. The transitional campaign consisted of four (4) text message blasts with the following dates, campaign names, and text messages:

> (1) **10/9/2023** – "**Welcome SMS**": ATTN: Your My Eyelab is converting to its sister brand: Stanton Optical! Same location & team, with faster service & better value. Questions? Call 800-305-9577
>
> (2) **10/16/2023** – "**Launch Day SMS**": It's Official! Your My Eyelab store has converted to its sister brand: Stanton Optical. Book your eye exam today: https://bit.ly/3LKLOIN 'STOP' to opt-out
>
> (3) **11/2/2023** – "**Transitional Reminder SMS**": Final Notice: My Eyelab is now Stanton Optical, its sister brand under the same company. Book your eye exam today: https://bit.ly/40mUNGm 'STOP' to opt-out
>
> (4) **1/17/2024** – "**Transitional Remarketing**": REMINDER: My Eyelab is Now STANTON OPTICAL! Same-Day Eye Exams and Walk-ins Available. Book Eye Exam Today: https://bit.ly/3vux7nZ 'STOP' to Opt-out

*See* Ex. B to Justin Dep.

10. When clicked, the hyperlinks in the messages "would take you to the website to book your appointment." Justin Dep. 53:24 – 54:3.

11. On average, each text message blast consisted of over 600,000 text messages to as many unique telephone numbers, i.e., over 2.4 million text messages. *See* Text Message Logs.[1]

12. According to Defendant, the transitional text messages were sent so customers "would know where to go to the next time they needed services from their local optical store." Justin Dep. at 50:23 – 51:5.

13. The transitional campaign text messages were sent individuals within Defendant's database that had ever made a purchase at one of Defendant's locations at any point in time. Justin Dep. at 56:10 – 57:1; 65:5-14; 88:9 – 89:8.

---

[1] Transmission records for text messages sent to Plaintiff and the Class Members ("**Text Message Logs**"), a copy of which is attached as **Exhibit 1**.

14. All of the transitional campaign text messages were sent by Defendant's Marketing Department utilizing the Emarsys text messaging software. Justin Dep. at 26:12-18; 31:19 – 32:13; 33:2-4.

15. Plaintiff did not opt in to receive text messages from Defendant. Justin Dep. at 60:12-16.

16. Defendant divided the transitional campaign into 8 phases, which consisted of grouping approximately 150 My Eyelab stores by geographic location. Justin Dep. at 47:17-20: 49:21 – 50:6; 70:22 – 71:25.

17. The text messages sent as part of all 8 phases of the transitional campaign consisted of the same messages as the ones sent to Plaintiff. Justin Dep. at 71:1-22.

18. Plaintiff was grouped into phase three of the campaign based on his prior visit to a My Eyelab location in Gainesville, Florida. Justin Dep. at 47:21-25.

19. While the three of the text message blasts refer to scheduling an eye exam, nothing was done to determine whether the recipients were in fact due for an exam. Justin Dep. at 72:5-15.

20. Defendant did not remove telephone numbers listed on the National Do-Not-Call Registry before sending the transitional campaign text messages. Justin Dep. at 77:23 – 78:9

21. Defendant's text message records reflect four (4) successfully delivered transitional campaign text messages to Plaintiff's cellular telephone on the following dates:

- **10/9/2023**: ATTN: Your My Eyelab is converting to its sister brand: Stanton Optical! Same location & team, with faster service & better value. Questions? Call 800-305-9577

- **10/16/2023**: It's Official! Your My Eyelab store has converted to its sister brand: Stanton Optical. Book your eye exam today: https://bit.ly/3LKLOIN 'STOP' to opt-out

- **11/2/2023**: Final Notice: My Eyelab is now Stanton Optical, its sister brand under the same company. Book your eye exam today: https://bit.ly/40mUNGm 'STOP' to opt-out

- **1/17/2024**: REMINDER: My Eyelab is Now STANTON OPTICAL! Same-Day Eye Exams and Walk-ins Available. Book Eye Exam Today: https://bit.ly/3vux7nZ 'STOP' to Opt-out.

Justin Dep. at 28:1 – 29:2; 35:3 – 36:1, Ex. B; *see also* Answer, [DE 30], at ¶15.

22. Defendant's maintains records of each potential Class Member that was text messaged, including, but not limited to, (1) whether each potential Class Member opted in to receive text messages from Defendant, reflected by a "true" or "1" designation for yes, and "null" or "false" for no within the "PatientMobileSMSOptin" column, Justin Dep. at 61:8-13; (2) the date and time each text message was sent, reflected in the "SentDate" column, Justin Dep. at 35:3-6; (3) the content of the text message sent on a specific date, reflected in the "Message" column, Justin Dep. at 35:7-10; and (4) the date each putative Class Member last made a purchase at one of Defendant's stores, including the location of the purchase, reflected within the "PatientRecentPurchaseDate" and "PatientRecentPurchaseStoreName" columns, *see* Purchase Date Logs.[2]

23. Plaintiff was informed by Defendant that if he wanted a free eye exam, he would have to purchase eye glasses from Defendant. Marous Dep. at 48:17-23; 50:22 – 51:3. [3]

---

[2] Sample Text Logs With Last Date of Purchase ("**Purchase Date Logs**"), a copy of which is attached as **Exhibit 2**.

[3] Transcript of deposition of Plaintiff Richard Marous ("**Marous Dep.**"), dated December 4, 2024, a copy of which is attached as **Exhibit 3**.

24. Plaintiff's cellular telephone is his home phone, and Plaintiff occasionally utilizes the number for his home-based photography business. Marous Dep. at 41:10-12; 92:10-12; 117:4-23.

25. Defendant has stipulated that "determining whether a cellular telephone number is residential is an administrative task that will be performed by the class administrator by reviewing whether the telephone number is registered on the National Do-Not-Call Registry." Numerosity and PII Stip.[4] at ¶4.

26. The Declaration of Lukana Justin identifies not Class Members but instead provides "examples of customer notes in Now Optics' computer system." Justin Decl.[5] at ¶6.

27. [redacted].[6] *See also* Justin Dep. at 26:8-14.

28. Defendant has never "scrubbed" (i.e., removed) the telephone numbers it text messages against the National Do-Not-Call List. Justin Dep. 78:4-19.

29. Plaintiff's cellular telephone number was registered on the NDNCR for more than 30 days before Defendant's first text message. Marous Dep. at 35:4-12; 35:20-22.

---

[4] First Amended Stipulation Regarding Numerosity and Personal Identifying Information Concerning Called Persons ("**Numerosity and PII Stip.**"), [DE 54], a copy of which is attached as **Exhibit 4**.

[5] Declaration of Lukana Justin in Support of Opposition to Motion for Class Certification ("**Justin Decl.**"), [DE 68-6].

[6] Document entitled "CRM/Digital Cross-Functional Marketing Plan", Defendant's Supplemental Production at Bates 000020, a copy of which is attached as **Exhibit 5**.

DATED: March 10, 2025

Respectfully submitted,

**HIRALDO P.A.**

*/s/ Manuel S. Hiraldo*
Manuel S. Hiraldo, Esq.
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
mhiraldo@hiraldolaw.com
Telephone: 954.400.4713

**DAPEER LAW P.A.**
Rachel Dapeer, Esq.
Florida Bar No. 108039
520 S. Dixie Hwy,
Suite 240
Hallandale Beach, Florida 33009
rachel@dapeer.com
Telephone: 954.799.5914
*Counsel for Plaintiff*