**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 9:24-cv-80702-ROSENBERG/Reinhart**

RICHARD MAROUS, individually and on behalf of all others similarly situated,

Plaintiff,

v.

NOW OPTICS HOLDINGS, LLC d/b/a STANTON OPTICAL,

Defendant.
_________________________________/

**CLASS ACTION**

**JURY TRIAL DEMANDED**

**PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION**

# EXHIBIT LIST

| **Exhibit** | **Description** |
|---|---|
| **1** | Transcript of deposition of Defendant's Rule 30(b)(6) representative, Lukana Justin ("**Justin Dep.**"), dated November 20, 2024, including the following exhibit:<br><br>- Ex. B - Customer ID 81675509 History |
| **2** | Transcript of deposition of Plaintiff Richard Marous ("**Marous Dep.**"), dated December 4, 2024 |
| **3** | Sample Text Logs With Last Date of Purchase ("**Purchase Date Logs**") |
| **4** | Transmission records for text messages sent to Plaintiff and the Class Members ("**Text Logs**"):<br><br>- Ex. 4.1: Welcome SMS – 1<br>- Ex. 4.2: Welcome SMS – 2<br>- Ex. 4.3: Launch Day SMS – 1<br>- Ex. 4.4: Launch Day SMS – 2<br>- Ex. 4.5: Transition Reminder – 1<br>- Ex. 4.6: Transition Reminder – 2<br>- Ex. 4.7: Transition Reminder – 3<br>- Ex. 4.8: Transitional Remarketing |
| **5** | Resumes of Law Firms Representing Plaintiff ("**Law Firm Resumes**") |
| **6** | First Amended Stipulation Regarding Numerosity and Personal Identifying Information Concerning Called Persons ("**Numerosity and PII Stip.**"), [DE 54]. |
| **7** | Defendant's Initial Disclosures ("**Initial Disclosures**") |

# TABLE OF CONTENTS


I. INTRODUCTION ....................................................................................... 1

II. FACTS ....................................................................................................... 2

A. Defendant's Background .......................................................................... 2

B. Defendant's Rebranding Text Message Campaign ..................................... 2

III. THE TELEPHONE CONSUMER PROTECTION ACT ................................ 4

IV. ARGUMENT .............................................................................................. 5

A. Plaintiff and the Class Members Possess Article III Standing .................... 5

B. The Class is Adequately Defined ................................................................ 7

C. The Rule 23(a) Requirements are Satisfied ................................................ 8

1. The Class is Sufficiently Numerous ............................................................ 8

2. There are Common Questions of Law and Fact .......................................... 9

3. Plaintiff's Claims are Typical .................................................................... 10

4. Plaintiff and his Counsel are Adequate ..................................................... 12

D. The Rule 23(b)(3) Requirements are Satisfied ........................................... 13

1. Common Questions Predominate .............................................................. 13

2. A Class Action is Superior ......................................................................... 18

E. Plaintiff's Proposed Notice Plan Satisfies Rule 23(c)(2)(B) ........................ 19

V. CONCLUSION ............................................................................................. 20

**TABLE OF AUTHORITIES**

*Alderman v. GC Servs. Ltd. P'ship*,
2018 U.S. Dist. LEXIS 10205 (S.D. Fla. Jan. 19, 2018) ....................10

*Amchem Prods. Inc. v. Windsor,*
521 U.S. 591, 613 (1997) ....................13

*Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*,
322 F.R.D. 458 (N.D. Ill. 2017) ....................13

*Astrazeneca AB v. UFCW*,
777 F.3d 9 (1st Cir. 2015) ....................17

*Ault v. Walt Disney World Co*.,
692 F.3d 1212 (11th Cir. 2012) ....................10

*Barnes v. Air Line Pilots Ass'n, Int'l*,
310 F.R.D. 551 (N.D. Ill. 2015) ....................9

*Booth v. Appstack, Inc.*,
2015 U.S. Dist. LEXIS 40779 (W.D. Wash. Mar. 30, 2015) ....................13

*Braver v. Northstar Alarm Servs., LLC*,
329 F.R.D. 320 (W.D. Okla. 2018) ....................11, 17

*Bridge v. Phoenix Bond & Indem. Co*.,
553 U.S. 639 (2008) ....................13

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) ....................20

*Bumpus v. Realogy Brokerage Grp. LLC*,
2022 U.S. Dist. LEXIS 52650 (N.D. Cal. Mar. 23, 2022) ....................9

*Cabrera v. Gov't Employees Ins. Co.*,
2014 U.S. Dist. LEXIS 197169 (S.D. Fla. Sept. 29, 2014) ....................13

*Cardenas v. Toyota Motor Corp.*,
2021 U.S. Dist. LEXIS 152920 (S.D. Fla. Aug. 12, 2021) ....................13

*Cherry v. Dometic Corp*.,
986 F.3d 1296 (11th Cir. 2021) ....................7, 18

*Chinitz v. Intero Real Estate Servs.*,
2020 U.S. Dist. LEXIS 247921 (N.D. Cal. July 22, 2020) ....................11, 17

*Cordoba v. DIRECTV, LLC*,
942 F.3d 1259 (11th Cir. 2019) ........................................................................5, 6, 7

*Culverhouse v. Paulson & Co.*,
813 F.3d 991 (11th Cir. 2016) ..............................................................................6

*DeJulius v. New England Health Care Emps. Pension Fund*,
429 F.3d 935 (10th Cir. 2005) ............................................................................19

*Drazen v. Pinto*,
74 F.4th 1336 (11th Cir. 2023) .............................................................................6

*Evans & Green, LLP v. That's Great News, LLC*,
2012 U.S. Dist. LEXIS 147775 (W.D. Mo. Oct. 15, 2012) ...............................................9

*Grant v. Regal Auto. Grp., Inc.*,
2020 U.S. Dist. LEXIS 91897 (M.D. Fla. May 27, 2020)................................................18

*Green-Cooper v. Brinker Int'l, Inc.*,
73 F.4th 883 (11th Cir. 2023) ...............................................................................6

*Harris v. Ga. Dep't of Corr.*,
2021 U.S. Dist. LEXIS 247124 (M.D. Ga. Dec. 28, 2021) ............................................7, 8

*In re Checking Account Overdraft Litig.*,
275 F.R.D. 666 (S.D. Fla. 2011)..................................................................10, 13

*In re Integra Realty Res., Inc.*,
262 F.3d 1089 (10th Cir. 2001) ..........................................................................19

*Johansen v. One Planet Ops, Inc.*,
2018 U.S. Dist. LEXIS 47776 (S.D. Ohio Mar. 5, 2018) ................................................13

*Jones v. Jerome Golden Ctr. for Behavioral Health*,
2020 U.S. Dist. LEXIS 103952 (S.D. Fla. Mar. 25, 2020).......................................... 14-15

*Klay v. Humana, Inc.*,
382 F.3d 1241 (11th Cir. 2004) ...................................................................13, 18

*Krakauer v. Dish Network, L.L.C.*,
925 F.3d 643 (4th Cir. 2019) ........................................................................ *passim*

*Kristensen v. Credit Payment Servs.*,
12 F. Supp. 3d 1292 (D. Nev. 2014) ......................................................................13

*Lopez v. Consumer Saf. Tech., LLC*,
2024 U.S. Dist. LEXIS 84873 (M.D. Fla. May 10, 2024) ....................6

*Mantha v. Quotewizard.Com, LLC*,
347 F.R.D. 376 (D. Mass. 2024) ....................17

*McCullough v. City of Montgomery*,
2021 WL 20449900 (M.D. Ala. May 21, 2021) ....................8

*Michael W. v. United Behav. Health*,
420 F. Supp. 3d 1207 (D. Utah 2019) ....................19

*Mohamed v. Off Lease Only, Inc.*,
320 F.R.D. 301 (S.D. Fla. 2017) ....................14

*Morris v. Lincare, Inc.,*
2025 U.S. Dist. LEXIS 33462 (M.D. Fla. Feb. 25, 2025) .................... *passim*

*Muccio v. Glob. Motivation, Inc.*,
2023 U.S. App. LEXIS 22436 (11th Cir. Aug. 25, 2023) ....................6

*Northrup v. Innovative Health Ins. Partners, LLC*,
329 F.R.D. 443 (M.D. Fla. 2019) .................... *passim*

*Reyes v. BCA Fin. Servs.*,
2018 U.S. Dist. LEXIS 106449 (S.D. Fla. June 26, 2018) ....................13, 20

*Rhodes v. Nat'l Collection Sys., Inc.*,
2017 WL 4334079 (D. Colo. Apr. 28, 2017) ....................20

*Romano v. John Hancock Life Ins. Co. USA*,
120 F.4th 729 (11th Cir. 2024) ....................6

*Rosenberg v. GEICO Gen. Ins. Co.*,
2021 U.S. Dist. LEXIS 210775 (S.D. Fla. Sep. 21, 2021) .................... *passim*

*Scoma Chiropractic, P.A. v. Dental Equities, LLC*,
2021 U.S. Dist. LEXIS 245025 (M.D. Fla. Dec. 23, 2021) ....................20

*Shutler v. Citizens Disab. LLC*,
347 F.R.D. 663 (S.D. Fla. 2024) ....................1, 6, 7

*Walco Invs., Inc. v. Thenen*,
168 F.R.D. 315 (S.D. Fla. 1996) ....................10

*Wesley v. Snap Fin. LLC*,
339 F.R.D. 277 (D. Utah 2021) ....................................................................5, 14

*Williams v. Mohawk Indus.*,
568 F.3d 1350 (11th Cir. 2009) ..........................................................................................9

Plaintiff Richard Marous moves under Fed. R. Civ. P. 23(a) and 23(b)(3) to (1) certify a class under the Telephone Consumer Protection Act ("TCPA"); (2) appoint Plaintiff as Class Representative; and (3) appoint Plaintiff's counsel as Class Counsel, and in support states:

## I. INTRODUCTION

Defendant indiscriminately sent over **2.4 million text messages** to advertise the rebranding of its stores and encourage recipients to schedule eye exams. Defendant sent text messages to every person that had ever made a purchase at any of its 150 stores around the country. It did so without removing telephone numbers listed on the National Do-Not-Call Registry, determining whether the individuals it was texting had invited or provided permission to receive messages, or checking whether the consumers had an existing business relationship with Defendant. Accordingly, Plaintiff moves to certify the following class of individuals who were sent Defendant's text message solicitations in violation of the TCPA's do-not-call provisions:

> **All persons in the United States who, between October 1, 2023 and January 31, 2024, (1) received two or more text messages; (2) where the person's cellular telephone number had been listed on the National Do Not Call Registry for more than thirty days prior to receipt of the first text message; (3) regarding the rebranding, conversion and/or transition of My Eyelab to Stanton Optical; and for whom Defendant's records indicate that the person (4) did not opt in to receive text messages; and (5) had not made a purchase from Defendant during the eighteen months immediately preceding the date of the second text message.**

As observed by the Fourth Circuit, telemarketing statutes like the TCPA are "simple and administrable" provisions, the "obvious attempt [by Congress] to vindicate the public interest" through the statute's private enforcement provisions, and the overarching congressional intent "to allow consumers to bring their claims at modest personal expense" all combine to make the "claims amenable to class action resolution." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 663 (4th Cir. 2019); *see also Shutler v. Citizens Disab. LLC*, 347 F.R.D. 663, 2024 U.S. Dist. LEXIS 168785 (S.D. Fla. 2024) (Moore, J.) (granting certification of TCPA class action); *Morris v. Lincare, Inc.,* 2025 U.S. Dist. LEXIS 33462 (M.D. Fla. Feb. 25, 2025) (Honeywell, J.) (same).

In opposing this Motion, Defendant will assert various reasons why it believes this case should not be certified. But this Court need look no further than Defendant's Cross-Motion for Summary Judgment, [DE 89], to determine that Defendant's arguments are without merit. Indeed,

in support of its Cross-Motion, ***Defendant submitted no evidence to this Court*** to support its affirmative defenses or to rebut the presumption that Plaintiff and the Class Members are residential subscribers entitled to protection under the statute, and its Reply in Support of its Cross-Motion for Summary Judgment, [DE 106], ***Defendant abandoned all of its defenses and arguments***, and focused solely on whether the its text messages were solicitations (they were). Accordingly, this Court should grant certification because the merits of this case can be decided utilizing evidence common to Plaintiff and every Class Member as reflected by the parties' summary judgment briefs.

## II. FACTS

### A. Defendant's Background

Defendant operates approximately 280 optometry stores throughout the country under the Stanton Optical brand name which offers over-the-counter vision supplements, eyeglasses, contact lenses, sunglasses, and eye exams. Justin Dep. at 11:7-20; 13:8-15; 14:18-19. Defendant is headquartered in Delray Beach, Florida. Justin Dep. at 9:23-24. Defendant's portfolio of brands consists of My Eyelab, Stanton Optical, and Frame Genie. Justin Dep. at 14:3-7. Defendant operates an in-house Marketing Department that manages all customer communications regarding Defendant's products and services, relationships with its customers, and offerings. Justin Dep. at 10:14-22; 11:1-6. Defendant's Marketing Department directs marketing for all 280 Stanton Optical locations. Justin Dep. at 18:13-21.

### B. Defendant's Rebranding Text Message Campaign

Starting in September 2023, Defendant rebranded its 150 My Eyelab locations to Stanton Optical. Justin Dep. at 14:21 – 15:3. As part of the rebranding effort, Defendant launched a text messaging campaign that was internally referred to as the "transitional" rebranding campaign. Justin Dep. at 25:16-25. The campaign consisted of four (4) text message blasts with the following dates, campaign names, and text message content:

> (1) **10/9/2023 – "Welcome SMS**": ATTN: Your My Eyelab is converting to its sister brand: Stanton Optical! Same location & team, with faster service & better value. Questions? Call 800-305-9577
>
> (2) **10/16/2023** – "**Launch Day SMS**": It's Official! Your My Eyelab store has converted to its sister brand: Stanton Optical. Book your eye exam today: https://bit.ly/3LKLOIN 'STOP' to opt-out

> (3) **11/2/2023** – "**Transitional Reminder SMS**": Final Notice: My Eyelab is now Stanton Optical, its sister brand under the same company. Book your eye exam today: https://bit.ly/40mUNGm 'STOP' to opt-out
>
> (4) **1/17/2024** – "**Transitional Remarketing**": REMINDER: My Eyelab is Now STANTON OPTICAL! Same-Day Eye Exams and Walk-ins Available. Book Eye Exam Today: https://bit.ly/3vux7nZ 'STOP' to Opt-out

*See* Ex. B to Justin Dep. On average, each text message blast consisted of **over 600,000 text messages** to as many unique telephone numbers. *See* Text Message Logs. In other words, over **2.4 million text messages** were sent by Defendant to approximately **600,000 potential Class Members**.

The rebranding text messages were sent to everyone within Defendant's database, and nothing was done to identify individuals that were due for an eye exam or whether they were current customers; Defendant instead text messaged everyone that had ever made a purchase at one of Defendant's locations at any point in time. Justin Dep. at 56:10 – 57:1; 65:5-14; 88:9 – 89:8. All of the rebranding text messages were sent by Defendant's Marketing Department utilizing the Emarsys text messaging software. Justin Dep. at 26:12-18; 31:19 – 32:13; 33:2-4. Defendant divided the rebranding campaign into 8 phases, which consisted of grouping approximately 150 My Eyelab stores by geographic location. Justin Dep. at 47:17-20: 49:21 – 50:6; 70:22 – 71:25. The text messages sent as part of all 8 phases of the rebranding campaign consisted of the same messages as the ones sent to Plaintiff; i.e., messages advertising the rebranding and availability of Defendant's services and eye exams. Justin Dep. at 71:1-22.

Plaintiff was grouped into phase three of the campaign based on his prior visit to a My Eyelab location in Gainesville, Florida. Justin Dep. at 47:21-25. Notably, while three of the text message blasts refer to scheduling an eye exam, nothing was done to determine whether the recipients were in fact due for an exam. Justin Dep. at 72:5-15. Moreover, Defendant did not remove telephone numbers listed on the National Do-Not-Call Registry before sending the rebranding campaign text messages. Justin Dep. at 77:23 – 78:9.

Defendant's text message records reflect four (4) successfully delivered rebranding text messages to Plaintiff's cellular telephone on the following dates:

- **10/9/2023**: ATTN: Your My Eyelab is converting to its sister brand: Stanton Optical! Same location & team, with faster service & better value. Questions? Call 800-305-9577

- **10/16/2023**: It's Official! Your My Eyelab store has converted to its sister brand: Stanton Optical. Book your eye exam today: https://bit.ly/3LKLOIN 'STOP' to opt-out

- **11/2/2023**: Final Notice: My Eyelab is now Stanton Optical, its sister brand under the same company. Book your eye exam today: https://bit.ly/40mUNGm 'STOP' to opt-out

- **1/17/2024**: REMINDER: My Eyelab is Now STANTON OPTICAL! Same-Day Eye Exams and Walk-ins Available. Book Eye Exam Today: https://bit.ly/3vux7nZ 'STOP' to Opt-out.

Justin Dep. at 28:1 – 29:2; 35:3 – 36:1; Ex. B; *see also* Answer, [DE 30], at ¶15.

As reflected by the Purchase Date Logs and Text Message Logs, Defendant's maintains records of each potential Class Member that was text messaged, including, but not limited to, (1) whether each potential Class Member opted in to receive text messages from Defendant, reflected by a "true" or "1" designation for yes, and "null" or "false" for no within the "PatientMobileSMSOptin" column, Justin Dep. at 61:8-13; (2) the date and time each text message was sent, reflected in the "SentDate" column, Justin Dep. at 35:3-6; (3) the content of the text message sent on a specific date, reflected in the "Message" column, Justin Dep. at 35:7-10; and (4) the date each putative Class Member last made a purchase at one of Defendant's stores, including the location of the purchase, reflected within the "PatientRecentPurchaseDate" and "PatientRecentPurchaseStoreName" columns, *see* Purchase Date Logs. Defendant also knows whether a telephone number that was text messaged was a cellular telephone number because the Emarsys software utilized to send the messages will reflect a "delivered" status as opposed to "undelivered" for landlines. Justin Dep. at 41:11-24.

## III. THE TELEPHONE CONSUMER PROTECTION ACT

"Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. … Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those people who, despite efforts to avoid it, have

suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d at 649-50.

The single claim Plaintiff seeks to certify is brought under 47 U.S.C. § 227(c), which provides a private right of action to any consumer who receives two or more "telephone solicitations" within a 12-month period to a cell phone that was registered on the National Do-Not-Call Registry ("NDNCR") for more than 30 days before the solicitation. 47 C.F.R. §§ 64.1200(c)(2), (e). The TCPA imposes $500 in statutory damages per NDNCR violation and provides for treble damages if the company acted "willfully or knowingly." 47 U.S.C. § 227(c)(5). Express permission or invitation to solicit and an "established business relationship" are defenses to a NDNCR claim. *See* 47 C.F.R. § 64.1200(c); (f)(15). An established business relationship means a relationship formed "on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately" before the date of the telephone solicitation ("purchase EBR"). 47 C.F.R. § 64.1200(f)(5). With respect to permission, Defendant can only engage in "telephone solicitations" if it has secured the consumer's "express invitation or permission", which must be evidenced by "signed, written agreement between the consumer and seller[.]" 47 C.F.R. § 64.1200(c)(2)(ii). Accordingly, Plaintiff has defined his class to exclude any individuals who provided their written invitation or permission to Defendant and/or had a purchase EBR with Defendant as reflected by Defendant's business records.

## IV. ARGUMENT

"Class certification is normal in litigation under [the TCPA], because the main questions … are common to all recipients." *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013); *accord Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 656 (4th Cir. 2019) ("Given the remedial purpose of the TCPA, it is no surprise that its cause of action would be conducive to class-wide disposition."); *see also Wesley v. Snap Fin. LLC,* 339 F.R.D. 277 (D. Utah 2021) (granting motion to certify class in TCPA case); *Adler v. All Hours Plumbing Drain Cleaning 24-7-365 LLC*, No. 2:21-cv-00141, 2022 U.S. Dist. LEXIS 196728 (D. Utah Oct. 26, 2022) (same); *Morris v. Lincare, Inc.,* No. 8:22-cv-2048-CEH-AAS, 2025 U.S. Dist. LEXIS 33462 (M.D. Fla. Feb. 25, 2025) (Honeywell, J.) (same). As discussed below, each element of Rule 23 is satisfied and this Court should, respectfully, certify the above proposed Class.

### A. Plaintiff and the Class Members Possess Article III Standing

In *Cordoba v. DIRECTV, LLC*, the Eleventh Circuit held that Article III standing was "not a problem for the class based on calls made to individuals on the National Do Not Call Registry, since those whose numbers are on the Registry and nevertheless received marketing calls suffered an injury that is traceable to [defendant's] misconduct[.]" 942 F.3d 1259, 1272 (11th Cir. 2019). In *Drazen v. Pinto*, the Eleventh Circuit held that a single text message sent in alleged violation of the TCPA was sufficient to meet the requirements of Article III standing. 74 F.4th 1336, 1345 (11th Cir. 2023); *see also Muccio v. Glob. Motivation, Inc.*, No. 23-10081, 2023 U.S. App. LEXIS 22436 (11th Cir. Aug. 25, 2023) (same).

Moreover, "as the Eleventh Circuit has explained, 'at the class certification stage only the *named* plaintiffs need have standing.'" *Shutler v. Citizens Disab. LLC*, 347 F.R.D. 663, 2024 U.S. Dist. LEXIS 168785, at *9 (S.D. Fla. 2024) (Moore, J.) (emphasis original) (quoting *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 888 (11th Cir. 2023); William B. Rubenstein, Newberg on Class Actions § 2:3 (5th ed. 2016) ("[T]he vast majority of courts continue to heed the basic rule that the standing inquiry focuses on the class representatives, not the absent class members."); *see also Cordoba*, 942 F.3d at 1277 (noting that critical question is whether there was "a plausible straightforward method to sort [those with standing] out at the back end of the case."); *Northrup v. Innovative Health Ins. Partners, LLC*, 329 F.R.D. 443, 449 (M.D. Fla. 2019) ("But Plaintiff need not show at this stage that every possible class member has standing.") (citations omitted); *Lopez v. Consumer Saf. Tech., LLC*, No. 8:24-cv-150-WFJ-AAS, 2024 U.S. Dist. LEXIS 84873 (M.D. Fla. May 10, 2024) ("[Defendant] asserts that individualized issues will predominate because of these deficiencies and because of the fact that the class 'includes all cellular numbers rather than just residential ones.' *Id.* at 13. Each of these alleged deficiencies goes to the class members' entitlement to relief under the TCPA….A court need not require a named plaintiff to demonstrate that every member of a proposed class is entitled to relief before certifying the class[.]") (citations omitted). Notwithstanding, Plaintiff has limited his Class definition only to persons with Article III standing.

Most recently, the Eleventh Circuit held that "we must assume, for purposes of our standing analysis," that the legal claim asserted in a class action is "valid and will succeed." *Romano v. John Hancock Life Ins. Co. USA*, 120 F.4th 729 (11th Cir. 2024) (citing *Culverhouse v. Paulson & Co.*, 813 F.3d 991, 994 (11th Cir. 2016)). ***In other words, a plaintiff is not required to demonstrate***

***that he will succeed on his "claims in order to have Article III standing. To rule otherwise would allow a merits decision to swallow the antecedent matter of standing***." *Id*. at 738 (emphasis supplied); *see also Morris,* 2025 U.S. Dist. LEXIS 33462, at *10 (declining to assess merits of TCPA claim when determining whether plaintiff and the class members possess constitutional standing). Here, Plaintiff and the Class Members possess Article III standing because they allege the same injury: the receipt of text message solicitations made in violation of the TCPA's do-not-call provisions. As noted by the Eleventh Circuit, "if [Defendant] had followed the law and not called numbers on the Registry, [Plaintiff and the Class Members] would not have been injured." *Cordoba,* 942 F.3d at 1272.

**B. <u>The Class is Adequately Defined</u>**

As held by the Eleventh Circuit held, "administrative feasibility is not a requirement for certification under Rule 23[,]" and, accordingly, the Eleventh Circuit has "limit[ed] ascertainability to its traditional scope: a proposed class is ascertainable if it is adequately defined such that its membership is capable of determination." *Cherry v. Dometic Corp*., 986 F.3d 1296, 1304 (11th Cir. 2021). This means that "the party seeking certification need not establish its ability to identify class members in a convenient or administratively feasible manner." *Rensel v. Centra Tech., Inc*., 2 F.4th 1359, 1361 (11th Cir. 2021). To the extent administrative feasibility has any role, "[the district court] may consider administrative feasibility as part of the manageability criterion of Rule 23(b)(3)(D)." *Cherry*, 986 F.3d at 1304.

Moreover, a plaintiff is not "required to limit their proposed class to the one that is the easiest to figure out. '[N]either foreknowledge of a method of identification nor confirmation of its manageability says anything about the qualifications of the putative class representatives.'" *Harris v. Ga. Dep't of Corr*., No. 5:18-cv-00365-TES, 2021 U.S. Dist. LEXIS 247124 (M.D. Ga. Dec. 28, 2021) (quoting *Cherry*, 986 F.3d at 1303). "A[t] this stage of the proceedings, Plaintiffs are only required to show that the class is 'not defined through vague or subjective criteria[]' so that it is 'capable of being determined.'" *Harris*, 2021 U.S. Dist. LEXIS 247124, at *31 (quoting *Cherry*, 986 F.3d at 1302-03).

Plaintiff's proposed Class definition is defined utilizing objective criteria such that its membership is capable of determination. In other words, the criteria proposed in Plaintiff's Class definition "do not require a legal analysis; rather, class members can be identified using call logs that [Defendant] has agreed to produce if the Court certifies a class." *Shutler*, 2024 U.S. Dist.

LEXIS 168785, at *6. Additionally, and though Plaintiff is not required to identify the Class Members, he has demonstrated that identification will be a simple administrative task, and Defendant does not dispute that identifying and providing notice to the Class Members may be done utilizing Defendant's business records and through a class action administrator that will update those records to the extent necessary. *See* Numerosity and PII Stip. at ¶2.

"To the extent that Defendant[] argue[s] that this class is not ascertainable because it requires individualistic determinations…the Court [should] find[] such an argument to be grounded in administrative feasibility concerns and not relevant to the ascertainability analysis." *Harris*, 2021 U.S. Dist. LEXIS 247124, at *31 (citing *McCullough v. City of Montgomery*, No. 2:15-cv-463-RCL, 2021 WL 20449900, at *11 (M.D. Ala. May 21, 2021); *see also Northrup*, 329 F.R.D. at 451 ("Defendants conclude, any such attempt to identify who is an 'owner' and who is a 'regular user' would be 'fraught with individualized inquiry.'….But such information could be obtained from cell phone carrier documentation, or from inquiries to subscribers."); *Morris,* 2025 U.S. Dist. LEXIS 33462, at *13 ("Nearly all this information—the telephone number, whether the phone was a cell phone, whether the call was answered or a recorded message left, and the date of the message—is readily determinable through the call logs provided to the Court.").

Moreover, as discussed below, the Class presents no administrative feasibility concerns because Defendant possesses contact information for every Class Member, as it has stipulated. *See* Numerosity and PII Stip. at ¶¶1-2; *see also See Northrup*, 329 F.R.D. at 44 ("Plaintiff has explained that the identities of the individuals associated with the listed phone numbers is identifiable via an additional spreadsheet that Defendants produced to Plaintiff.") Accordingly, providing notice to Class Members will be a simple administrative task that can be handled by a class administrator as the parties have stipulated.

**C. <u>The Rule 23(a) Requirements are Satisfied</u>**

***1. The Class is Sufficiently Numerous***

To satisfy the numerosity requirement, Plaintiff must show that the proposed Class is so numerous that "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs "seeking class certification do not need to know the 'precise number of class members,' but they 'must make reasonable estimates with support as to the size of the proposed class.'" *Rosenberg v. GEICO Gen. Ins. Co.*, No. 19-61422-CIV-CAN, 2021 U.S. Dist. LEXIS 210775, at *15 (S.D. Fla. Sep. 21, 2021). Although "[a] plaintiff must present some evidence that the class to be certified

will satisfy the numerosity requirement of Rule 23[,]" it need only "reasonably estimate[] a class larger than 40 members[,]" and need "not be able to produce a precise, uncontested number of class members." *Id*. Indeed, when evaluating numerosity a "court may make common sense assumptions[.]" *Barnes v. Air Line Pilots Ass'n, Int'l*, 310 F.R.D. 551, 557 (N.D. Ill. 2015).

Here, the parties have stipulated that numerosity is satisfied because there are at least 50 persons that fall within the proposed Class. *See* Numerosity and PII Stip. at ¶3. Moreover, Defendant's Text Logs reflect text messages to over 600,000 potential Class Members. Accordingly, common sense assumptions support finding numerosity. *Northrup*, 329 F.R.D. at 452 ("But even assuming *arguendo* that only four percent of those telephone numbers were assigned to cellular phone numbers, the class would still be well over forty.") (emphasis original); *Evans & Green, LLP v. That's Great News, LLC*, No. 11-3340-CV-S-ODS, 2012 U.S. Dist. LEXIS 147775, at *6 (W.D. Mo. Oct. 15, 2012) ("and assuming for the purposes of this Order, that a mere one percent of those facsimiles were unsolicited, the class meets the numerosity requirement.") (citations omitted); *Bumpus v. Realogy Brokerage Grp. LLC*, No. 3:19-cv-03309-JD, 2022 U.S. Dist. LEXIS 52650, at *7 (N.D. Cal. Mar. 23, 2022) ("As a starting consideration, defendants have an uphill climb on numerosity. The call records in this case, which catalog millions of calls, plainly indicate that at least hundreds, and in all probability thousands, of people were called. This alone puts Mojo and Reaology in a doubtful posture on numerosity.")

***2. There are Common Questions of Law and Fact***

The test for commonality is whether the class claims present "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This test presents a "low hurdle." *Williams v. Mohawk Indus*., 568 F.3d 1350, 1356 (11th Cir. 2009). To satisfy it, Plaintiff need only show that the Class claims present "at least one issue whose resolution will affect all or a significant number of the putative class members," or that their claims "are susceptible to class-wide proof." *Id*. at 1355. Commonality "'does not require that all the questions of law and fact raised by the dispute be common,' or that the common questions of law or fact 'predominate' over individual issues." *Rosenberg*, 2021 U.S. Dist. LEXIS 210775 at *15. "What matters to class certification…is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.*, at *16.

Here, Plaintiff's and the Class Members' claims against Defendant raise multiple common legal and factual issues capable of generating common answers as demonstrated by Defendant's

Cross-Motion for Summary Judgment, [DE 89], including: (1) whether the rebranding text messages sent on October 9, 2023, October 16, 2023, November 2, 2023, and January 17, 2024, are telephone solicitations, *id*. at 3; and (2) whether Defendant's safe harbor defense applies, *id*. at 16. Additional common questions include: (1) whether Defendant sent text messages to Plaintiff and the Class Members; (2) the total number of text messages sent by Defendant in violation of the TCPA; (3) whether Defendant's conduct was knowing and willful such that the Court should award treble damages; (4) the total amount of damages the Court should award to Plaintiff and the Class Members; and (5) whether Defendant violated the TCPA. Thus, commonality is generally satisfied in a TCPA like this one. *See Northrup*, 329 F.R.D. at 452 ("The common legal questions include whether Defendants violated the TCPA when they sent the class members the text message."); *Morris*, 2025 U.S. Dist. LEXIS 33462, at *17 ("Plaintiff has identified multiple common legal and factual issues: (1) whether Defendant placed prerecorded voice calls to Plaintiff and the class; (2) whether the purpose of the calls was to sell goods or services to Plaintiff and the class; (3) the total number of calls placed by Defendant in violation of TCPA and FTSA; (4) whether Defendant's conduct was knowing and willful (for treble damages); (5) the total amount of damages; and (6) whether Defendant violated the TCPA and FTSA.").

***3. Plaintiff's Claims are Typical***

The typicality requirement of Rule 23 requires that the claims of the representative plaintiffs be typical of the claims of the class. *See* Fed. R. Civ. P. 23(a)(3). "'[T]ypicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large.'" *Rosenberg*, 2021 U.S. Dist. LEXIS 210775, at*17. Like commonality, typicality is not a demanding test." *Id*. at *18. Notably, "[c]lass members' claims need not be identical to satisfy the typicality requirement[.]" *Ault v. Walt Disney World Co*., 692 F.3d 1212, 1216 (11th Cir. 2012). Further, "[t]o defeat typicality, a defendant must show that conflict between the named representatives and the class members is 'such that the interests of the class are placed in significant jeopardy.'" *Alderman v. GC Servs. Ltd. P'ship*, No. 2:16-CV-14508, 2018 U.S. Dist. LEXIS 10205, at *14 (S.D. Fla. Jan. 19, 2018) (Rosenberg, J.) (quoting *In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 674 (S.D. Fla. 2011)(quoting *Walco Invs.*, *Inc. v. Thenen*, 168 F.R.D. 315, 326 (S.D. Fla. 1996))).

"Here, the legal theory underlying Plaintiff's and the class's claim are very similar, if not identical: they arise from the same conduct, the legal bases are the same, and the facts are similar

(if not identical)." *Northrup*, 329 F.R.D. at 453; *Morris*, 2025 U.S. Dist. LEXIS 33462, at *18 (same). Indeed, Plaintiff and the Class Members were subjected to the same text messages regarding the rebranding from My Eyelab to Stanton Optical and their claims rely on the same legal theory: that Defendant violated the TCPA by sending text message solicitations to telephone numbers registered on the NDNCR. As such, Plaintiff and the Class Members will need to prove the same elements to establish Defendant's liability under the TCPA, and Plaintiff and the Class Members seek the same statutory relief.

Additionally, Plaintiff's cellular telephone number, like those of the proposed Class, was registered on the NDNCR for more than 30 days before Defendant's first text message. Marous Dep. at 35:4-12; 35:20-22; *see also Chinitz v. Intero Real Estate Servs.*, No. 18-cv-05623-BLF, 2020 U.S. Dist. LEXIS 247921, at *30 (N.D. Cal. July 22, 2020) ("There is no indication that Plaintiff has a unique background or factual situation simply because he may have occasionally used his residential number for a home-based business. There is no suggestion that Plaintiff used these phone numbers for his primary employment. Moreover, Intero's defense against Plaintiff that he is not protected by the TCPA because he may have used his residential number for a home-based business is a defense that is typical of the defenses that Intero may also raise against other members of the proposed classes. Accordingly, the Court finds that typicality is met here where Plaintiff and putative class members all received calls from Intero to their residential phone numbers after they placed their numbers on the NDNCR[.]") And, like the proposed Class Members, Plaintiff did not opt in to Defendant's text messages and did not have a purchase EBR with Defendant when Defendant sent Plaintiff its solicitations. *See* Justin Dep. at 60:12-16 (testifying that Plaintiff "did not opt in to receive SMS"); 48:1-14; 49:11-15 (testifying that Plaintiff last made a purchase at the Gainesville, Florida My Eyelab store in 2021 i.e. over two years prior to the texts at issue).

Defendant will argue that Plaintiff is not typical because Plaintiff occasionally may have used his cellular telephone for his home-based photography business. In other words, Defendant will argue that Plaintiff is a business, not residential, subscriber, but Defendant is mistaken because "[t]here is no suggestion that Plaintiff used the[] phone number[] for his primary employment." *Chinitz v. Intero Real Estate Servs.*, No. 18-cv-05623-BLF, 2020 U.S. Dist. LEXIS 247921, at *30 (N.D. Cal. July 22, 2020). As Defendant knows, the FCC has "***decline[d] to exempt from the do-not-call rules those calls made to 'home-based businesses***'[.]" *In the Matter of Rules & Regulations*

*Implementing the Telephone Consumer Protection Act of 1991*, 20 FCC Red. 3788, 3793 (2005); *see also Braver v. Northstar Alarm Servs.*, LLC, 329 F.R.D. 320, 329 (W.D. Okla. 2018) ("The TCPA does not make an exception to its prohibition for calling telephone lines if the residential line is used for a home-based business or for another business purpose."); *Southwell v. Mortg. Inv'rs Corp. of Ohio,* No. C13-1289 MJP, 2014 U.S. Dist. LEXIS 113314 (W.D. Wash. Aug. 14, 2014) ("Defendant's claim that Southwell's cellular phone number is not a residential number is based on the deposition of Southwell's wife Crystal Moon, who stated that her husband occasionally sells sheep to friends using his cell phone…. the FCC has 'decline[d] to exempt from the do-not-call rules those calls made to 'home-based businesses.'"….Plaintiff is correct that Southwell is a 'residential telephone subscriber' under the TCPA."). Plaintiff is therefore a residential subscriber under the law and typical of the Class Members.

***4. Plaintiff and his Counsel are Adequate***

Representative plaintiffs must also show that they will "fairly and adequately protect the interests of this class." Fed. R. Civ. P. 23(a)(4). "The adequacy of representation requirement encompasses two factors: '(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'" *Rosenberg*, 2021 U.S. Dist. LEXIS 210775, at *20. Plaintiff satisfies this test because his interests are squarely aligned with those of the Class Members because, like the rest of the Class, Plaintiff alleges that Defendant violated his rights under the TCPA.

Indeed, Plaintiff is aware that this case was filed in federal court as a class action, and is aware that the claim is one under the TCPA, which prohibits sending marketing text messages to individuals on the NDNCR. Marous Dep. at 105:22 – 107:6; 113:21-25. Further, Plaintiff understands his role as a class representative, and has devoted time to pursuing his claims, including sitting for deposition, responding to Defendant's discovery requests, and attending mediation. Plaintiff has also spent time gathering documents to respond to discovery and preparing for his deposition. Marous Dep. at 111:2-13. And, if there is any question about Plaintiff's motives, the Court need look no further than Plaintiff's testimony that he is unwilling to settle the case except on a class-wide basis "[***b]ecause the action is not just about me, it's about everyone***." Marous Dep. at 108:19 – 109:1 (emphasis added).

In addition, the firms and counsel representing Plaintiff—Hiraldo P.A. and Dapeer Law P.A.—are adequate. Both firms have extensive experience in the areas of consumer rights and

class action litigation. *See* Law Firm Resumes. They have litigated multiple cases nationally and have the resources necessary to conduct litigation of this nature. Plaintiff's counsel have been appointed as lead class counsel in numerous cases. Plaintiff's counsel have diligently investigated and dedicated substantial time and financial resources to the investigation and prosecution of the claims at issue and will continue to do so.

**D. <u>The Rule 23(b)(3) Requirements are Satisfied</u>**

***1. Common Questions Predominate***

"The predominance inquiry 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Alderman*, 2018 U.S. Dist. LEXIS 10205 at *17 (quoting *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 613 (1997)). "It is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions." *Alderman*, 2018 U.S. Dist. LEXIS 10205 at *17 (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008)). Additionally, "[w]here a common course of conduct is shown…unique defenses will rarely predominate sufficient to defeat class certification of their own accord." *Cardenas v. Toyota Motor Corp.*, No. 18-cv-22798-CIV-FAM, 2021 U.S. Dist. LEXIS 152920, at *69 (S.D. Fla. Aug. 12, 2021) (citing *In re Checking Acct. Overdraft Litig.*, 307 F.R.D. 656, 674 (S.D. Fla. 2015)).

A TCPA defendant opposing certification may not rely on "bare assertions" regarding a defense or issue without the submission of evidence to prove that the defense or issue actually predominates. *See Reyes v. BCA Fin. Servs.*, 2018 U.S. Dist. LEXIS 106449, at *46 (S.D. Fla. June 26, 2018) (citing *Cabrera v. Gov't Employees Ins. Co.*, No. 12-61390-CIV, 2014 U.S. Dist. LEXIS 197169, 2014 WL 11894430, at *5 n.4 (S.D. Fla. Sept. 29, 2014); *Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*, 322 F.R.D. 458, 469 (N.D. Ill. 2017); *Johansen v. One Planet Ops, Inc.*, No. 2:16-CV-00121, 2018 U.S. Dist. LEXIS 47776, 2018 WL 1558263, at *5 (S.D. Ohio Mar. 5, 2018); *Booth v. Appstack, Inc.*, No. C13-1533JLR, 2015 U.S. Dist. LEXIS 40779, 2015 WL 1466247, at *12 (W.D. Wash. Mar. 30, 2015); *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1307 (D. Nev. 2014)); *see also Cardenas v. Toyota Motor Corp.*, No. 18-cv-22798-CIV-FAM, 2021 U.S. Dist. LEXIS 152920 (S.D. Fla. Aug. 12, 2021) ("The potential for arbitration agreements does not defeat predominance, in part because Defendants have not offered actual evidence of how many potential class members would be impacted."). In other words, merely mentioning a defense or potential issue – as Defendant will do

here – is not sufficient to defeat predominance in a TCPA case. *See Bridging Communities Inc. v. Top Flite Financial Inc.,* 843 F.3d 1119, 1126 (6th Cir. 2016) (speculation regarding individualized consent held insufficient to defeat plaintiffs' showing of predominance under Rule 23(b)(3)).

In this case, the common questions identified above are all subject to class-wide proof as demonstrated by the parties' summary judgment briefing which show that all merits questions can be decided using common evidence. *See Northrup*, 329 F.R.D. at 453 ("The central common issues in this case are whether Defendants used an ATDS to send the text message, and, if so, whether Defendants' actions were willful. These common issues predominate over other questions such as whether certain listed telephone numbers are associated with cellular phones. And, the common issues may be decided uniformly for all class members. Therefore, Plaintiff has met this requirement."); *Mohamed v. Off Lease Only, Inc.*, 320 F.R.D. 301, 316 (S.D. Fla. 2017) ("The resolution of each issue will directly impact the resolution of the claims of the modified class and whether each can establish liability against [the defendant] under the TCPA."); *Morris*, 2025 U.S. Dist. LEXIS 33462, at *20 ("Plaintiff submits the issue of consent can be resolved by common evidence as demonstrated by Defendant's argument that providing a telephone number equates to consent. While Plaintiff refutes this position, it nevertheless supports the fact that the issue of consent can be resolved on a class-wide basis. As Defendant has failed to demonstrate that the issue of consent will need to be an individualized inquiry, Plaintiff has met this requirement.").

As demonstrated by Plaintiff's Motion for Summary Judgment, [DE 89], Plaintiff will prove his TCPA claim and at the same time the TCPA claim of every Class Member with common evidence establishing that Defendant sent text message solicitations to individuals registered on the NDNCR who had not invited or provided permission, and did not have a purchase EBR with Defendant when the messages were sent. There are no individual issues that predominate. First, issues related to the total number of texts, whether a Class Member provided express invitation or permission, and whether a Class Member had a purchase EBR "can be established through common evidence, namely [Defendants'] business records." *Wesley v. Snap Fin. LLC*, 339 F.R.D. 277, 297 (D. Utah 2021). That is because the evidence shows that Defendant did not have written permission from Plaintiff or any Class Member to text message them and did not have purchase EBR when it sent its text messages. Similarly, determining whether a telephone number was registered on the NDNCR is a simple administrative task that will be conducted by a class administrator. *See* Numerosity and PII Stip. at ¶4.

Second, statutory damages will not vary among Class members, and even if they did, as noted above, individual damages calculations do not defeat predominance. *See Jones v. Jerome Golden Ctr. for Behavioral Health*, No. 9:19-CV-81422, 2020 U.S. Dist. LEXIS 103952 (S.D. Fla. Mar. 25, 2020) (Rosenberg, J.) ("Relative to these questions, which go directly to Defendant's liability, the calculation of individual class members' damages is relatively ministerial, if somewhat tedious."). Third, the Court will be able to rely on common evidence with respect to whether damages should be trebled. And, lastly, there are no unique defenses that Defendant is able to assert with respect to Plaintiff or any Class Member as demonstrated by Defendant's Cross-Motion for Summary Judgment. Thus, the questions here will be resolved using common class-wide evidence applicable to all claims and will not involve undue individualized questions. *Krakauer*, 925 F.3d at 658-59 (explaining why predominance was satisfied in similar TCPA class action); *see also Morris,* 2025 U.S. Dist. LEXIS 33462, at *21 ("Plaintiff has demonstrated that the common issue of whether Defendant placed unwanted prerecorded calls to sell CPAP supplies to the class can be established through common evidence of Defendant's call logs. Additionally, Plaintiff has shown that the issue of damages, as statutory, do not require an individualized inquiry and may be determined from common evidence.").

Defendant will argue that questions about its inquiry EBR defense[1] and whether a telephone number is residential defeat predominance because individual inquiries on the issues will be needed to answer the questions. Yet in its Cross-Motion for Summary Judgment, [DE 89], ***Defendant marshalled no evidence to support its inquiry EBR defense or rebut the presumption that Plaintiff and all Class Member are residential subscribers***. In fact, Defendant's Statement of Facts, [DE 88], ***says nothing about either issue***. With discovery now closed, Defendant has identified no proof of a single business subscriber within the Class or a Class Member to which it may assert an inquiry EBR defense (to the extent the Court finds the defense was not waived, which it did as discussed below). Nor could Defendant ever prove its inquiry EBR defense because the Eleventh Circuit precedent holds that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Browning v. Bay*

---

[1] An inquiry EBR is an "inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call[.]" 47 C.F.R. § 64.1200(f)(5).

*Radiology Assocs. PL*, No. 23-13842, 2024 U.S. App. LEXIS 15689, at *3 (11th Cir. June 27, 2024) ("Moreover, Browning had an ongoing responsibility to supplement his disclosures, including his responses to interrogatories, and he failed to provide any supplement to any disclosure during the pendency of his case.") (quoting Fed. R. Civ. P. 37(c)(1)). Defendant never identified any evidence in its Initial Disclosures on which it could rely at trial to support its inquiry EBR defense, never attempted to amend its disclosures before the discovery period, and cannot show that its failure was substantially justified or is harmless.

Moreover, Defendant waived the inquiry EBR defense by failing to plead it in its Answer, [DE 30], as held by this Court. *See Barney v. Goldoro Devs., Inc.*, No. 23-CV-81007, 2024 U.S. Dist. LEXIS 115529, n.5 (S.D. Fla. July 1, 2024) (Rosenberg, J.) ("Here, since Defendants failed to raise this affirmative defense in their answer, they 'waive[] their right to raise this issue' at this stage.") (quoting *Hewitt v. Mobile Rsch. Tech., Inc.*, 285 Fed. App'x 694, 696 (11th Cir. 2008)). Notwithstanding Defendant's waiver and inability to prove its inquiry EBR defense, if this Court is inclined to permit Defendant to assert such a defense, the proper course would be to modify the Class definition and/or exclude any Class Member with an inquiry EBR – as Defendant demonstrated it is capable of doing via its business records – not to allow Defendant to profit from its violations of the rules of procedure and poor record keeping.[2]

Defendant will also contend that determining whether a Class Members is a residential subscriber is an individualized inquiry that defeats predominance. As noted, Defendant failed to rebut the presumption that Plaintiff and the Class Members are residential subscribers in its summary judgment motion and in its opposition to Plaintiff's Motion for Summary Judgment. Moreover, the parties have already stipulated that "***determining whether a cellular telephone number is residential is an administrative task that will be performed by the class administrator by reviewing whether the telephone number is registered on the National Do-Not-Call Registry***." Numerosity and PII Stip. at ¶4 (emphasis supplied). Second, Defendant's argument would

---

[2] A similar issue to what Defendant suggests here was raised in *Krakauer v. Dish Network L.L.C.,* in which Dish claimed it did not have sufficient records to determine every possible call it could assert an EBR defense against. 311 F.R.D. 384, 398 (M.D.N.C. 2015) aff'd, 925 F.3d 643 (4th Cir. 2019). The Court rejected Dish's suggestion that this should prevent class certification, holding "[i]f the records that Dish and its affiliates keep do not allow Dish to identify every possible EBR, that should not preclude persons with valid claims from recovering, nor does it prevent class certification under Rule 23(b)(3)." *Id.* at 398.

overlook that Defendant operates an optometry practice and that it was exclusively contacting individual consumers that made a purchase at one of Defendant's stores, not businesses. *See* Justin Dep. at 88:9 – 89:8. As held by at least one court, this fact, coupled with the residential presumption afforded to telephone numbers registered on the NDNCR, is sufficient to defeat such a predominance argument. *See Mantha v. Quotewizard.Com, LLC*, 347 F.R.D. 376, 397-98 (D. Mass. 2024) ("Importantly, however, the Court also stated that numbers on the NDNCR benefit from the 'presumption that [their] cellular phone number constitutes a 'residential telephone subscriber' when that number is on the NDNCR…. Moreover, Mantha does not rely solely on the residential presumption to show that the numbers on the proposed Class List are residential. He also points to QuoteWizard's repeated statements that it 'only intended to purchase lead information associated with <u>individual consumers</u> rather than businesses.'").

In fact, "[t]he majority of courts to have considered this issue have concluded that factual questions related to personal use, as opposed to commercial use, do not prevent certification of consumer protection class actions." *Braver v. Northstar Alarm Servs., LLC*, 329 F.R.D. 320, 329 (W.D. Okla. 2018) (citations omitted). But "[e]ven if a handful of numbers…are not, in fact, residential, that does not warrant denial of class certification." *Id.* (citing *Krakauer*, 311 F.R.D. at 396 ("The fact that a class list contains members who claims may fail on the merits does not mean that the class cannot be certified."); *Astrazeneca AB v. UFCW*, 777 F.3d 9, 22 (1st Cir. 2015) ("[E]xcluding all uninjured class members at the certification stage is almost impossible in many cases, given the inappropriateness of certifying what is known as a 'fail-safe class'—a class defined in terms of the legal injury.").

Importantly, Eleventh Circuit precedent holds that any remaining concerns regarding who has an inquiry EBR with Defendant or whether a number is residential can be addressed at the claims stage during which Defendant "could then verify (or contest) each one by consulting its own records." *Ocwen Loan Servicing, LLC v. Belcher*, No. 18-90011, 2018 U.S. App. LEXIS 18088, at *11 (11th Cir. June 29, 2018) ("The district court again permitted class members to self-identify and observed that various records, some held by Ocwen and others available in the public domain, could rebut class membership[.]") In practice, this would simply consist of a few agreed upon and Court approved questions in the claims form after which Defendant would be permitted to review the claim against its records. And even if individual instances might arise where the parties dispute a claim, "that, without more, does not mean that class certification [would go] beyond [this] court's discretion." *Id.*; *see also*

*Chinitz*, 2020 U.S. Dist. LEXIS 247921, at *46 ("[Defendant] will have the opportunity to challenge the claims of absent class members if, and when, they file claims for damages"); *Braver*, 329 F.R.D. at 329 ("Moreover, if issues need to be tried to determine whether a line is a business line or a residential line, those issues could be resolved by asking class members whether the line in question is a residential line during the class notification process, or, in any event, through a standardized and efficient claims process at a later stage.").

***2. A Class Action is Superior***

"When evaluating the superiority inquiry, courts focus on 'whether there is a better method of handling the controversy than through the class action mechanism.'" *Rosenberg*, 2021 U.S. Dist. LEXIS 210775, at *22 (citations omitted). "The most relevant consideration in the superiority analysis is whether class certification would result in case management issues that render the proceedings less fair and efficient than other available forums for adjudicating the class members' claims." *Id*. The Eleventh Circuit has made clear that the superiority inquiry requires a comparison of the superiority of proceeding as a class action as compared to an individual action and has emphasized that manageability issues will "rarely" result in preventing certification: "***So administrative difficulties—whether in class-member identification or otherwise—do not alone doom a motion for certification. Indeed, we have made clear that manageability problems will 'rarely, if ever, be in [themselves] sufficient to prevent certification***.'" *Cherry*, 2021 U.S. App. LEXIS 2809, at *14-15 (quoting *Klay*, 382 F.3d at 1272) (emphasis added).

The court's analysis in *Northrup* is equally applicable here: "It is unlikely that the individual class members would have any interest in instituting a lawsuit or in controlling their own individual actions given the modest statutory recovery available and the mostly-indistinguishable fact pattern applicable to the claims. The alternative—having numerous individual claims for damages arising out of the same conduct—would be neither efficient nor fair to Defendants or the class members given the circumstances of the case." 329 F.R.D. at 454.

As in *Northrup*, this Court should be satisfied that there are no administrative feasibility issues with respect to providing notice to the Class Members or otherwise managing the Class given that Defendant has in its business records the telephone numbers, names, emails, and addresses for each individual member in the Class. Justin Dep. at 37: 9-14; *see Grant v. Regal Auto. Grp., Inc.*, No. 8:19-cv-363-T-23JSS, 2020 U.S. Dist. LEXIS 91897, at *8 (M.D. Fla. May 27, 2020) ("These records are useful for identification and, if nothing else, the records provide an

advanced and workable 'starting point' from which to identify a class."). As such, the process of providing notice to the Class members simply requires a class administrator to establish a website containing a long-form notice and relevant case documents, and then sending email and/or mail notice to each Class Member containing a link to the website. "Indeed, other courts have accepted less straightforward methods of identifying class members." *Northrup*, 329 F.R.D. at 44 (citations omitted); *see also Morris*, 2025 U.S. Dist. LEXIS 33462, at *22 ("TCPA classes are routinely certified as class actions because the 'large number of claims, along with the relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims' support a finding that a class action is superior to litigating individual claims.") (quoting *Physicians Healthsource, Inc. v. Dr. Diabetic Supply, LLC*, No. 12-22330-CIV, 2014 WL 7366255, at *9 (S.D. Fla. Dec. 24, 2014) (quoting *C-Mart, Inc. v. Metro. Life Ins. Co.*, 299 F.R.D. 679, 691 (S.D. Fla. 2014))).

To the extent it becomes necessary – if Defendant's database of information proves to somehow be inaccurate – the parties have stipulated that they "will agree on a process by a class administrator to be selected by Plaintiff to ensure the records are current." Numerosity and PII Stip. at ¶1.

**E. Plaintiff's Proposed Notice Plan Satisfies Rule 23(c)(2)(B)**

Rule 23(c)(2)(B) requires delivery of the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." "Nevertheless, this due process right does not require *actual* notice to each party intended to be bound by the adjudication of a representative action." *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005); *see also Michael W. v. United Behav. Health*, 420 F. Supp. 3d 1207, 1225 (D. Utah 2019); *accord In re Integra Realty Res., Inc.,* 262 F.3d 1089, 1110-11 (10th Cir. 2001) (finding Rule 23 and Due Process satisfied where the record indicated that only seventy-seven percent of class members actually received notice).

Here, Plaintiff proposes sending court-approved notice to the Class Members utilizing the following methods regularly approved in TCPA class actions: (1) direct e-mail, given that Defendant has e-mails for all Class Members; (2) a dedicated settlement website containing a long-

form notice and all relevant court filings; and (3) a toll-free number to be operated by the court-approved settlement administrator for Class members to contact with any questions.

Individuals receiving notice must then determine whether they are *bona fide* Class members affected by this case so they can decide whether to stay in the case or exclude themselves from it. Then, should there ultimately be a judgment in favor of the Class, Class members who wish to recover will be able to attest to receiving text messages and whether the number texted is their residential number. That is, for example, Class members will be able to identify themselves by way of a sworn statement made in connection with a claim form should the class prevail on the merits. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1132 (9th Cir. 2017); *Rhodes v. Nat'l Collection Sys., Inc.*, No. 15-CV-02049-REB-STV, 2017 WL 4334079, at *2 n.4 (D. Colo. Apr. 28, 2017); *Scoma Chiropractic, P.A. v. Dental Equities, LLC*, No. 2:16-cv-41-JLB-MRM, 2021 U.S. Dist. LEXIS 245025, at *28 (M.D. Fla. Dec. 23, 2021) (quoting *Reyes v. BCA Fin. Servs.*, No. 16-24077-CIV-Goodman, 2018 U.S. Dist. LEXIS 106449, 2018 WL 3145807, at *13 (S.D. Fla. June 26, 2018)).

## V. CONCLUSION

Plaintiff respectfully requests that the Court grant this Motion in its entirety.

**WHEREFORE**, Plaintiff Richard Marous respectfully requests entry of an Order granting the instant Motion and certifying the proposed Class, and for such other relief deemed appropriate.

DATED: March 21, 2025

Respectfully submitted,

**HIRALDO P.A.**

*<u>/s/ Manuel S. Hiraldo</u>*
Manuel S. Hiraldo, Esq.
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
mhiraldo@hiraldolaw.com
Telephone: 954.400.4713

**DAPEER LAW P.A.**
Rachel Dapeer, Esq.
Florida Bar No. 108039
520 S. Dixie Hwy,
Suite 240
Hallandale Beach, Florida 33009
rachel@dapeer.com
Telephone: 954.799.5914
*Counsel for Plaintiff*