UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case Number: 9:24-cv-80702-RLR

RICHARD MAROUS, on behalf of all
others similarly situated,

Plaintiff,

vs.

NOW OPTICS HOLDINGS, LLC
d/b/a STANTON OPTICAL,

Defendant.
_______________________________________ /

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Defendant, Now Optics Holdings, LLC d/b/a Stanton Optical ("Now Optics") hereby files its Response in Opposition to Plaintiff's Renewed Motion for Class Certification.

## INTRODUCTION

This TCPA case is the latest money grab by a serial plaintiff who altogether lacks the necessary character, integrity, and credibility to serve as a fiduciary for the putative class he seeks to represent. After being the plaintiff in at least nine (9) different lawsuits over the last seven years, he sat down for deposition in this case and repeatedly lied under oath. He has been arrested for fraud, and he lost both his job as a corrections officer and his appointment to the National Guard as a result of this arrest. He was subsequently terminated from the University of Florida upon failing a background check due to his criminal past. He has also been terminated from several jobs for dishonest acts including time theft and conduct unbecoming of a public officer.

Even if he had the requisite character and integrity, in this case he has not bothered to supervise his lawyers, learn basic facts about the case he seeks to lead, or even read the complaint before it was filed. He lacks even the most basic knowledge about his duties as a class representative. And, despite having almost three months' notice of the mediation date, Plaintiff did not plan on attending. He knows only one thing – that he can recover money if he agrees to serve as the class representative in putative class actions. His involvement as lead plaintiff in class action cases has always been through the same few groups of lawyers (including counsel in this case), and he has settled on an individual basis in every single one of these cases. Despite filing seven separate class actions over the last seven years, he has never been appointed by any court to serve as a class representative.

His counsel has flip-flopped in this case, first attempting to represent an obviously defective class that included various different kinds of text messages (appointment reminders, eyeglass sales, product availability, etc.) sent at various times, for various reasons, to various different customers, in various locations. After taking the deposition of Defendant's class representative Lukana Justin, counsel attempted to shore up these fatal defects by significantly narrowing their class definition to remove all messages except the messages relating to a single issue: the rebranding of My Eyelab to Stanton Optical.[1] Now, in their second class certification attempt, they change the definition again.

[1] Plaintiff has abandoned his claims related to any of the remaining text messages. *See* Plaintiff's Response in Opposition to Defendant's Cross-Motion [DE 94] ("Plaintiff's Resp.") at 1 n.1.

Aside from the fact that by removing the other text messages, they have removed any chance of prevailing on the merits (the remaining message in this case are simple informational messages that do not violate the TCPA, relating to Defendant's brand transition from My Eyelab to Stanton Optical), counsel's narrowed class definition does not create a certifiable class. Even after undersigned counsel agreed to stipulate to numerosity and ascertainability (to streamline the issues for this Court), the class definition here remains fatally flawed, requiring numerous individual inquiries to answer the threshold question of whether each text recipient is even a member of the putative class. Moreover, numerous individual inquiries regarding the consent and established business relationship ("EBR") defenses destroy commonality and predominance, and unique facts relating to this plaintiff destroy typicality. Even if all of these defects could be accommodated, for the reasons stated above this plaintiff lacks the necessary integrity and credibility to serve as a class representative. For all of these reasons, certification should be denied.

## FACTUAL BACKGROUND

Defendant, through its subsidiaries, operates an eye care business that includes several retail stores offering eye glasses, contacts, sunglasses, and the ability to obtain an eye exam through an independent physician. Prior to 2024, Defendant operated retail stores under two different brands, My Eyelab and Stanton Optical.

In 2023, Defendant decided to transition all My Eyelab stores to the Stanton Optical brand, because it wanted to establish a uniform brand for all of its eye care locations. *See* Exhibit 1, Deposition of Lukana Justin ("Justin Dep.") at 16:11-15. As part of this transition, Defendant sent text messages to customers (all of whom had voluntarily provided their phone numbers) to inform them that their local eye care store was changing its name. Exh. 1, Justin Dep. 27:3-25.

Mr. Marous was a customer of a My Eyelab store in Gainesville, Florida. *See* Exhibit 2, Deposition of Richard Marous ("Marous Dep.") at 43:3-20. Around January of 2020, Mr. Marous voluntarily provided his telephone number to the Defendant, like all of the customers in the putative class, for the purpose of communicating with Defendant about his eye care. Exh. 2, Marous Dep. 43:18-24; 50:7-20.

Between January of 2020 and October 2023, Defendant did not send any text messages to the Plaintiff. On October 2, 2023, Defendant began sending Mr. Marous text messages to inform him of the transition from My Eyelab to the Stanton Optical brand. The purpose of these messages was not to sell anything, market anything, or promote anything. Exh. 1, Justin Dep. at 22:22-23:13.

The purpose was simply to inform Mr. Marous (and all of the other customers who had voluntarily provided their phone numbers to Defendant) that his local My Eyelab store was rebranding, but was still the same business he had previously visited. Exh. 1, Justin Dep. at 27:16-25.

Mr. Marous also received other text messages informing him of reminders regarding the expiration of his prescriptions and offers to purchase eyeglasses, but he has since dropped all claims as to those messages. *See* Plaintiff's Resp. at 1 n.1. Now that he has abandoned his claims (and the claims of many putative class members) with respect to the sole promotional text message he received, he is pursuing class claims only for informational text messages relating to the rebranding transition of the My Eyelab stores. *Id.*

After receiving eight text messages from Defendant over seven months, in May of 2024 Mr. Marous randomly decided to reply "STOP" after receiving the eighth message. He then proceeded to file the subject class action lawsuit, seeking to recover for each of the eight (8) messages he received. Prior to his "STOP" message in May of 2024, he never withdrew the consent to receive text messages regarding his eye care that he had given when he voluntarily provided his phone number to Defendant in January of 2020. Exh. 2, Marous Dep. 35:23-7. After his STOP message, he never received another message from Defendant.

In his deposition, he was unable to provide a coherent answer as to why he waited until receiving eight (8) text messages before texting "STOP." He said that he "figured they'd just keep coming anyway" as the reason why he did not initially text "STOP." But he was unable to say why he felt that texting "STOP" after receiving multiple messages would stop the messages, if texting "STOP" after the initial messages would not have stopped the messages. Exh. 2, Marous Dep. 77:25-78:6. When he finally texted "STOP" after receiving the eighth message, he claims he did so because he thought that eighth message (which advised him about a promotion for glasses) was a marketing message. Exh. 2, Marous Dep. 84:21-85:3. He has since abandoned the claim as to that text message.

The record evidence demonstrates that Defendant has a robust TCPA compliance process. *See* Exhibit 3, Defendant's Interrogatory Responses at p. 5. Defendant's policy is to only send promotional texts to people who have affirmatively "opted in" to receive text messages from Defendant. *Id.* Defendant does not send any kind of text messages to persons who did not voluntarily provide their phone number to Defendant for the purpose of communicating about their eye care. *Id.*; Exh. 1, Justin Dep. at 58:3-59:4. Defendant has testified that it believes the subject

text messages concerning its rebranding were purely informational, and not promotional. Exh. 1, Justin Dep. at 51:6-53:14. Plaintiff himself appears to agree with Defendant on this point, insofar as he testified that he texted "STOP" after the eighth text he received from Defendants, because that was a marketing message. Exh. 2, Marous Dep. 84:21-85:3.

Through discovery in this case, Defendant has learned that Mr. Marous is a serial filer of class action claims, including TCPA actions. Exhibit 4, Compilation of Class Action Complaints filed by Richard Marous ("Marous Complaints"). He has dismissed every single one of these cases on an individual basis. *See* Exhibit 5, Compilation of Class Action Dismissals by Richard Marous ("Marous Dismissals"), and all but one was the result of an individual settlement.[2] He has never been appointed or approved by any court to serve as a class representative. As described in greater detail above and below, Mr. Marous has a long history of fraud and dishonest behavior that disqualifies him from serving as a class representative, but his involvement in other cases (and consequent familiarity with the TCPA) also renders suspect and unique his conduct in this case, insofar as he waited until after he had received eight (8) text messages prior to texting "STOP."

After amending and narrowing his class definition, Plaintiff currently seeks to certify a class of individuals who received only informational text messages pertaining to the brand transition from My Eyelab to Stanton Optical. As outlined herein, his efforts are unavailing – even the new narrower class definition cannot be certified as a class action.

## LEGAL ARGUMENT

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011). Certification is permitted only if the Court "is satisfied, after a rigorous analysis, that the prerequisites … have been satisfied." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). In conducting is rigorous analysis the Court must look beyond the pleadings in order to determine whether class certification is appropriate. *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996) ("Going beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues."). "Although the trial court should not determine the merits of the plaintiffs' claim at the class certification stage, <u>the trial court can and should consider the merits of the case</u>

[2] The HCA matter described below does not appear to be the result of a settlement, but it was dismissed on an individual basis without prejudice.

to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." *Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1190 (11th Cir. 2009) (emphasis added).

A class may not be certified if doing so would "sacrific[e] procedural fairness." Fed. R. Civ. P. 23 Advisory Committee Notes, 1966 Amendments; *Dukes*, 564 U.S. 338 (2011). A court may not gloss over differences in applicable law or facts to impose a different standard of proof than would exist for an individual action. *In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1020 (7th Cir. 2002). Nor may a court deprive a defendant of its right to litigate its defenses fully. *Dukes*, 564 U.S. 338. In a class action, "the parties' legal rights and duties [remain] intact and the rules of decision unchanged." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1443 (2010).

"All else being equal, the presumption is against class certification." *Brown v. Electrolux Home Products, Inc.*, 817 F.3d 1225, 1233 (11th Cir. 2016). After all, "the entire point of a burden of proof is that, if doubts remain about whether the standard is satisfied, the party with the burden of proof loses." *Id.* (quotations omitted).

## ARGUMENT AND MEMORANDUM OF LAW

### A. Plaintiff's Proposed Class Definition Fails to Meet the Requisite Standard of Adequacy

"Before a district court may grant a motion for class certification, a plaintiff seeking to represent a proposed class must establish that the proposed class is 'adequately defined….'" *Alhassid v. Bank of Am., N.A.*, 307 F.R.D. 684, 693 (S.D. Fla. 2015) (citing *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 684 (S.D. Fla. 2014)); *see also Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012). "A court should deny class certification where the class definitions are overly broad, amorphous, and vague, or where the number of individualized determinations required to determine class membership becomes too administratively difficult." *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 269 (S.D. Fla. 2003). In other words, Plaintiff cannot propose a definition that would require thousands of individualized inquiries just to determine membership in the class. *See Kirts v. Green Bullion Fin. Services, LLC*, 10-20312-CIV, 2010 WL 3184382, at *6 (S.D. Fla. Aug. 3, 2010) ("Since this would entirely defeat the purpose of conducting a class action, Plaintiffs' proposed definition of the Class is inadequate."); *Perez*, 218 F.R.D. at 269 (S.D. Fla. 2003) (denying class certification where "individualized mini-trials would be required even on the limited issue of class membership"); *McGuire v. Int'l Paper Co.*,

CIV.A.1:92-CV-593BRR, 1994 WL 261360, at *5 (S.D. Miss. Feb. 18, 1994) (denying certification, finding that "an inestimable number of individual hearings" is needed to determine class membership and "the judicial and litigation costs of making these threshold determinations would eliminate any possibility that a class action would yield any of its intended efficiencies").

In the Amended Complaint, Plaintiff proposed a class definition that was simply unworkable. First Amended Complaint [DE 22] at ¶ 15. Plaintiff recognized this and then amended the definition in his original motion for class certification. *See* Plaintiff's Motion for Class Certification [DE 57] at 1. In this renewed Motion for Class Certification [DE 108] ("Motion") Plaintiff revises the definition again. *See* Motion at p.1.

Despite changing this definition for a third time, by adding elements of the claim and defenses, Plaintiff has placed front and center the issues of consent, established business relationship, and residential vs. commercial: these issues must be individually resolved for each of the thousands of putative class members, just to determine if an individual is a member of the class. Plaintiff attempted to narrow the class by excluding individuals who have affirmatively opted in to receiving promotional text messages, but, as set forth *infra* in section D.i., consent can be obtained in various different ways other than by affirmatively opting in. Most of these ways of obtaining consent are not recorded in the logs Plaintiff relies upon. Exhibit 6, Declaration of Lukana Justin at ¶¶ 8-9. Indeed, the only kind of consent listed in the referenced logs is express consent obtained by affirmatively opting in to receiving promotional text messages.

As explained below in section D., the issues of consent, established business relationship, and residential vs. commercial must be determined as to each putative class member, and an individual inquiry for each putative class member is required to determine these issues. By adding these issues into the class definition, Plaintiff has not cured the defects in his class definition, because the Court will still have to engage in numerous individual inquiries (for each of the thousands of putative class members) just to determine the threshold issue of class membership. *See McGuire*, CIV.A.1:92-CV-593BRR, 1994 WL 261360, at *5 (S.D. Miss. Feb. 18, 1994).

In addition to being unworkable due to the thousands of individualized inquiries that would be required just to determine threshold membership in the putative class, Plaintiff has effectively defined the class in such a way that any class members for whom there is no liability are simply defined out of the class. "A fail-safe class is one whose definition incorporates the elements of a successful legal claim," such that "being granted membership in the class is thus synonymous with

a victory on the underlying claim." *Tillman v. Ally Fin. Inc.*, 2:16-CV-313-FTM-99CM, 2016 WL 6996113, at *5 (M.D. Fla. Nov. 30, 2016); *MSP Recovery Claims, Series LLC v. Atl. Specialty Ins. Co.*, No. 6:20-CV-553-RBD-EJK, 2021 WL 6750961, at *2 (M.D. Fla. Dec. 29, 2021.

**B. Plaintiff fails to satisfy the Commonality and Typicality requirements**

***i. Commonality***

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." In other words, the class members' claims "must depend upon a common contention." *Dukes*, 564 U.S. at 350 (2011). That common contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "What matters [for commonality] is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id*. *See also Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1270 (11th Cir. 2009) ("Under the Rule 23(a)(2) commonality requirement, a class action must involve issues that are susceptible to class-wide proof.").

Here, while Plaintiff has raised a handful of common questions, the answers to those questions will not drive the litigation. The first question posed by the Plaintiff is whether the text messages constitute "telephone solicitations," which is an issue likely to be determined on summary judgment as both parties have filed summary judgment on that issue. The second question is not even at issue because Plaintiff has since abandoned his claim as to the only promotional text message that was sent. *See* Plaintiff's Resp. at 1 n.1.

The remaining questions they pose are simply "filler" questions to make it appear as though there are many common questions that will drive the litigation, but a cursory review shows that that is not the case. The total number of text messages sent is simply a matter of arithmetic or a review of the logs that Plaintiff attached to the motion. Damages are also a matter of arithmetic. Finally, "whether defendant violated the TCPA" is a broad, overarching question that can only be answered after consideration of the actual, real questions that will drive this litigation.

The questions that will drive this litigation are (1) whether each putative class member consented to receiving text messages by voluntarily providing his or her phone number (2) whether there is an EBR, and (3) whether the phone number called was residential or commercial. The

answers to those questions cannot be determined on a class-wide basis using generalized proof. *Vega*, 564 F.3d at 1270 (11th Cir. 2009).

Each of these questions requires an individual inquiry into the circumstances that lead to the individual providing their phone number to the Defendant, the existence of an EBR, and/or whether the number provided was residential or commercial. In an effort to avoid this fact, Plaintiff makes the novel argument that Defendant somehow abandoned these defenses because it did not move for summary judgment on them. Plaintiff did not cite any case, nor did Defendant find any case to support such a conclusion. However, Plaintiff completely ignores the fact that he moved for summary judgment on all of these issues and Defendant has responded to those arguments, demonstrating why summary judgment is <u>not</u> appropriate as to those fact intensive issues, because these questions would have to be answered for each absent class member in a separate mini trial for that class member, based on the unique facts and circumstances of that class member's claim.

Thus, commonality is absent here because the questions that will actually drive the litigation cannot be answered with class-wide proof. Put simply, the trial of the claim of the named Plaintiff would not answer these questions for anyone except the named Plaintiff. *Brown*, 817 F.3d at 1238 (11th Cir. 2016) ("What matters to class certification ... is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.").

***ii. Typicality***

To establish typicality, "there must be a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). However, "when proof of the class representative's claim would not necessarily prove the claims of the proposed class members, the class representative does not satisfy the typicality requirement." *Day v. Sarasota Drs. Hosp., Inc.*, No. 8:19-cv-1522, 2020 WL 4539145, at *7 (M.D. Fla. July 23, 2020).

Furthermore, where Plaintiff's claim is subject to unique defenses, or even an <u>arguably</u> unique defense, there is no typicality. *See Boca Raton Cmty. Hosp. v. Tenet Healthcare Corp.*, 238 F.R.D. 679 (S.D. Fla. 2006) ("'[E]ven an arguable defense can vitiate' certification 'if it will distract the named plaintiff's attention from the issues common to the class.'"). *O'Neill v. Home Depot U.S.A., Inc.*, 243 F.R.D. 469, 478-79 (S.D. Fla. 2006) ("Defendant will also be litigating unique defenses which emphasize the differences among the class members and portend that

individual issues are likely to predominate."); *Jacobs v. Osmose, Inc.*, 213 F.R.D. 607, 613 (S.D. Fla. 2003) (typicality "prevents the representative's claims from being resolved on grounds that are not applicable to the other member's claims."); *State of Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1321 (9th Cir. 1997); *Beck v. Maximus, Inc.*, 457 F.3d 291 (3rd Cir. 2006).

Here, the evidence demonstrates that Plaintiff's claim is not typical of the putative class members' claims, for various reasons. First, as noted above, the Do-Not-Call provisions do not apply to commercial telephone numbers and Mr. Marous' telephone number was used as a commercial number. *Chennette*, 50 F.4th at 1225 (9th Cir. 2022) (explaining that "defendants may rebut the presumption [that a number is residential] and show that the cell phone is a business line."). For several years, Mr. Marous has run a photography business and has advertised that business using the phone number that is the subject of his claim. *See* Exh. 7, Search Results for Richard Marous Photography; Exh. 2, Marous Dep. 92:20-24; 96:3-7. If Plaintiff's telephone number is considered commercial and not subject to the TCPA, then his entire claim must be resolved in favor of Now Optics. This defense is unique to Mr. Marous, which precludes a finding of typicality, because resolving this issue in Mr. Marous' trial cannot resolve this issue for any of the absent class members.

Second, the timing of Mr. Marous' revocation of consent (and his motivation for doing so) will be an issue at trial, implicating his credibility. Mr. Marous voluntarily provided his phone number so that the Defendant can communicate with him about his eye care. Exh. 2, Marous Dep. 56:15-57:20. However, he waited to receive eight (8) text messages before revoking that consent and failed to provide any credible explanation for waiting. Exh. 2, Marous Dep. 77:25-78:6. The circumstances around his consent and the timing of his decision to text "STOP" will be a feature at his trial because, as set forth below in section D.ii, Mr. Marous has a long history of TCPA actions and a pattern of failing to revoke consent to increase the value of his TCPA claims. These facts call into question Mr. Marous' motivation for bringing this lawsuit, create a serious credibility issue, and make him vulnerable to unique defenses. These unique defenses will distract from the merits of the case as to each absent class member, and could adversely impact the claims of absent class members who do not have a similar history with TCPA claims.[3] *Hirsch v. USHealth*

[3] This has already occurred in this case as the parties were required to appear at a discovery hearing in order to obtain the evidence that placed Mr. Marous' character and credibility at issue, over his objection. *See* Joint Discovery Memorandum [DE 46].

*Advisors, LLC*, 337 F.R.D. 118, 133 (N.D. Tex. 2020) (denying certification noting that "[Plaintiff]'s atypical behavior leads to an atypical case."); *Nghiem v. Dick's Sporting Goods, Inc.*, 318 F.R.D. 375, 382–83 (C.D. Cal. 2016) (denying class certification because "[t]he major focus of this litigation will be on these issues and defenses unique to Nghiem, not on the claims of the class.").

Third, Mr. Marous has been dishonest in deposition, particularly as to his participation in various class actions. His credibility will already be a feature of the trial, and his deposition testimony, discussed in greater detail *infra* in section C.ii, will serve as evidence to impeach his credibility as to his motivation for waiting so long to revoke consent. *Darvin v. Int'l Harvester Co.*, 610 F. Supp. 255, 257 (S.D.N.Y. 1985) ("This type of inconsistent testimony could create serious problems with respect to plaintiff's credibility and could become the focus of cross examination and unique defenses at trial, to the detriment of the class.").

**C. Plaintiff does not Meet the Standard of Adequacy Required under Rule 23**

Rule 23(a) requires that class representatives "possess the personal characteristics and integrity necessary to fulfill the fiduciary role of class representative." *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987). As one court stated:

> It is crucial to consider with great care the suitability of the plaintiff to act as class representative. Such a representative serves as a guardian of the interests of the class and because of this fiduciary relationship he must be held to a high level of responsibility. Such a representative owes to those whose cause he advocates a 'duty of the finest loyalty....

*Hall v. Nat'l Recovery Sys., Inc.*, No. 96-132-CIV-T-17(C), 1996 WL 467512, at *4 (M.D. Fla. Aug. 9, 1996) (emphasis added); s*ee also Pines Nursing Home (77), Inc v. Rehabcare Group, Inc.*, No. 1:14-CV-20039-UU, 2014 WL 12531512, at *3 (S.D. Fla. June 20, 2014) ("[N]amed plaintiffs might not qualify as adequate class representatives because they do not possess the personal characteristics and integrity necessary to fulfill the fiduciary role of class representative"). "Courts are obligated to carefully scrutinize adequacy of representation in all class actions to ensure the forthrightness and vigor with which the class representative would assert and defend the interests of the class members." *In re FleetBoston Fin. Corp. Sec. Litig.*, 253 F.R.D. 315, 329 (D.N.J. 2008).

Finally, "[t]he Court must 'undertake a stringent and continuing examination of the adequacy of representation by the named class representative[ ] at all stages of the litigation where absent members will be bound by the court's judgment.' " *Pines Nursing Home (77), Inc*, No.

1:14-CV-20039-UU, 2014 WL 12531512, at *3. Importantly, "[i]n determining adequacy of representation, a district court is not confined to specific procedures, and it is proper for the district court to consider all available additional circumstances and facts of a case." *In re FleetBoston Fin. Corp. Sec. Litig.*, 253 F.R.D. 315, 329 (D.N.J. 2008). This includes all evidence available at the time of class certification, even if this evidence may ultimately be inadmissible at trial. *In re Chiquita Brands Int'l Inc. Alien Tort Statute & Shareholders Derivative Litig.*, 331 F.R.D. 675, 680 (S.D. Fla. 2019) ("[I]n the context of determining class certification, the evidence rules are relaxed, and courts may consider evidence that may not ultimately be admissible at trial.") (citing *Shamblin v. Obama for America*, 2015 WL 1909765 (M.D. Fla. 2015)).

Plaintiff cannot serve as the class representative for two reasons: (1) he has serious credibility problems and lacks the requisite integrity and credibility to serve as a fiduciary for the class here; and (2) because despite his claims in the declaration attached to the Motion, he does not understand his role and does not have the characteristics needed to be a fiduciary to the class.

***i. Mr. Marous lacks the requisite character, integrity, and credibility***

The record evidence demonstrates a pattern of dishonest behavior that disqualifies Plaintiff as a class representative. *Keim v. ADF MidAtlantic, LLC*, 328 F.R.D. 668, 692 (S.D. Fla. 2018) ("Under certain circumstances prior fraudulent conduct can indicate that a plaintiff does not have the personal integrity to serve as a class representative."); *Pines Nursing Home (77), Inc.*, No. 1:14-CV-20039-UU, 2014 WL 12531512, at *3 (S.D. Fla. June 20, 2014) ("[N]amed plaintiffs might not qualify as adequate class representatives because they do not possess the personal characteristics and integrity necessary to fulfill the fiduciary role of class representative").

First, in 2021, Mr. Marous was arrested for a crime involving fraud. At his deposition, Mr. Marous was evasive and dishonest. He testified that he simply "was arrested for using his debit card", Exh. 2, Marous Dep. 24:22-25:1, but records show that [redacted], and the criminal complaint indicates that the arrest involved [redacted]. *See* Exhibit 8, Sworn Criminal Complaint.

Second, at his deposition, Mr. Marous was evasive and dishonest about the circumstances leading to termination from several positions, including the Florida Army National Guard ("National Guard") and Florida Department of Corrections (FDOC). According to his file with the National Guard, [redacted]. *See* Exhibit 9, Employment Records from National Guard at p. 1. Similarly, with respect to the FDOC, he initially

testified to leaving the department because the location closed, Exh. 2, Marous Dep. 23:25-24:5, but his employment records show [redacted] *See* Exhibit 10, Termination letter from FDOC. Finally, with respect to his employment with the University of Florida College of Medicine, [redacted], just as he did in his deposition. *See* Exhibit 11, Employment Records from University of Florida College of Veterinary Medicine at p. 1 [redacted]; Exh. 2, Marous Dep. 24:22-25:1. After obtaining the position, [redacted]. *See* Exh. 11. at pp. 11, 16. After his termination, [redacted]. *Id.* at 14.

Subsequently, Mr. Marous was also [redacted] *See* Exhibit 12, Records from Securitas Security Services USA, Inc. When asked about this, he said nothing about [redacted], instead testifying that "they had me sign papers saying I was going to quit when I had my back injury . . . ." Exh. 2, Marous Dep. 21:2-8.

Mr. Marous, through his actions, has shown that he is not an honest person. Moreover, his blatant dishonesty during deposition, job applications, and other communications and his propensity to cover up criminal activity and other fraudulent behavior shows that this is his character, rather than an isolated incident.[4]

<u>Third</u>, a review of the complaints in Mr. Marous' prior TCPA lawsuits shows a pattern of waiting until a case is more profitable before making any effort to stop incoming messages. *Nghiem*, 318 F.R.D. at 383 (C.D. Cal. 2016) (finding that a Plaintiff was not an adequate class representative when he signed up to receive text messages for the purpose of supporting a TCPA lawsuit). In his first class action lawsuit on record, Mr. Marous filed after receiving one text message allegedly violating the TCPA. *See* Exh. 4, Marous Complaints at 6. In his second lawsuit, filed just one day after his first one, he received two text messages allegedly in violation of the

---

[4] Evidence of Mr. Marous' character and prior acts is generally admissible to address his motivation for filing the lawsuit and other related issues. Fed. R. Evid. 404.

TCPA. *Id.* at 22. For his next TCPA lawsuit, he received four different text messages before filing. *Id.* at 35. Notably, all of those cases resulted in individual settlements. Finally, in this case, he received eight (8) text messages before texting "STOP," and he did not have a coherent explanation for why he waited until he had received eight (8) messages before texting "STOP." *See* First Amended Complaint [DE 22] at ¶ 15.

The evidence here overwhelmingly demonstrates that Mr. Marous does not meet the characteristics required to serve as a fiduciary to the class members because he prioritizes his own interests, and has a history of dishonest behavior that simply disqualifies him from serving. *Hall*, No. 96-132-CIV-T-17(C), 1996 WL 467512, at *5 (M.D. Fla. Aug. 9, 1996) (noting that the various fraud allegations against the named plaintiff would not, individually, render him inadequate, but when considered together his credibility would be a material issue at trial and would prejudice other class members).

***ii. Plaintiff lacks the requisite knowledge and interest in this case***

Mr. Marous' deposition testimony demonstrates that he does not take his role as a class representative seriously. He did not read the complaint prior to filing this lawsuit. Exh. 2, Marous Dep. 97:1-12. He did not know where his lawsuit is filed. *Id.* at 106:1-3. He did not know who the putative class members are. *Id.* at 106:7-8. He did not know when he decided to bring the lawsuit. *Id.* at 106:9-14. He did not know who decided the specific entity to sue. *Id.* at 106:21-25. He did not know what injunctive relief he is seeking. *Id.* at 111:14-20. He did not know if any motions have been filed. *Id.* at 114:3-5. And, he did not know what if any defenses have been raised. *Id.* at 71:11-21; 107:7-12. Also, Plaintiff did not plan to attend mediation in this case, despite almost three months' notice. Plaintiff was not present when mediation started, instead his counsel stated that Plaintiff would be available by phone if needed. It was only upon Defendant's insistence that Plaintiff appeared, and he only did so in caucus. Neither Defendant nor Defendant's counsel actually saw Mr. Marous that day.

With respect to other matters, Mr. Marous testified that other than one matter in Tennessee, he had not filed any class actions before this one. *Id.* at 113:21-25; 115:22-116:1. This testimony is patently false. In fact, Mr. Marous has filed numerous class actions lawsuits. Specifically, Mr. Marous is listed as the Plaintiff and class representative in the following lawsuits:

- *Marous v. Across the Nation, Promo, Model & Staffing, LTD*, Case No. 18-cv-80179-BB, in the District Court for the Southern District of Florida
- *Marous v. Jobmatch, LLC d/b/a Applicantpro*, Case No. 18-cv-80186-RLR, in the

District Court for the Southern District of Florida

- *Marous v. Rocket Mortgage, LLC*, Case No. 22-cv-00006MW-GRJ, in the District Court for the Northern District of Florida
- *Marous v. Cox Communications, Inc.*, Case No. 01 2023 CA 002219, in the Circuit Court of the 8th Judicial Circuit in and for Alachua County, Florida
- *Marous v. Midflorida Credit Union*, Case. No. 01 2023 CA 002297, in the Circuit Court of the 8th Judicial Circuit in and for Alachua County, Florida
- *Silvers and Marous v. HCA Healthcare, Inc.*, Case No. 23-CV-00684, in the District Court for the Middle District of Tennessee
- *Marous v. Midflorida Credit Union*, Case. No. 01 2024 CA 000611, in the Circuit Court of the 8th Judicial Circuit in and for Alachua County, Florida

*See* Exh. 4, Marous Complaints.

Mr. Marous failed to disclose all of these litigation cases in his deposition, which is itself dishonest. Additionally, when asked about these lawsuits at his deposition, he said they were individual lawsuits rather than class actions. Exh. 2, Marous Dep. 11:1-4; 14:5-15:7; 15:12-17; 18:13-20. Yet all of the aforementioned lawsuits began as class actions. *See* Exh. 4, Marous Complaints. And Mr. Marous testified that he knows the difference between an individual action and a class action. Exh. 2, Marous Dep. 113:21-25. Importantly, this evidence of other lawsuits is admissible to show his motivation for bringing this lawsuit, and consequently his lies in deposition about these other lawsuits are likewise admissible. *See Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 802 (W.D. Pa. 2016) (granting summary judgment on a TCPA case after considering Plaintiff's extensive history filing TCPA actions).

These cases have all been settled on an individual basis, which is strong evidence that Plaintiff has always put his own interests above the interests of the putative class members. *See* Exh 5, Marous Dismissals by Richard Marous ("Marous Dismissals"); *Telecomm Tech. Services, Inc. v. Siemens Rolm Communications, Inc.*, 172 F.R.D. 532, 544 (N.D. Ga. 1997) (denying class certification and noting that a representative must have no interest which is antagonistic to the class). In fact, in the only case that is still pending, HCA Healthcare, Mr. Marous was not even sure if he was involved in the case, Exh. 2, Marous Dep. 16:15-17:14, and he did not know that he had voluntarily dismissed that case in April of 2024. Exh. 2, Marous Dep. 16:18-17:11.[5]

### D. The proposed class results in a violation of Now Optics' right to due process

[5] The HCA matter was a consolidated case filed by various plaintiffs. The case is still pending as to other plaintiffs.

"A defendant in a class action has a due process right to raise individual challenges and defenses to claims, and a class action cannot be certified in a way that eviscerates this right or masks individual issues." *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013).

Certification of the proposed class would preclude Now Optics from presenting its defenses to the individual claims of the class members, which unjustly deprives Now Optics' rights to due process. In the Motion, Plaintiff anticipates this argument and suggests that none of the aforementioned defenses can proceed either because evidence has not been presented or they were waived. These are the same arguments Plaintiff presented in his Motion for Summary Judgment and have been briefed extensively. To avoid unnecessary repetition, Defendant refers the Court to its Response in Opposition to Summary Judgment [DE 89].

Specifically with respect to class certification, Now Optics has a due process right to discover and present evidence pertaining to the consent, the prior business relationship exception, and the applicability of the TCPA to residential vs. business telephone numbers for each putative class member. Plaintiff attempts to define these issues out of the class, but the issues nonetheless remain in the case, and Now Optics is entitled to address these issues with respect to each putative class member.

***i. Consent***

With respect to consent, the fact that Plaintiff is excluding anyone who affirmatively opted-in to receiving text messages does not eliminate the need to address the question of consent. To determine consent under the TCPA, the court is required to use common law principles. *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1255 (11th Cir. 2014) ("We ... presume from the TCPA's silence regarding the means of providing or revoking consent that Congress sought to incorporate the 'common law concept of consent.'" (*quoting Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 270 (3d Cir. 2013)).

Even if a person does not intend to consent, their "words or conduct [that] are reasonably understood by another to be intended as consent ... constitute apparent consent and are as effective as consent in fact." *See Lucoff v. Navient Sols., LLC,* 981 F.3d 1299, 1304 (11th Cir. 2020) (*quoting* RESTATEMENT (SECOND) OF TORTS § 892(2)). Here, all phone numbers obtained by Defendant are voluntarily provided by its customers or potential customers. *See* Exh. 3, Defendant's Interrogatory Responses at p. 5. And the purpose of providing their phone numbers to Now Optics is to receive messages concerning eye care from Now Optics. *Id.*; Exh. 1, Justin

Dep. 22:22-23:11.

Thus, even if a potential class member did not explicitly "opt in" to provide consent to receive promotional messages (which is the only category of consent that can be determined by Defendant's logs produced in discovery), whether each class member consented to receiving the informational messages at issue must still be addressed, and cannot be resolved based on generalized proof. *See* Exh. 6, Declaration of Lukana Justin at ¶¶ 8-9. This issue can only be resolved by examining the individual circumstances that led to each putative class member providing his or her phone number. *Id.* at ¶¶ 6-7.

***ii. Established Business Relationship***

An EBR can be proven by demonstrating a transaction, or even just an inquiry regarding Now Optics' goods or services. *See* 47 C.F.R. § 64.1200 (f)(5). In other words, <u>any</u> inquiry by a putative class member could result in an EBR that is not captured by the logs referenced in the Motion, as <u>those logs only indicate who actually purchased from Defendant</u>. For instance, the text message dated October 2, 2023 contains a phone number for customers to call with questions, which if called would be sufficient to establish an EBR. *See* First Amended Complaint at ¶ 15. Likewise, a former customer or potential future customer walking into a store and inquiring about eye glasses could similarly establish an EBR. *See* Exh. 6, Declaration of Lukana Justin at ¶ 5. People routinely call or visit Stanton Optical (and former My Eyelab) stores to make inquiries about products or services. *Id.*

And, contrary to Plaintiff's assertion, whether there is an EBR cannot be established by reviewing Defendant's records. Defendant's records cannot establish whether a former customer walked into a store, asked a question, and then left. Furthermore, the content of a call or discussion had during a walk in is critical in determining whether an EBR was established. These are facts that cannot be established by Defendant's records and are not subject to class-wide determination. Thus, preventing this inquiry on an individual bases would result in a violation of Now Optics' right to due process.

***iii. Residential vs. Commercial***

Because the do-not-call provisions of the TCPA only apply to residential telephone numbers, Defendant is entitled to present that defense where applicable. Defendant has stipulated that determining registration on the DNC is an administrative task, but registration on the DNC only establishes a <u>presumption</u> that the telephone number is residential as opposed to commercial.

*Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1225 (9th Cir. 2022) (explaining that "defendants may rebut the presumption [that a number is residential] and show that the cell phone is a business line."). Defendant should be afforded an opportunity to rebut that presumption as to each class member, particularly when (as in the case of the named Plaintiff) there is evidence that the telephone number is a business number. *See* Exhibit 7, Search Results for Richard Marous Photography; Exh. 2, Marous Dep. 92:20-24; 96:3-7.

Plaintiff argues that "home-based businesses" are not exempt from the TCPA restrictions and does so based on an interpretation of the TCPA in which the FCC wrote "[w]e also decline to exempt from the do-not-call rules those calls made to "home-based businesses'" Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 70 FR 19330-01. But Plaintiff left out the second clause of that sentence: "rather, we will review such calls as they are brought to our attention to determine whether or not the call was made to a residential subscriber." *Id.* In other words, home based businesses are not automatically exempt, but an individual inquiry is required. Class certification would effectively preclude Defendant from developing and then asserting this defense against each putative class member.

**E. The Individual Issues Predominate over the Common Questions**

The Court evaluates predominance by classifying the elements of the parties' claims and defenses as common or individual questions, based on how the parties will prove the claims and defenses at trial. *Brown*, 817 F.3d at 1234. This requirement is "far more demanding" than commonality. *Roundtree v. Bush Ross, P.A.*, 304 F.R.D. 644, 661–62 (M.D. Fla. 2015). "[T]o satisfy the predominance element, Plaintiffs have the burden of establishing 'a viable theory employing generalized proof to establish liability with respect to the class involved.'" *Licari Fam. Chiropractic v. eClinical Works*, No. 16-cv-3461, 2019 WL 7423551, at *7 (M.D. Fla. Sept. 16, 2019) (quoting *Gene & Gene v. BioPay*, 541 F.3d 318, 329 (5th Cir. 2008)). "[W]here the determination of liability and/or damages requires a case-by-case inquiry for each prospective plaintiff, courts have generally found the predominance and superiority requirements of Rule 23(b)(3) unsatisfied." *Kpadeh v. Emmanuel*, 261 F.R.D. 687, 690 (S.D. Fla. 2009).

In *Brown*, individual questions predominated over common questions because one element of each cause of action needed to be proven through individual evidence. 817 F.3d at 1235–37. Plaintiff argues that the common issues predominate because his claim and the claims of the putative class members can be proved using the message transmission logs and business records

attached as exhibits to the Motion. However, Plaintiff fails to recognize that the issues of consent and existence of an EBR cannot be resolved simply by reference to these records. Nor can the residential vs. commercial issue. These logs and other records show only (1) the date of the last purchase by a putative class member and (2) whether they formally "opted in" to receiving promotional text messages. And, as demonstrated above in section D., these issues can only be determined by an individualized inquiry into the facts pertaining to each absent class member.

Plaintiff argues that this Court is not required consider "bare assertions" in its predominance determination and cites cases that are completely inapposite. For example, in *Reyes v. BCA Fin. Services, Inc.*, No. 16-24077-CIV, 2018 WL 3145807 (S.D. Fla. June 26, 2018), the court noted that the defendant did not identify "a single instance" in which consent was obtained. Here, all of the text message recipients, including the Plaintiff, have voluntarily provided their telephone numbers, s*ee* Exh. 3, Defendant's Interrogatory Responses at p. 5; however, whether this constitutes consent is a deeper inquiry that requires getting into the mind of the putative class member and/or analyzing their actions. *See Lucoff*, 981 F.3d at 1304 (11th Cir. 2020). Similarly, Plaintiff cites *Cardenas v. Toyota Motor Corp.*, No. 18-CV-22798-CIV-FAM, 2021 WL 6926418, at *22 (S.D. Fla. Aug. 12, 2021), where the issue was whether the putative class member signed an arbitration agreement. Unlike *Cardenas*, and as shown in section D. and below, issues of consent, EBR, and residential vs. commercial cannot be established by simply looking at whether an arbitration agreement was signed.

Consent can be determined in a variety of ways. *Sliwa*, 333 F.R.D. at 264 (M.D. Fla. 2019) ("No specific method is required under the TCPA for a caller to obtain prior consent to place automated calls or to subsequently revoke that consent.") (quoting *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 (2015 FCC Ruling)*, 30 FCC Rcd. 7961, 7990). The class definition posited by Plaintiff attempts to exclude individuals who consented to promotional messages by expressing that intent, but the text messages at issue are not considered promotional by Defendant and, as a result, consent to receive these text messages may not have been recorded in the logs, even if consent had been given. Exh. 6, Declaration of Lukana Justin at ¶ 5.

Under well-established law, consent could have provided by a person voluntarily providing his or her telephone number, or otherwise indicating a desire to communicate about their transaction or product. *See Lucoff*, 981 F.3d at 1304 (11th Cir. 2020) ("words or conduct [that] are

reasonably understood by another to be intended as consent ... constitute apparent consent and are as effective as consent in fact."). Because of the way that Defendant's business operates (online, retail, phone-based) there are several different ways that a customer can provide consent under the applicable common law principles, and that consent is not revoked until the customer expresses some desire to do so. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961 (2015) ("We thus may provide a reasonable construction of the TCPA's terms, and clarify that consumers may revoke consent in any manner that clearly expresses a desire not to receive further messages"). Furthermore, this is an inquiry that must be done on a case-by-case basis. *Sliwa*, 333 F.R.D. 255, 264 ("In 2014, the FCC clarified that 'the scope of [an individual's prior express] consent must be determined upon the facts of each situation.'") (quoting *Matter of GroupMe, Inc./Skype Commc'ns S.A.R.L Petition for Expedited Declaratory Ruling Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 29 F.C.C. Rcd. 3442, 3446 (2014)); *see also Fober v. Mgmt. & Tech. Consultants, LLC,* No. SACV1501673CJCDFMX, 2016 WL 7626431, at *3 (C.D. Cal. July 29, 2016) ("[D]istrict courts have determined that when a consumer furnishes his or her phone number, courts should inquire into the surrounding circumstances to determine the proper scope of consent rather than just expect consumers to impose conditions on consent themselves."), *aff'd*, 886 F.3d 789 (9th Cir. 2018); *Skeete v. Republic Sch. Nashville*, No. 3-16-CV-0043, 2017 WL 2989189, at *3 (M.D. Tenn. Mar. 21, 2017) ("Moreover, the scope of such consent must be determined upon the facts of each situation, so the context of the consent provided is critical.").

Similarly, with respect to EBR, the business records only demonstrate the last purchase made by a customer. There is no class-wide evidence that will demonstrate an EBR that is not based on a purchase. There are several individual inquiries that will have to be determined such as:

- Did the individual walk in to a store to inquire about a product?
- Did they call customer service about a product or service?
- Did they communicate through social media?
- Do the Defendant's records indicate that the customer visited, inquired, or otherwise communicated with Defendant?

These questions must be answered to determine both the issues of consent and EBR. And the record evidence shows that all of these methods of communication have occurred with persons in

the putative class. *See* Exh. 6, Declaration of Lukana Justin at ¶ 6.

With respect to whether each putative class member's telephone number is residential, as pointed out above in section B.ii., there is rebuttable presumption that it is residential. But Defendant is entitled to rebut that presumption as to each putative class member. Mr. Marous' own case presents a fact issue as to his business use and the resolution of that issue in his case would do nothing to answer to that question with respect to the absent class members' claims.

Plaintiff cites to "Eleventh Circuit precedent" and suggests that even if individual inquiry is necessary, the inquiry can be addressed at the claims stage. *Ocwen Loan Servicing, LLC v. Belcher*, No. 18-90011, 2018 WL 3198552 (11th Cir. June 29, 2018). But Plaintiff, again, mischaracterizes the court's ruling. The court did not hold that the issues of consent, EBR, or residential vs. commercial can be addressed at the claims stage; rather, the court simply found that it was not an abuse of discretion for the lower court to do that under the facts of that specific case. *Id.* at *4. In fact, the court made it a point to write that it was not expressing an opinion on the correctness of the court's procedure. *Id.* ("[W]hile we express no opinion as to whether every aspect of the district court's decision was objectively correct . . . .").

Under the facts this case, once these initial questions are answered for each individual, the inquiry must delve deeper to determine what was said, to whom, when, etc. These issues will dominate this case as Defendant has a right to assert these defenses as to each individual putative class member. Thus, because the predominance element turns on whether individualized questions predominate over the common ones, this case is not suitable for class treatment. *See Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Services, Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010) ("But if, after adjudication of the class-wide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, [their] claims are not suitable for class certification under Rule 23(b)(3).'") (*quoting Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004)).

**<u>CONCLUSION</u>**

Based on the foregoing reasons, Plaintiff's Motion for Class Certification should be denied by this Court.

## REQUEST FOR HEARING

Pursuant to Southern District Local Rule 7.1 (b)(2), Defendant request a hearing on Plaintiff's Renewed Motion for Class Certification and Defendant's Response in Opposition to the Motion due the complexity of the issues pending before the court. Defendant requests that the hearing be an evidentiary hearing and estimates that approximately 3-4 hours would be needed for testimony and argument.

Dated: March 25, 2025

Respectfully submitted,

***By: /s/ Frank A. Zacherl***
Frank A. Zacherl, Esq.
Florida Bar No. 868094
FZacherl@shutts.com
Oliver Sepulveda, Esq.
Florida Bar No. 111763
OSepulveda@shutts.com

**SHUTTS & BOWEN LLP**
200 South Biscayne Blvd., Suite 4100
Miami, Florida 33131
Telephone: (305) 347-7305
Facsimile: (305) 347-7705
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of March 2025, a true and correct copy of the foregoing has been furnished via CM/ECF to all parties on attached service list.

*/s/Frank A. Zacherl*
FRANK A. ZACHERL

**RICHARD MAROUS,**
**individually and on behalf of all others similarly situated,**
**v.**
**NOW OPTICS HOLDINGS, LLC d/b/a STANTON OPTICAL**
**United States District Court**
**Southern District of Florida**
**Case No. 9:24-cv-80702-RLR**

**SERVICE LIST**

Rachel N. Dapeer, Esq.
DAPEER LAW, P.A.
20900 NE 30th Avenue
Suite 417
Aventura, Florida 33180
rachel@dapeer.com

*Counsel for Plaintiff*

Manuel S. Hiraldo, Esq.
HIRALDO P.A.
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
mhiraldo@hiraldolaw.com

*Counsel for Plaintiff*