**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 9:24-cv-80702-ROSENBERG/Reinhart**

RICHARD MAROUS, individually and
on behalf of all others similarly situated,

Plaintiff,

v.

NOW OPTICS HOLDINGS, LLC d/b/a
STANTON OPTICAL,

Defendant.
_____________________________________________/

**CLASS ACTION**

**JURY TRIAL DEMANDED**

**PLAINTIFF'S REPLY IN SUPPORT**
**OF RENEWED MOTION FOR CLASS CERTIFICATION**

## ARGUMENT

### A. The Class is Adequately Defined

Defendant first contends that consent is an individualized inquiry that renders the Class definition unworkable because it obtains *non-written* consent for its text messages in various, unrecorded ways. Resp. at 7. Defendant misses the point and applies the wrong consent standard. Under the relevant TCPA restrictions, Defendant can only engage in "telephone solicitations" if it has secured the consumer's "express invitation or permission", which must be evidenced by "***signed, written agreement*** between the consumer and seller[.]" 47 C.F.R. § 64.1200(c)(2)(ii) (emphasis supplied). The only evidence of *written* consent before this Court consists of Defendant's opt-ins for texts and Plaintiff has removed those individuals from the proposed Class. While the question of whether Defendant's texts are "telephone solicitations" is a merits issue,[1] either way, the issue can be decided without individualized inquiries as reflected by the parties' summary judgment briefing: either the text messages are solicitations requiring written consent, or the text messages are not solicitations and there is no TCPA violation. Accordingly, Defendant's non-written/unrecorded consents are irrelevant to the Class definition.

Perhaps most evident to the disingenuous nature of Defendant's argument regarding the adequacy of the Class definition is it now raising a residential versus commercial line issue. Defendant ***twice stipulated*** that "determining whether a cellular telephone number is residential is an administrative task that will be performed by the class administrator by reviewing whether the telephone number is registered on the National Do-Not-Call Registry." Ex. 6 to Mot., Numerosity and PII Stip. at ¶4; *see also* [DE 39]. Plaintiff relied on this stipulation in conducting discovery and ultimately defining the Class.[2] Now, Defendant attempts to backtrack, claiming that "Defendant has stipulated that determining registration on the DNC is an administrative task[.]" Resp. at 17. But that is not what Defendant agreed to; it stipulated, on two separate occasions, that the residential determination would be resolved by

---

[1] It's worth noting that this Court has already reviewed the subject text messages at the motion to dismiss stage and held, "[v]iewed in [the light most favorable to the Plaintiff] the alleged text messages serve a dual purpose—they inform, but they also solicit the provision of eye examination services. Dual purpose messages that include a solicitation are prohibited under the TCPA." Order, [DE 29 at 2].

[2] Plaintiff has revised the class definition to a narrower version of the original class definition based on discovery. *Abdeljalil v. GE Cap. Corp.*, 306 F.R.D. 303, 306 (S.D. Cal. 2015) (narrowing a class definition at the class certification stage is allowable).

reference to the NDNCR via a class administrator. In fact, the parties agreed that in lieu of Defendant producing class data, Defendant would stipulate to this very issue.[3] Accordingly, Defendant should not be permitted to challenge the Class definition as inadequate by reneging on its stipulation, while simultaneously withholding class data that would verify its new position. But even if this Court is inclined to entertain Defendant's argument, it should ultimately conclude that it is mertiless as reflected by ***Defendant's failure to rebut the residential line presumption with any evidence*** in its opposition to Plaintiff's Motion for Summary Judgment.

Defendant also contends that Plaintiff's Class is an impermissible fail-safe class. Resp. at 7-8. Defendant's argument lacks merit. Judge Moore recently rejected a similar fail-safe argument and held that the proposed class could be "determined using objective criteria…These determinations do not require a legal analysis; rather, class members can be identified using call logs that Citizens has agreed to produce if the Court certifies a class." *Shutler v. Citizens Disab. LLC*, 347 F.R.D. 663, at *6-7 (S.D. Fla. 2024). The same holds true here and this Court can determine membership using objective criteria available from Defendant's text and business records, including: (1) whether a person received more than one conversion/rebranding text message within a 12-month period; (2) whether the person's cellular telephone number was listed on the NDNCR for more than thirty days at the time the texts were received; (3) whether Defendant's business records indicate an opt-in for text messages by the individual; and (4) whether Defendant's business records indicate a purchase within the 18-months prior the texts. None of these questions require individual or merits determinations as Defendant contends. Instead, Class membership can be determined utilizing the NDNCR, Defendant's text message logs, and Defendant's business records just as in *Shutler. See* 347 F.R.D. 663, at *6-7; *see also Alderman v. GC Servs. Ltd. P'ship*, 2018 U.S. Dist. LEXIS 10205, at *10 (S.D. Fla. Jan. 19, 2018) (Rosenberg, J.) ("Plaintiff's proposed class is based on objective criteria that can be determined from Defendant's business records.")

**B. <u>Defendant's Commonality and Typicality Challenges are Meritless</u>**

Defendant challenges commonality by raising the issues of (1) unrecorded consents; (2) EBR; and (3) and whether a number is residential. Resp. at 8-9. Defendant argues that these issues create a mini trial for each absent class member. *Id.* at 9. However, unrecorded consents are immaterial to these claims;

---

[3] "The parties agree that in light of this Stipulation, Defendant will not produce names, phone numbers, email addresses, physical addresses, or other identifying information concerning any persons who fall within the aforementioned putative class…" Ex. 6 to Mot., Numerosity and PII Stip. at ¶6.

Defendant waived its EBR defense and submitted no admissible evidence to prove its defense, and, Defendant has itself established that its business records provide common evidence to determine who does not have an EBR with Defendant; and, lastly, Defendant stipulated to the residential question and, again, has no evidence to show otherwise – just conjecture by Counsel as reflected by its inability to submit any supporting evidence. Nor will Defendant ever be able to introduce any evidence to support its waived EBR defense or residential line argument for the reasons outlined in Plaintiff's Motion in Limine. [DE 103]. More importantly, however, Defendant ignores this Court's precedent that commonality is a "relatively light burden" that "requires only 'that there be at least one issue whose resolution will affect all or a significant number of the putative class members.'" *Alderman v. GC Servs. Ltd. P'ship*, 2018 U.S. Dist. LEXIS 10205, at *11 (S.D. Fla. Jan. 19, 2018) (Rosenberg, J.) (quoting *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009)). Plaintiff has identified more than one such question in his opening brief.

Moreover, "typicality, like commonality, is not demanding." *Id*. (quoting *Hicks v. Client Servs., Inc.*, 2008 U.S. Dist. LEXIS 101129, 2008 WL 5479111 (S.D. Fla. Dec. 11, 2008)). All Plaintiff need show is that his claims "arise from the same 'event or pattern or practice and are based on the same legal theory' as the claims of the remainder of the class." *Id.* (quoting *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)). Plaintiff demonstrated that he, like everyone in the Class, received the same rebranding text messages on his cellular phone, while registered on the NDNCR. Defendant insists that Plaintiff is not typical because he utilizes his telephone number for commercial purposes. Resp. at 10. Defendant, however, ignores that Plaintiff's cellular telephone is his home phone and that Plaintiff occasionally utilizes the number for his ***home-based*** photography business. Marous Dep. at 41:10-12; 92:10-12; 117:4-23. In other words, "[t]here is no indication that Plaintiff has a unique background or factual situation simply because he may have occasionally used his residential number for a home-based business." *Chinitz v. Intero Real Estate Servs.*, 2020 U.S. Dist. LEXIS 247921, at *30 (N.D. Cal. July 22, 2020); *see also Braver v. Northstar Alarm Servs.*, LLC, 329 F.R.D. 320, 329 (W.D. Okla. 2018) ("The TCPA does not make an exception to its prohibition for calling telephone lines if the residential line is used for a home-based business or for another business purpose.").

### C. In Attempting to Paint Plaintiff as Dishonest, Defendant Proves Itself to be the one Lacking in Character and Credibility

As held by this Court, "[c]lass representatives are adequate if (1) no 'substantial conflicts of interest exist between the representatives and the class,' and (2) 'the representatives will adequately prosecute the action.'" *Jones v. Jerome Golden Ctr. for Behavioral Health*, 2020 U.S.

Dist. LEXIS 103952, at *9 (S.D. Fla. Mar. 25, 2020) (Rosenberg, J.) (quoting *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003)). "Being convicted of a felony or serving time in prison does not automatically disqualify a class representative." *Connor v. Permanent Gen. Assurance Corp.*, No. 2022 U.S. Dist. LEXIS 67020, at *20 (S.D. Fla. Apr. 8, 2022) (collecting cases). Moreover, a plaintiff's purported status as a serial litigant (which Plaintiff here is not), is irrelevant to the adequacy inquiry. *M.D., P.A. v. Infucare RX LLC*, 2022 U.S. Dist. LEXIS 208452, n. 18 (M.D. Fla. Nov. 16, 2022); *Fauley v. Heska Corp.*, 326 F.R.D. 496, 506 (N.D. Ill. 2018). Defendant ignores these principles and precedent, and launches a 5-page tirade about Plaintiff's arrest (not conviction), purportedly "evasive" and "false" testimony in the face of poor and vague deposition questions, a "pattern" of lying in wait by failing to stop incoming solicitations, and so on. In *Shutler*, Judge Moore made quick work of a similar smear campaign by focusing on: whether the plaintiff will adequately represent the class. 347 F.R.D. 663, at *16. The answer to this question is yes based on Plaintiff's conduct of diligently litigating this case, including appearing for deposition, mediation, and responding to discovery.

Nevertheless, Plaintiff addresses each of Defendant's arguments to demonstrate that they are unfounded, and that the only dishonest actor here is Defendant. First, Plaintiff was not evasive or dishonest about his arrest when asked at his deposition. Instead, Defendant's counsel opted to ask ***two questions*** about the arrest and moved on. *See* Marous Dep. at 24:24 – 25:3. This is hardly proof of dishonest conduct by Plaintiff and instead just poor questioning by Defendant's counsel. Defendant of course ignores that the arrest did not even lead to a conviction knowing that even a conviction, without more, is insufficient to show inadequacy. *See Connor,* 2022 U.S. Dist. LEXIS 67020, at *20 (S.D. Fla. Apr. 8, 2022).

Second, Defendant attempts to prove that Plaintiff was evasive and dishonest about his termination from several jobs by citing either no deposition testimony at all, or selective portions of Plaintiff's testimony. For example, Defendant claims that Plaintiff was dishonest about his termination from the National Guard ***but cites no testimony*** from Plaintiff about the termination to support the argument. *See* Resp. at 12. Next, Defendant accuses Plaintiff of lying about his termination from the Florida Department of Corrections, misleadingly stating that Plaintiff "***initially*** testified to leaving the department because the location closed[.]" Resp. at 12-13 (emphasis supplied). But that is not what Plaintiff "initially" said, he commented that the location was currently closed, and testified that he was "terminated" because of his arrest. Marous Dep. at 25:14-23. Defendant also contends that Plaintiff lied on his application to the University of Florida, but the section of the application Defendant cites shows

that ***Plaintiff disclosed the arrest*** in his application; so it's unclear where Defendant believes a smoking gun exists. Defendant also claims that Plaintiff "lied" about the basis for his termination from UF "stating that it was because he was not vaccinated." Resp. at 13. Defendant cites "*Id*. at 14" for its argument. But neither Plaintiff's deposition transcript nor the UF records at page 14 say anything about a vaccination issue. Instead, Plaintiff testified that he was fired from that job because of his arrest. Marous Dep. at 27:17 – 28:2. Undeterred by the lack of any evidence, Defendant accuses Plaintiff of failing to answer a question about an incident (not even an arrest) related to his time records while working at Securitas Security. Resp. at 13. Defendant of course leaves out that its attorney did not ask a single question about Plaintiff's reason for leaving Securitas and Plaintiff did in fact volunteer that he was asked to sign papers to leave that employment. *See* Marous Dep. at 22:2-22.

Defendant is misrepresenting evidence and making unfounded claims in the hopes of finding a way out of a class that should be certified. Defendant's dishonest conduct is best on display in its argument that Plaintiff's "prior TCPA lawsuits shows a pattern of waiting until a case is more profitable before making any effort to stop incoming messages." Resp. at 13. Yet, Plaintiff has no way of controlling the number of unwanted solicitations sent to his phone in connection with three prior TCPA lawsuits filed 2018 and 2021.

Another example is Defendant's argument that Plaintiff does not take his role as a representative seriously because Plaintiff "did not read the complaint prior to filing this lawsuit." Resp. at 14. Unsurprisingly, that is not what Plaintiff said at this deposition. Plaintiff testified that he believed he reviewed the Complaint before it was filed. Marous Dep. at 96:23 – 97:2. Nevertheless, even if Defendant's argument that Plaintiff is unfamiliar with the case has any merit (it does not), "Defendant's challenges regarding Plaintiff's familiarity with the details of his claims do not compel a conclusion that Plaintiff is not adequate to represent the class." *Alderman v. GC Servs. Ltd. P'ship*, 2018 U.S. Dist. LEXIS 10205, at *16 (S.D. Fla. Jan. 19, 2018) (Rosenberg, J.) (collecting cases).

Besides lacking in evidentiary support, Defendant's argument lacks any legal basis as demonstrated by the very cases Defendant cites. For example, in *Hall v. Nat'l Recovery Sys.*, 10 Fla. L. Weekly Fed. D203 (U.S. M.D. Fla. August 9, 1996), the plaintiff did not have "various fraud allegations against" him as Defendant states. Resp. at 14. He had a "multitude of impeachable convictions[.]" *Hall*, 10 Fla. L. Weekly Fed. D203, at *14. Similarly, in *Keim v. ADF MidAtlantic, LLC*, the plaintiff was accused of participating in "Ponzi schemes" and was nevertheless found adequate. 328 F.R.D. 668, 692 (S.D. Fla. 2018). Lastly, in *Nghiem v. Dick's Sporting Goods, Inc.*, the plaintiff was found inadequate

because there was evidence that he had manufactured the lawsuit. *See* 318 F.R.D. 375, 382–83 (C.D. Cal. 2016).

Defendant additionally contends that Plaintiff provided false testimony about the nature of his prior litigation and attempted to conceal that the cases were class actions. Resp. at 14-15. Defendant leaves out that at the deposition, its counsel asked whether the cases were class action or individual suits without making any effort to distinguish the two and simply assuming that Plaintiff understood what was being asked. *See* Marous Dep. at 12:1-4. Setting aside the poor questioning at deposition, Defendant "apparently, does not realize that unless and until a class is certified, the action remains an individual matter." *Morales v. Halcore Grp., Inc.*, 2018 U.S. Dist. LEXIS 223795, at *7 (C.D. Cal. Oct. 30, 2018) (citing *Emp'rs.-Teamsters Local Nos. 175 & 505 Pension Tr. Fund v. Anchor Capital Advisors*, 498 F.3d 920, 923 (9th Cir. 2007)). Lastly, Defendant claims that Plaintiff did not plan to attend the mediation or did not fully participate. Resp. at 14. This is untrue as reflected by the meditator's report (DE 96), which confirms Plaintiff attended mediation. Defendant's attempts to smear Plaintiff only highlights that it lacks a genuine basis to oppose class certification on the merits, so it resorts to raising frivolous arguments about Plaintiff's character.

**D. Defendant has no Due Process Right to Assert Immaterial or Waived Defenses, or Issues to Which it Stipulated**

Defendant next contends that certification of the proposed Class would violate its due process rights because it would preclude it from presenting evidence regarding "consent, the prior business relationship exception, and the applicability of the TCPA to residential vs. business telephone numbers for each putative class member." Resp. at 16. Absent from Defendant's brief is citation to a single case applying due process to deny certification based on any of the defenses or issues raised by Defendant. That is because "so long as the defendant is given a fair opportunity to challenge the claim to class membership and to contest the amount owed each claimant during the claims administration process, its due process rights have been protected." *In re In re Takata Airbag Prod. Liab. Litig.*, 677 F. Supp. 3d 1311, 1332 (S.D. Fla. 2023) (quoting *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 671 (7th Cir. 2015)). Moreover, while it is true that Defendant has a due process right to assert defenses (that it has actually pleaded), "[i]t does not follow that a defendant has a due process right to a *cost-effective* procedure for challenging every individual claim to class membership….And we should not underestimate the ability of district courts to develop effective auditing and screening methods tailored to the individual case." *Mullins v. Direct Dig., Ltd. Liab. Co.*, 795 F.3d 654, 669 (7th Cir. 2015) (citing *American Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2309 (2013))(emphasis original); *see also Wesley v. Snap*

*Fin., LLC,* 341 F.R.D. 72, 78 (D. Utah 2022). As discussed below, this Court should find that Defendant has no right to assert immaterial or waived defenses, or raise issues to which it stipulated. And even if it did, Defendant would be able to assert its defenses using common evidence, namely, its business records as it has already demonstrated it can do, at the claims administration stage.

First, as discussed above, whether Defendant secured non-written consent from anyone in the Class is immaterial. This Court or a jury will decide the issue of whether Defendant's text messages were solicitations. If the decision is that they are, it will not matter whether Defendant secured non-written/unrecorded consent because the TCPA, through its implementing regulations, requires written consent. *See* 47 C.F.R. § 64.1200(c)(2)(ii). If the texts are deemed informational as Defendant claims, then there will be no TCPA violation.

Second, Defendant waived its purported EBR defense by failing to plead it. *See Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1239 (11th Cir. 2010). Indeed, Defendant's Answer, [DE 30], not once mentions the words "EBR" or "established business relationship", which is an affirmative defense Defendant was required to plead. *See Am. Cas. Co. v. Superior Pharmacy, LLC*, 86 F. Supp. 3d 1307, 1314 (M.D. Fla. 2015); *Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 397 (M.D.N.C. 2015).[4] Defendant also failed to identify any evidence it attempts to now rely for its EBR defense in its Initial Disclosures, a copy of which is attached as **Exhibit A**, and failed to supplement its disclosures despite its obligation and promise to "supplement these disclosures upon discovery of additional documents that may be relevant to its defenses upon discovery of same." *Id*. at 2. "[I]f [defendant] intend[ed] to assert an affirmative defense based on consent or business relationship as to [plaintiff] or any putative class member identified in this case, it remain[ed] obligated to identify those individuals to whom the defense applies[.]" *Mey v. Interstate Nat'l Dealer Servs., Inc.*, 2015 WL 11256613, at *4 (N.D. Ga. June 19, 2015); *see also* Fed R. Civ. P. 26(a) (requiring disclosure "without awaiting a discovery request" of all documents and data that a party may use to support its defenses). With discovery now closed, Defendant should not be permitted to sandbag Plaintiff with this waived EBR defense while also continuing to withhold evidence purportedly supporting the defense (its CRM records that reflect any other inquiry EBR like it attached to the Justin declaration). This is gamesmanship at its worst.

---

[4] Defendant's catch-all Seventh Affirmative Defense does not cure the waiver. *See Sandifer v. Copiah Bank, N.A.,* 2020 U.S. Dist. LEXIS 28995 (S.D. Miss. Feb. 20, 2020) (striking identical defense that defendant "is entitled to each and every defense stated in the Act and any and all limitations of liability[,]" as invalid and vague).

More importantly, as with the residential line issue, ***Defendant failed to introduce any evidence of its EBR defense in support of summary judgment***. Accordingly, Defendant's argument is meritless because, as discussed in Plaintiff's opposition to Defendant's Motion for Summary Judgment briefing, it cannot prove its defense beyond conjecture by its counsel. Notwithstanding, as discussed in the predominance section below, even if this Court is inclined to permit Defendant to assert an EBR defense to oppose class certification, the proper course would be to modify the Class definition and/or exclude any Class Member with an inquiry EBR[5] – as Defendant demonstrated it is capable of doing via its business records, *see* Justin Decl. at ¶6 – not to allow Defendant to profit from its violations of the rules of procedure and poor record keeping.[6]

Lastly, as discussed above, Defendant attempts to retract its stipulation, claiming that it only agreed that registration on the NDNCR creates a presumption that the number is residential. Again, that is not what the stipulation says, nor would Plaintiff have agreed to forgo class discovery if Defendant solely stipulated to an established presumption that already exists under the law. Defendant twice stipulated that determining whether a number is "***residential is an administrative task that will be performed by the class administrator by reviewing whether the telephone number is registered on the National Do-Not-Call Registry***." Numerosity and PII Stip. at ¶4 (emphasis added). Defendant cannot complain of being deprived of any due process rights based on an issue to which it stipulated and cannot even prove with evidence.

**E. There are no Individual Issues that Predominate**

Defendant contends that individual issues related to unrecorded consents predominate. As discussed above, Defendant misses the point because only written consent matters if the texts were promotional. And if the messages are held to not be solicitations, the unrecorded consents remain irrelevant since the texts are not actionable. The Court does not need to get into the minds of the class

---

[5] An inquiry EBR is an "inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call[.]" 47 C.F.R. § 64.1200(f)(5).

[6] A similar issue to what Defendant suggests here was raised in *Krakauer v. Dish Network L.L.C.,* in which Dish claimed it did not have sufficient records to determine every possible call it could assert an EBR defense against. 311 F.R.D. 384, 398 (M.D.N.C. 2015) aff'd, 925 F.3d 643 (4th Cir. 2019). The Court rejected Dish's suggestion that this should prevent class certification, holding "[i]f the records that Dish and its affiliates keep do not allow Dish to identify every possible EBR, that should not preclude persons with valid claims from recovering, nor does it prevent class certification under Rule 23(b)(3)." *Id.* at 398.

members as Defendant suggests. Resp. at 19. This Court's decision in *Newhart v. Quicken Loans Inc.*, 2016 U.S. Dist. LEXIS 168721 (S.D. Fla. Oct. 12, 2016), which Defendant ignores, illustrates this point. *Newhart* involved telephone calls during which different topics were discussed with the putative class members; some were promotional and others transactional. *Id*. at *9. As this Court observed, consent could not be decided class-wide because the purpose of each call varied. *Id*. at *6-7. The opposite is true here. In this case, Plaintiff and every Class Member received the same exact messages, and the Class is defined to exclude anyone that provided Defendant with written consent. So, unlike in *Newhart*, consent does not predominate because individuals who consented in writing have already been excluded, and those that did not provide consent in writing are members of the Class who have actionable TCPA claims.

Defendant's EBR argument fares no better. As discussed above, Defendant waived its EBR defense by failing to plead it and should also be precluded from opposing class certification utilizing records it has yet to identify in amended Rule 26(f) disclosures. But even if the Court does not find waiver and does not exclude Defendant's untimely evidence, Defendant fails to demonstrate that the EBR issue *predominates* as it was able to muster just six (6) instances of inquiry EBR – none of which have been identified as a potential Class member (*see* Justin Decl. at ¶6) – out of millions of Class members ***and submitted no evidence of a single class member inquiring***. *See Krakauer v. Dish Network L.L.C.,* 311 F.R.D. 384, 398 (M.D.N.C. 2015)("Here, Dish has again provided no evidence to support its assertion that there are 'thousands' of customers on the class list as to whom it would be entitled to an EBR defense; ***indeed, it has identified only 16 such persons***."), aff'd, 925 F.3d 643 (4th Cir. 2019). In other words, Defendant has demonstrated that the EBR issue will not predominate given that Plaintiff's Class definition already excludes the overwhelming majority of individuals with an EBR.

And even if the Court is not satisfied, the ultimate course should not be to deny certification, but instead to modify the Class definition and/or exclude anyone with an inquiry EBR as this Court is authorized to do. *See Chianne D. v. Weida*, 2024 U.S. Dist. LEXIS 73404, at *62 (M.D. Fla. Apr. 23, 2024). Defendant has already demonstrated it can identify these individuals utilizing its business records just as it did when it identified everyone that had not opted in to its texts or made a purchase prior to the texts. Accordingly, and contrary to Defendant's contention, there is class-wide evidence based on Defendant's business records to resolve Defendant's new inquiry EBR defense. Additionally, "file-by-file review" of Defendant's business records does not amount to "file-by-file trial." *Ocwen Loan Servicing, LLC v. Belcher*, 2018 U.S. App. LEXIS 18088, at *11 (11th Cir. June 29, 2018). Meaning there is nothing wrong with requiring Defendant to identify the individuals with whom it claims to have an

inquiry EBR utilizing the records it has shown it has in its possession. Therefore, "[r]esolution of the EBR defense does not involve 'considerable individual inquiry,' and individual hearings will not be routinely necessary to determine if a putative class member was a Dish customer at the time of a call….Rather, identifying a company's customers during a time period should be an 'objectively verifiable' task." *Krakauer,* 311 F.R.D. at 398.

Defendant's predominance challenge based on whether a telephone number is residential – setting aside it twice stipulated to the issue – is equally unpersuasive. Critically, Defendant has offered no evidence that any Class Members' telephone number is *not* residential ***to rebut the presumption when opposing Plaintiff's summary judgment motion***. *See Krakauer,* 311 F.R.D. at 396 ("Dish has only presented evidence of a few dozen numbers that appear to be business or mixed use.") This is because Defendant was soliciting individual "customers", not businesses, to visit their local eye care store as it confirms throughout its briefing. Resp. at 3; *see Mantha v. Quotewizard.Com, LLC*, 347 F.R.D. 376, 397-98 (D. Mass. 2024) ("Moreover, Mantha does not rely solely on the residential presumption to show that the numbers on the proposed Class List are residential. He also points to QuoteWizard's repeated statements that it 'only intended to purchase lead information associated with individual consumers rather than businesses.'") (emphasis original). The law on this issue is clear: "bare assertions" without evidence by a TCPA defendant are insufficient to defeat predominance. *See Reyes v. BCA Fin. Servs.*, 2018 U.S. Dist. LEXIS 106449, at *46 (S.D. Fla. June 26, 2018) (collecting cases). With discovery now closed, Defendant has identified no proof of a single business number within the Class list. But even if it could, a few business numbers within the Class are not sufficient to *predominate*. *See Chinitz v. Intero Real Estate Servs.*, 2020 U.S. Dist. LEXIS 247921 (W.D. Wash. Feb. 12, 2021); *Krakauer v. Dish Network,* 311 F.R.D. 384, 396 (M.D.N.C. Sept. 9, 2015).

Importantly, Eleventh Circuit precedent holds any remaining concerns regarding who has an EBR with Defendant or if a number is residential can be addressed at the claims stage. Defendant "could then verify (or contest) each one by consulting its own records." *Ocwen Loan Servicing, LLC v. Belcher*, No. 18-90011, 2018 U.S. App. LEXIS 18088, at *11 (11th Cir. June 29, 2018) ("The district court again permitted class members to self-identify and observed that various records, some held by Ocwen and others available in the public domain, could rebut class membership[.]") In practice, this would simply consist of a few Court approved questions in the claims form and Defendant could review the claim against its records. And even if individual instances might arise where the parties dispute a claim, "that, without more, does not mean that class certification [would go] beyond [this] court's discretion." *Id*.

DATED: March 28, 2025

Respectfully submitted,

**DAPEER LAW P.A.**

*/s/ Rachel Dapeer*
Rachel Dapeer, Esq.
Florida Bar No. 108039
520 S. Dixie Hwy,
Suite 240
Hallandale Beach, Florida 33009
rachel@dapeer.com
Telephone: 954.799.5914

**HIRALDO P.A.**

*/s/ Manuel S. Hiraldo*
Manuel S. Hiraldo, Esq.
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
mhiraldo@hiraldolaw.com
Telephone: 954.400.4713

*Counsel for Plaintiff*