UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

DAVID ELLIOT Plaintiff

v. Civil Action No. 3:22-cv-00329-RGJ

HUMANA INC., Defendant

* * * * *

**MEMORANDUM OPINION & ORDER**

David Elliot ("Elliot") moves for class certification under Federal Rules of Civil Procedure 23(a) and 23(b)(3). [DE 114]. Humana responded [DE 147] and Elliot replied. [DE 159]. Humana moves for leave to file excess pages [DE 155] and for leave to file a sur-reply [DE 163] with its sur-reply attached. [DE 163-1]. Elliot opposed Humana's motion to file sur-reply [DE 167] and Humana replied. [DE 169]. This matter is ripe. For the following reasons, Humana's motion to file excess pages and motion to file a sur-reply are **GRANTED**. Elliot's motion to certify the putative class is **GRANTED**.

## I. BACKGROUND

Elliot sued Humana for violating the Telephone Consumer Protection Act ("TCPA"). [DE 1 at ¶ 52-66]. Elliot alleges Humana telephoned him numerous times despite not being a Humana customer and after being informed that Humana had the wrong number. [*Id*. at ¶ 4]. Elliot seeks to certify his claims as a class action, alleging other individuals have similarly received repetitive robocalls from Humana over a four-year period. [*Id*.]. Elliot moves to certify the class as

> [a]ll persons or entities throughout the United States (1) to whom Humana placed, or caused to be placed, a call (2) directed to a number assigned to a cellular telephone service, but not assigned to a current account holder of Humana (3) in connection with which Humana used an artificial or prerecorded voice, (4) four years from the filing of this action through the date of class certification.

[DE 114-1 at 1724]. Elliot contends that based on data from Humana's CGX database there are 23,682 individuals in the putative class that fit this class definition. [DE 114 at 1710].

In support of certification, Elliot relies on expert witness Doctor Anya Verkhovskaya ("Verkhovskaya"), a proposed expert witness who often testifies in TCPA cases. [DE 112 at 1114; DE 30 at 2369]. Verkhovskaya opined that using the data provided by Humana, there is a reliable and efficient method of effectively determining and notifying the proposed class that comports with the requirements of Fed. R. Civ. P. 23 and due process. [DE 112-1 at 1139]. Her opinion is detailed in the Court's Memorandum Opinion & Order on the Elliot's Motion to Exclude Verkhovskaya and the Court incorporates that background and opinion by reference. [DE 181].

Humana presents Margaret Daley ("Daley") as a rebuttal witness. Daley opines that the class identification process proposed by Verkhovskaya is unreliable and it is impossible, absent individualized investigation, to reasonably identify class members or non-customers of Humana that received wrong number calls. [DE 128-1 at 2018-19]. Daley also opines that Verkhovskaya's reverse-append methodology does not reliably identify people who should receive notice. [*Id*. at 2019]. Her opinion is detailed in the Court's Memorandum Opinion & Order on Humana's Motion to Exclude Daley and the Court incorporates that background and opinion by reference. [DE 182].

## II. ANALYSIS

Because the motion for leave to file excess pages [DE 155] and the motion for leave to file sur-reply [DE 163] have a bearing on the what the Court considers when reviewing the motion to certify class [DE 114], the Court will address these motions first.

### A. Motion for Leave to File Excess Pages [DE 155]

Humana argues that the "breadth of data produced in this case and the highly individualized nature of the analysis make it necessary to exceed the default 25-page limit outlined in Local Rule

7.1(d)." [DE 155 at 4152]. Humana conferred with Elliot before filing this motion and Elliot opposed the motion. [*Id*. At 4153]. However, Elliot did not respond to Humana's written motion.

"[A] district court has broad discretion to manage its docket," including by striking or accepting a filing not in compliance with the Local Rules. *Phoenix v. Wormuth*, No. 23-5130, 2023 WL 9660884, at *4 (6th Cir. Nov. 13, 2023) (citing *ACLU of Ky. v. McCreary County*, 607 F.3d 439, 451 (6th Cir. 2010) and finding that "the district court's decision to accept the Army's modestly oversized motion for summary judgment was within its sound discretion to manage its own docket."); *Martinez v. United States*, 865 F.3d 842, 844 (6th Cir. 2017) (affirming district court's order striking memorandum exceeding the 20-page limit set forth in local rule). Under this broad discretion, the Court has considered Humana's filing in its entirety, deems it relevant to resolution of the instant motion, and finds good cause to permit the filing of excess pages. As a result, Humana is **GRANTED** leave to file a 35-page response to Plaintiff's motion to certify a class, excluding the signature block and certificate of service. [DE 155].

**B. Motion for Leave to File Sur-Reply [DE 114]**

Humana argues that Elliot's reply presents "never-before-disclosed evidence" and "misrepresentations of law and fact." [DE 163-1 at 5265-66]. Humana raises three specific arguments: (1) that Elliot attached a new declaration that directly contradicts his prior deposition testimony regarding settlement offers; (2) that Elliot attached new declarations from his counsel that bear on key issues, including whether counsel is inadequate for violating the mediation privilege when they disclosed settlement offers, and how many calls Elliot received; and (3) that Elliot now claims that he doesn't need to establish certain elements of his claim with common evidence. [DE 95 at 652]. Elliot objects to the filing of a sur-reply as untimely and argues his reply does not present new evidence or arguments. [DE 169].

Whether to permit a party to file a sur-reply is a matter left to the trial court's discretion. *Key v. Shelby Cnty.*, 551 F. App'x 262, 264 (6th Cir. 2014) (citing *Eng'g & Mfg. Servs., LLC v. Ashton*, 387 F. App'x 575, 583 (6th Cir. 2010); *Tanielian v. DaimlerChrysler Corp.*, 108 F. App'x 386, 387 (6th Cir. 2004)). "Although the Federal Rules of Civil Procedure do not expressly permit the filing of sur-replies, such filings may be allowed in the appropriate circumstances, especially '[w]hen new submissions and/or arguments are included in a reply brief, and a nonmovant's ability to respond to the new evidence has been vitiated.'" *Seay v. Tennessee Valley Auth.*, 339 F.3d 454, 481 (6th Cir. 2003). "As many courts have noted, '[s]ur-replies. . . are highly disfavored, as they usually are a strategic effort by the nonmoving party to have the last word on a matter.'" *Liberty Legal Found. v. Nat'l Democratic Party of the USA, Inc.*, 875 F. Supp. 2d 791, 797 (W.D. Tenn. 2012) (quoting *In re Enron Corp*. Sec., 465 F. Supp. 2d 687, 691 n.4 (S.D. Tex. 2006)) (additional citation omitted). "The Sixth Circuit has held that a district court does not abuse its discretion in denying leave to file a sur-reply where the opposing party's reply did not raise any new legal arguments or introduce new evidence." *Id.*; *see, e.g., Key*, 551 F. App'x at 265 (holding that district court's denial of motion to file sur-reply was not abuse of discretion due to lack of new arguments raised in reply and six-month delay between filing of reply and motion for sur-reply).

Humana did not move for leave to file a sur-reply until five weeks after the motion for class certification [DE 114] was fully briefed. A five-week delay in making the motion is considerable. Humana has repeatedly filed motions that delay class certification and to push back pretrial deadlines.

However, the new declarations attached to Elliot's reply present both new evidence and arguments. And while a new declaration or affidavit alone is not sufficient to warrant a sur-reply, *Aldrich v. The Univ. of Phoenix, Inc.*, 2016 WL 427923, at *2 (W.D. Ky. Feb. 3, 2016), when these

declarations present new evidence or argument, sur-reply is warranted. *Seay*, 339 F.3d at 481. Elliot's declaration provides new evidence of short-term memory loss and other circumstances which led to his deposition testimony that he could not recall if his counsel had provided him with past settlement offers. [DE 159-9 at 5007]. As a result, the portions of Humana's sur-reply addressing this new evidence and argument will be considered by the Court. That said, the bulk of Humana's sur-reply has nothing to do with this new evidence or arguments, and merely continues to argue issues and evidence both parties had opportunity to address in their response and reply briefs.

This Court need not consider the entirety of a reply brief, and Humana's proposed sur-reply is limited to addressing only those new arguments raised by Elliot in his reply. *Eldridge v. Cardif Life Ins. Co*., 266 F.R.D. 173, 175 (N.D. Ohio 2010). Accordingly, the Court will grant the motion for sur-reply, [DE 163] but only the portions in response to Elliot's newly presented declarations will be considered.

**C. Motion for Class Certification**

**1. Standard**

The Court has broad discretion in deciding whether to grant class certification. *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig*., 722 F.3d 838, 850 (6th Cir. 2013); *see also Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988). That said, "it must exercise that discretion within the framework of Rule 23." *Coleman v. Gen. Motors Acceptance Corp*., 296 F.3d 443, 446 (6th Cir. 2002). Under Rule 23 the moving party bears the burden of proving that the proposed class both satisfies Rule 23(a)'s requirements and fits into one of Rule 23(b)'s three subdivisions. *Coleman*, 296 F.3d at 446; Fed. R. Civ. P. 23(b); *see also Ball v. Union Carbide Corp.*, 385 F.3d 713, 727 (6th Cir. 2004). "Rule 23 does not set forth a mere pleading

standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rule 23(a) has four requirements, which all must be satisfied:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

The Court's Rule 23 analysis must be "rigorous." *Dukes*, 564 U.S. at 350-51. "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." *Id.* And "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). That said, "the court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig*., 678 F.3d 409, 417–18 (6th Cir. 2012), *cert. granted, judgment vacated sub nom*. *Whirlpool Corp. v. Glaze*r, 569 U.S. 901 (2013) (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012)). Thus, the court's Rule 23 analysis must not include consideration of whether plaintiffs will ultimately prevail on the merits of their claims. *Id.* at 418 (citing *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 366 (4th Cir. 2004)).

**2. Requirements of Fed. R. Civ. P. 23(a)**

*a. Numerosity*

Elliot contends that there are 23,682 individuals in the putative class. [DE 114 at 1710]. According to Elliot, CGX data provided by Humana shows wrong number designations for 23,682 individuals that received at least one prerecorded call from Humana after they received a wrong

number designation, a violation of the TCPA. [*Id*.] Humana argues that Elliot fails to definitively identify even one individual that received a wrong number call from Humana that was not already a Humana customer. [DE 147 at 2672].

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "There is no strict numerical test for determining impracticability of joinder." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). "However, sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1)." *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004) (citing 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions, § 3:5, at 243-45 (4th ed. 2002)). In making this determination, the Court may consider "reasonable inferences drawn from facts before it." *Senter v. Gen. Motors Corp.,* 532 F.2d 511, 523 (6th Cir. 1976). But the Court may not rely on speculation or the conclusory allegations of the proposed representatives. Instead, Plaintiffs must "show some evidence of or reasonably estimate the number of class members." *Brashear v. Perry Cnty., Ky.*, 2007 WL 1434876, at *4 (E.D. Ky. May 14, 2007) (internal quotation marks and citation omitted). "[I]t generally is accepted that a class of 40 or more members is sufficient to satisfy the numerosity requirement." *Garner Properties & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 622 (E.D. Mich. 2020) (quoting *Davidson v. Henkel Corp*., 302 F.R.D. 427, 436 (E.D. Mich. 2014) (internal quotation marks omitted). Additionally, "in determining whether numerosity has been satisfied, the court also considers the size of each individual putative plaintiff's claim and whether it 'hinders the ability of a plaintiff to file any action at all.'" *Haggart v. United States*, 89 Fed. Cl. 523, 530 (2009) (quoting *King v. United States*, 84 Fed. Cl. 120, 125 (2008)). The smaller the value of the claim, the less likely it is that any individual plaintiff will pursue his case without the attendant

benefits of a class action, such as class representation. *Haggart*, 89 Fed. Cl. at 532; *accord Geneva Rock Prod., Inc. v. United States*, 100 Fed. Cl. 778, 787 (2011) (noting that joinder can be impracticable where the cost of litigation outweighs the value of the claim).

Elliot contends that data from a system called Clinical Guidance eXchange ("CGX") provided by Humana shows a potential class size of 23,682 individuals. [DE 114 at 1710]. An analysis of CGX data identifies the records of 23,682 phone numbers marked with "wrong number," "wrongnumber," "wrong #" or some other variation, that received at least one prerecorded call from Humana after they received a wrong number designation. [DE 114-0 at 1804]. Although Elliot has not provided the Court with the exact number of putative class members, evidence of these phone numbers marked as wrong numbers is sufficient to show numerosity and the sheer size of the potential class satisfies the numerosity requirement. Using "common sense and general knowledge" the Court finds that at a minimum Elliot has demonstrated that the class will consist of at least forty members, as this is less than .2% of the potential proposed class and it can be safely inferred by the Court that at least that many numbers marked "wrong number" by Humana were actually wrong numbers. *Head v. Citibank, N.A.*, 340 F.R.D. 145, 150 (D. Ariz. 2022) (citing *Knapper v. Cox Commc'ns, Inc*., 329 F.R.D. 238, 241 (D. Ariz. 2019) ("[N]umerosity is met when general knowledge and common sense indicate that joinder would be impracticable.")). *See In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) ("When class size reaches substantial proportions, however, the impracticability requirement is usually satisfied by the numbers alone"); *In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation,* 722 F.3d at 852 ("Whirlpool shipped thousands of Duets to Ohio for retail sale. Evidence of these shipments to retailers is sufficient to show numerosity of a class consisting of all Ohio residents who purchased a Duet in Ohio primarily for personal, family or household

purposes"). *Lonergan v. A.J.'s Wrecker Serv. of Dallas, Inc.*, 1999 WL 527728, at *3 (N.D. Tex. July 8, 1999), a*ff'd sub nom. AJ's Wrecker Serv., Inc. v. City of Dallas, Texas*, 200 F.3d 816 (5th Cir. 1999) (finding numerosity satisfied where "Plaintiffs maintain that the proposed class is estimated to number tens of thousands of individuals. They base this approximation on evidence that one Towing Defendant towed 11,074 vehicles in approximately five months during 1997 and that three Towing Defendants have performed roughly 90,000 tows within Dallas since 1997").

Humana argues that numerosity has not been satisfied as Elliot has "failed to show any reliable evidence identifying even one recipient" of a recorded call made to a phone number that did not belong to a current account holder of Humana, even Elliot himself. [DE 147 at 2672]. The Court has already found the opinion of Doctor Verkhovskaya, and the declaration of Peters-Staciewicz, reliable for class certification purposes and considered the argument that Verkhovskaya's methodology did not identify Elliot. [DE 181]. The information in Verkhovskaya's report and Peters-Stasiewicz's declaration rely on Humana's own data and call reports and are more than sufficient to show that numerosity is met. Humana's objections to their own data and handwritten notes are not availing, and poor record keeping cannot spare a defendant from class action liability. *See Young v. Nationwide Mut. Ins. Co*., 693 F.3d 532, 540 (6th Cir. 2012). The Court is allowed to make "reasonable inferences drawn from facts before it" and the CGX data and methodology the Court has found reliable would have to have an error rate of well over 99% to fall beneath forty class members. *Senter*, 532 F.2d at 523. The Court can reasonably infer that out of a batch of 23,682 class members identified as wrong numbers from Humana's data, more than forty were actual wrong number calls. The numerosity requirement is satisfied.

*b. Commonality*

Elliot presents four questions that he contends qualify as common issues of law and fact:

(1) whether Humana initiated non-emergency prerecorded calls to non-customers;
(2) whether Humana used a prerecorded voice to make calls to class members;
(3) whether the number called was a cellular telephone; and
(4) whether Humana is liable for calls made to wrong numbers.

[DE 114-1 at 1710-11]. Humana argues that certification should be denied on commonality grounds because the common questions presented by Elliot would either require "individualized proof" or would not truly resolve Humana's liability. [DE 147 at 2669-70].

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Dukes*, 564 U.S. at 349-50 (quoting *Falcon*, 457 U.S. at 157). Even so, this does not mean that plaintiffs must show commonality by asserting that they have all suffered a violation of the same provision of the law. *Id.* at 350. Instead, their claims must rely on a common contention "of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Thus, commonality depends not on the "raising of common 'questions'—even in droves—but, rather the capacity of a class wide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009). "The mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." *Sterling*, 855 F.2d at 1197.

Humana argues three of the four questions proposed by Elliot are not common questions because they require "individualized proof." [DE 147 at 2669-70]. Humana does not object to the third question of "whether the number called was a cellular devise." [*Id.*]. Humana does not expand on how questions of "(1) whether Humana initiated non-emergency prerecorded calls to non-

customers" or "(2) whether Humana used a prerecorded voice to make calls to class members" would not generate common answers. These two questions challenged by Humana are addressed using the same evidence and produce common answers that are appropriate for class litigation. Additionally, Elliot's first and second questions are common questions typical to TCPA cases. *See Allard v. SCI Direct, Inc.*, No. 16-CV-01033, 2017 WL 3236448, at *3 (M.D. Tenn. July 31, 2017). The Sixth Circuit has held that certification is normal in litigation under the TCPA because the main questions are common to all recipients. *Ira Holtzman, C.P.A., & Assocs. Ltd. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) (citing *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005)). These qualify as common questions.

As to the fourth question, "whether Humana is liable for calls made to wrong numbers," Humana argues that its liability depends on individualized questions of consent. [DE 147 at 2670]. However, courts in this Circuit have previously held that commonality in TCPA cases is not defeated by questions of whether class members were contacted "without first obtaining express invitation or permission to do so." *Compressor Eng'g Corp. v. Thomas*, 319 F.R.D. 511, 526 (E.D. Mich. 2016). Commonality "is not defeated by questions about [Defendant's] relationships with individual recipients . . . the real question is the source of the numbers in that database." *See Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 647 (W.D. Wash. 2007). The CGX database is a reliable source of Humana's own call logs with wrong number demarcations that are sufficient for commonality. The commonality requirement is satisfied.

*c. Typicality*

To certify a class under Fed. R. Civ. P. 23(a), a plaintiff must also prove that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality determines whether a sufficient relationship exists between the injury

to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1988) (internal quotation marks omitted) (quoting *I In re American Medical Systems, Inc.,* 75 F.3d at 1082)). "A claim is typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quoting *In re American Medical Systems, Inc.*, 75 F.3d at 1082)).

"The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical." *Falcon*, 457 U.S. at 158 (1982). "Under the commonality prong, a court must ask whether there are sufficient factual or legal questions in common among the class members' claims to make class certification economical and otherwise appropriate. In contrast, under the typicality prong, a court must ask whether, despite the presence of common questions, each class member's claim involves so many distinct factual or legal questions as to make class certification inappropriate." *Brashear*, 2007 WL 1434876 at *6 (internal quotation marks and citation omitted). "The premise of typicality is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Sprague*, 133 F.3d at 399.

Humana argues that typicality fails because Elliot's claims are subject to unique defenses such as "[w]hether the emergency-purposes exception applies." [DE 2672]. However, this defense is not unique as it can be raised against every member of the class and is not factually unique to Elliot. And if a defense is not unique, "then evidence related to how they apply to Plaintiff will not destroy typicality." *See Willis v. Big Lots, Inc.*, 242 F. Supp. 3d 634, 646 (S.D. Ohio 2017) ("[U]nique defenses will destroy typicality only where the defenses against the named

representatives are likely to usurp a significant portion of the litigant's time and energy, and there is a danger that the absent class members will suffer if their representative is preoccupied with defenses unique to it"); (*Cates v. Cooper Tire & Rubber Co.*, 253 F.R.D. 422, 430 (N.D. Ohio 2008) ("[P]otential affirmative defenses against some class members do not bar class certification, as plaintiffs' claims need not be factually indistinguishable to be typical"); *Miller v. Optimum Choice, Inc.*, 2006 WL 2130640, at *7 (D. Md. July 28, 2006) ("Because the affirmative defenses are common across the putative class members, the defenses would not operate to destroy the predominance of common questions across the class, but would instead provide an additional link of commonality between the class members"). Additionally, the class definition specifically excludes individuals who consented to calls, as such the defense does not preclude typicality. Humana's affirmative defense does not defeat typicality. The typicality requirement is satisfied.

d. *Adequacy of Representation*

The final requirement is that the Plaintiff shows that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Sixth Circuit has articulated two criteria to satisfy this requirement: "1) [t]he representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter*, 532 F.2d at 525.

First, under the class definition, Elliot has demonstrated that he has "common interests with unnamed members of the class." *Senter*, 532 F.2d at 525. Elliot's claims arise from the same conduct, receiving automated calls without consent, during the same alleged time frame, and by the same defendant, Humana. [DE 114-1 at 1713]. Both Elliot's claim, and the claims of the class, are based on the same sections of the TCPA and have the same statutorily established damages.

47 U.S.C. § 227(b)(3). Elliot has also stated a willingness to represent the class and prosecute their interests in his deposition. [DE 114-2 at 1744; Elliot Depo. 111:23-112:14].

Second, Elliot's counsel has demonstrated prior experience and competency litigating class actions, including TCPA claims. *See, e.g.*, *Shutler v. Citizens Disability LLC*, 347 F.R.D. 663 (S.D. Fla. 2024) (appointing LawHQ, P.C. as class counsel and noting, "based on their extensive experience in litigating TCPA class action lawsuits, [p]laintiff's counsel is adequate"). Counsel has done considerable work in "identifying and researching the claims, hiring an expert witness, performing written discovery, taking depositions, and submitting numerous filings and motions to the Court." [DE 114-1 at 1714]. Counsel has also "advanced all litigation costs and will continue to do so." [*Id.*]. LawHQ, P.C. has shown a sufficient competence in class action litigation and the TCPA, have borne, and remain willing to bear, the costs of this action, and are prepared to represent the interests of Elliot and the class. Further, counsel also has no conflicts of interest that would impede appointment as class counsel. [*Id.*].

Humana asserts that Elliot is an inadequate class representative as he "perjured himself in his deposition about the number of voicemails he received," and that counsel is inadequate as they aided Elliot's perjury. [DE 147 at 2670]. Humana further argues that counsel is inadequate as they failed to promptly inform their client about settlement offers.

First, addressing Humana's charge of perjury, "mere inconsistencies, contradictions, or changes in testimony do not establish false testimony or perjury." *Burks v. Harry*, 2012 WL 424871, at *10 (E.D. Mich. Feb. 9, 2012) (citing *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989)). There are valid questions regarding Elliot's testimony and how many phone calls he received from Humana; but Humana falls short of showing intentional falsity or perjury. Although Humana produces Elliot's subpoenaed phone records to support its contention that Elliot

had received at most three voicemails [DE 113-2 at 1465; Tracfone 14], Elliot supports his contention that he was called twenty-two times with Humana's own call log. [DE 159-7 at 5005]. This is a matter for cross examination at trial. It does not rise to the level of falsity or perjury presented in the cases cited by Humana. *Shupe v. Rocket Companies, Inc.*, 752 F. Supp. 3d 735 (E.D. Mich. 2024); *Davis v. Magna Int'l of Am., Inc.,* 2023 WL 3729443, at *4 (E.D. Mich. Mar. 27, 2023); *Harden v. Autovest, L.L.C.*, 2016 WL 4408905, at *4 (W.D. Mich. Aug. 19, 2016). There is no perjury or knowing falsity that would render Elliot or counsel inadequate.

Humana also argues that counsel failed to promptly inform clients about settlement offers. In his deposition Elliot stated that he had "no knowledge of any settlement offered to [him]." [DE 113-1 at 1599-1600]. Elliot presents declarations from himself and one of his attorneys, James S. Wertheim, which state counsel promptly conveyed, and Elliot rejected, every settlement offer made by Humana. [DE 159 at 4949; DE 159-8 at 5008; DE 159-9 at 5011]. Elliot states in his declaration that the two different settlement offers were conveyed by his counsel more than a year before his deposition in which he was asked about settlement offers and that at the time of his deposition, he was recovering from a serious health issue and experiencing short-term memory loss. [DE 159-8, at 5007-08]. His counsel confirms in his declaration that he had telephone conferences with Elliot to discuss Humana's offers, which Elliot rejected. [DE 159-9]. The Court is satisfied that class counsel is adequate.

Humana also moved for sanctions [DE 161] and moved to strike Elliot's declaration [DE 162] which were ruled on at a hearing held on April 9, 2025. Humana's Motion to Strike [DE 162] was denied and does not affect this Court's ruling. These motions included Humana's argument on sur-reply that Elliot's counsel "intentionally violated the mediation privilege and multiple Court instructions." [DE 163-1 at 5282]. Humana argues that the actions, and will argue that the recent

sanctions, of LawHQ, P.C. render them inadequate to serve as class counsel. But for purposes of adequacy, even "ethical violations alone do not render class counsel inadequate." *Machesney v. Lar-Bev of Howell, Inc.,* 292 F.R.D. 412, 417 (E.D. Mich. 2013), *on reconsideration*, 317 F.R.D. 47 (E.D. Mich. 2016) (quoting *Reliable Money Order, Inc. v. McKnight Sales Co.,* 704 F.3d 496 (7th Cir. 2013)). District courts in the Sixth Circuit have previously followed the standard set by *Reliable Money Order, Inc*., which ruled that "misconduct that prejudices the class or creates a direct conflict between counsel and the class requires" denial of class certification. *Id*. at 498. It further held that "unethical conduct, not necessarily prejudicial to the class, nevertheless raises a 'serious doubt' about the adequacy of class counsel when the misconduct jeopardizes the court's ability to reach a just and proper outcome in the case." *Id*. at 499.

The conduct engaged in by LawHQ, P.C., disclosing a settlement offer from the parties' mediation after counsel's ethics in communicating settlement offers to the Plaintiff was challenged by Humana, amount to a violation of the Court's meditation order, and does not prejudice the class or create a direct conflict between class and counsel. Certainly, in hindsight Plaintiff's counsel should have sought permission from the Court to disclose that settlement offer amount through the filing of a motion to seal or other mechanism, but given the context in which Humana presented its challenge to Plaintiff's counsel's ethics the Court understands how it happened. Further, this conduct does not raise a "serious doubt" about counsels' adequacy by jeopardizing the Court's ability to reach a just and proper outcome in the case. This behavior was minor, only warranting costs, is easily remedied by the Court, and falls short of unethical behavior engaged in by class counsel in other cases where adequacy was found, and certification was upheld. *Reliable Money Ord., Inc.*, 704 F.3d at 499. Elliot is an adequate representative and LawHQ, P.C. is adequate to serve as class counsel.

**3. Fed. R. Civ. P. 23(b)**

Plaintiffs must also show that the action fits one of Rule 23(b)'s subdivisions. Elliot seeks certification of the proposed class under Rule 23(b)(3). [DE 26-2 at 805]. Rule 23(b)(3) requires "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). As a result, to qualify for certification under Rule 23(b)(3), the proposed class "must satisfy a two-part test of commonality and superiority and should only be certified if doing so would 'achieve economies of time, effort, and expense.'" *Cochran v. Oxy Vinyls LP*, 2008 WL 4146383, at *11 (W.D. Ky. Sept. 2, 2008) (quoting *Sterling*, 855 F.2d at 1196).

*A. Predominance*

Humana argues that individual questions predominate over common questions because "the most important pre-requisite to liability—whether Humana had consent for any particular call—is an inherently case-by-case question that requires an individual analysis." [DE 147 at 2655]. Elliot argues that consent is not an individualized issue that precludes predominance, and the class definition itself does not include individuals who consented to receiving calls from Humana [DE 159 at 4945-46].

"Subdivision (b)(3) of Rule 23 parallels subdivision (a)(2) of Rule 23 in that both require that common questions exist, but subdivision (b)(3) contains a more stringent requirement that common issues 'predominate' over individual issues." *Whitlock v. FSL Mgmt., LLC,* 2012 WL 3274973, at *11 (W.D. Ky. Aug. 10, 2012), *aff'd,* 843 F.3d 1084 (6th Cir. 2016), and *aff'd,* 843 F.3d 1084 (6th Cir. 2016) "To satisfy the predominance requirement in Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof . . .

predominate over those issues that are subject only to individualized proof." *Beattie*, 511 F.3d at 564 (internal quotation marks and citation omitted).

"There are no bright lines for determining whether common questions predominate." *In re Cardizem CD Antitrust Litig*., 200 F.R.D. 297, 307 (E.D. Mich. 2001). Instead, the Court must determine whether the common questions are "at the heart of the litigation," *Powers*, 501 F.3d at 619, while keeping in mind "the mere fact that questions peculiar to each individual member of the class action remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." *Sterling*, 855 F.2d at 1197. Consent is a complete defense to a TCPA claim, and the "voluntary provision of a [phone] number [ ] by a message-recipient to a message sender, constitutes express consent." See § 47 U.S.C. 227(b)(1)(A); *Baisden v. Credit Adjustments, Inc*., 813 F.3d 338, 341–42 (6th Cir. 2016). Significant issues of consent could predominate over the common questions in a TCPA action.

*i. Individual Review of Data and Witnesses*

Humana argues that the predominance factor fails because individual questions of consent and liability require a review of all CGX call notes, and individual examinations of every potential class member. [DE 147 at 2658-60]. Elliot argues that predominance is met as the class only includes those who did not consent to calls, which Elliot contends can be ascertained at the class notice stage with affidavits. [DE 159 at 4945-97].

Humana relies in part on *Morgan v. Orlando Health, Inc*., to argue that its own CGX database which explicitly records "wrong numbers" is not sufficient to prove that an actual wrong number was called without consent. 2021 WL 12100347, at *4 (M.D. Fla. Dec. 8, 2021). But the database and markings in *Morgan v. Orlando Health, Inc*. is distinguishable from Humana's CGX

database in several ways. The database in *Morgan v. Orlando Health, Inc.*, would mark phone numbers as "Oph" whenever it changed or removed a phone number for any reason, including

> when the patient or guarantor requests a change to a new number, requests a change to or from a spouse's or ex-spouse's number, requests to change to the patient's number when they reach the age of majority, requests to change to or from a patient or guarantor, requests to change to an attorney's number, requests removal based on payment in full, requests written statements only, refusal to pay a bill or dispute of the bill, requests that PFS stop calling, and a patient's incarceration or death.

*Id.* In total there were twenty-one different reasons why a number could be marked "Oph," and only one was for a wrong number call. *Id*. Meanwhile, Humana's CGX database marked the calls at issue as "wrong number" and there is no formal process or documentation Humana provides to show multiple common or intended meanings for wrong number designations. Humana attempts to provide alternate explanations for the wrong number designation in its CGX records, which the Court considers despite not being able to verify many of them.[1] According to Humana, wrong number designations could refer to typographical errors, calls where a Humana team member called the wrong number, intentional contact with individuals who said, "wrong number because they didn't want to talk," and Humana members who incorrectly reported a wrong number. [DE 147 at 2657]. Humana argues that these alternative explanations for the wrong number designation require an individual inquiry into each potential class member to determine consent.

Unlike in *Morgan v. Orlando Health, Inc.,* Humana relies on poor or inconsistent record keeping as an argument against certification, asking the Court to ignore the plain meaning of "wrong number" to accommodate several errors or inconsistencies they have found in self

[1] Humana cites to sections of the Declaration of Angelle Guarisco; however, the paragraph cited was not found in the declaration on the record. [DE 113-1]. The paragraph numbers Humana cited were not present in the declaration. Furthermore, the content of the declaration Humana cites does not match what Humana claims in its argument. Instead, it merely describes the SNPs and HRAs and explains that Humana was trying to reach an SNP plan member when they called Elliot. [*Id*]. As such Humana failed to present the Court with any evidence of most of these alternatives, even if the Court did find the arguments persuasive.

reviewing their own record. The Sixth Circuit has previously held that the need to manually review files for class certification is not dispositive because if it were, "defendants against whom claims of wrongful conduct have been made could escape class-wide review due solely to the size of their businesses or the manner in which their business records were maintained." *Young*, 693 F.3d at 540. The Sixth Circuit has followed other courts that have held that "the size of a potential class and the need to review individual files to identify its members are not reasons to deny class certification." *Id.* (citing *In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 145 (2d Cir. 2001)*, abrogated by In re Initial Pub. Offerings Sec. Litig.,* 471 F.3d 24 (2d Cir. 2006), (holding that the sheer size of a class and the concomitant size of liability "alone cannot defeat an otherwise proper certification"); *cf. Bateman v. Am. Multi-Cinema, Inc.,* 623 F.3d 708, 722 (9th Cir. 2010) (holding that if the size of the defendant's potential liability alone was a sufficient reason to deny class certification, "the very purpose of Rule 23(b)(3)—'to allow integration of numerous small individual claims into a single powerful unit'—would be substantially undermined")). Humana's argument that it is not feasible to review their own notes fails.

Humana's argument that predominance is defeated because questions of consent would require interviewing every potential class member also fails as the Court can use affidavits and sworn claim forms to determine membership. The use of affidavits as a mechanism for establishing class membership has been approved by several courts. *Lyngaas v. Curaden AG*, 436 F. Supp. 3d 1019, 1023–25 (E.D. Mich. 2020), *aff'd,* 992 F.3d 412 (6th Cir. 2021). A district court has "discretion to allow class members to identify themselves with their own testimony and to establish mechanisms to test those affidavits as needed." *Id*. (citing *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 669 (7th Cir. 2015); *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1131 (9th Cir. 2017) ("At the claims administration stage, parties have long relied on claim administrators, various

auditing processes, sampling for fraud detection, follow-up notices to explain the claims process, and other techniques tailored by the parties and the court' to validate claims."). In fact, claim forms and affidavits can be distributed widely and are not confined to likely class members, often "notices of settlement are published nationally and claim forms are made generally available to the public*." Low v. Trump Univ., LLC,* 246 F. Supp. 3d 1295, 1311 (S.D. Cal. 2017), *aff'd*, 881 F.3d 1111 (9th Cir. 2018) (approving the publication of settlement notice in the national edition of USA Today and the posting of all settlement-related documents on the settlement website."). Here, Humana's CGX database and the expert wrong notice reports provide a narrow and well-defined starting point of likely class members that the parties can use to send claim forms and affidavits. Under this framework, class membership determinations would be premised not only on claimants' claim forms and affidavits, but on Humana's own data and wrong number reports, a common and administratively feasible framework for class notice. *Lyngaas*, 436 F. Supp. 3d at 1024. Affidavits can be used to remove those individuals who consented to Humana's calls, defeating Humana's predominance arguments.

*ii. Factual and Methodological Objections*

Humana again raises several objections to the data and methodology proposed by Verkhovskaya, arguing that these flaws show that individual questions predominate. First, Humana argues that Verkhovskaya's use of phone numbers in a second database (hCAT), confirm that individual questions predominate because the numbers do not match up to 29% of the time. [DE 147 at 2661]. Second, Humana contends that trying to figure out whether an attempted call was delivered raises individual questions. [*Id*. at 2662]. Third, Humana again argues that the reverse append process proposed by Verkhovskaya is unreliable and raises individual questions.

None of these arguments are availing. First, the Court has already addressed the reliability of Verkhovskaya's factual basis and methodology in detail. [DE 181]. The Court has specifically addressed the reverse append process as well as its failure to identify Elliot and the supposed unreliability of Lexis and other databases. [*Id*. at 5464, 5470]. The Court incorporates its answer to these objections here and will not address them further. Second, these factual questions can be addressed with careful review of data and sworn affidavits to determine class membership that the court outlined above. *see supra* at 20-21.

Humana argues that the use of claims forms cannot resolve these issues as it has a due process right to call each of these individuals at trial for questioning. [DE 147 at 2662]. However, as previously discussed, sworn attestations are common in certifying class actions, and "even if an affidavit contains a false claim," due process rights are protected "so long as the defendant is given a fair opportunity to challenge the claim to class membership and to contest the amount owed each claimant during the claims administration process." *Lyngaas*, 436 F. Supp. 3d at 1023–25 (citing *Mullins*, 795 F.3d at 671). Verkhovskaya's opinion laid out methods by which the parties could review and challenge potential class members at the notice stage; this satisfies due process.

Humana further argues that affidavits cannot be relied on to support class certification as the ability of potential class members to remember the calls is in question given that many patients are elderly, sick, or intellectually disabled. *Carrera v. Bayer Corp*., 727 F.3d 300 (3d Cir. 2013). This argument fails. The Sixth Circuit has firmly declined to follow the holding in *Carrera* as declining affidavits because of potential issues with recollection would preclude numerous class actions, including most that deal with small scale consumer purchases. *Rikos v. Procter & Gamble Co*., 799 F.3d 497, 525 (6th Cir. 2015) ("We see no reason to follow *Carrera*, particularly given the strong criticism it has attracted from other courts."). The Court will not reject a generally

accepted practice for class certification based on speculative memory problems in direct conflict with Sixth Circuit caselaw.

The Court finds that questions of consent do not rise to the level of predominance over common questions. If individualized inquiries into consent "threaten to swamp common questions," once the certification process begins, or other grounds for decertification arise, the Court can always address the issue at that time. *Bridge v. Credit One Fin.*, 294 F. Supp. 3d 1019, 1038 (D. Nev. 2018). Given the class definition and available tools for class notice and determination, common questions predominate.

*B. Superiority*

Rule 23(b)(3) requires that the proposed "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court considers these factors to determine superiority:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

First, the members of the class have no interest in individually controlling the prosecution of their claims as none of brought independent claims forward. In fact, individual claims might be abandoned given the relatively low maximum statutory damages of $1,500 per claim set by the TCPA. 47 U.S.C. § 227(b)(3). *See Zinser v. Accufix Rsch. Inst., Inc.,* 253 F.3d 1180, 1190 (9th Cir.), *opinion amended on denial of reh'g,* 273 F.3d 1266 (9th Cir. 2001) ("Where damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action."). Second, the Court is unaware of any other lawsuits in this district in which any

potential class members have asserted similar claims against Humana, or that any other forum is more desirable or appropriate than this District. Third, deciding common issues such as whether Humana was using pre-recorded calls to contact noncustomers would "both reduce the range of issues and promote judicial economy" compared to individual lawsuits. *Whitlock*, 2012 WL 3274973 at *13 (quoting *Dodge v. Cnty. of Orange*, 226 F.R.D. 177, 184 (S.D.N.Y. 2005)). Finally, although there are inherent difficulties in managing a class action, including here where an affidavit or claim form would be beneficial in confirming class members, such difficulties do not render class action inappropriate. The factors support certification.

Humana argues that a class action is not superior because "meritorious individual claims," such as TCPA complaints, "might be resolved in small claims courts." *Jeffrey Katz Chiropratic, Inc. v. Diamond Respiratory Care, Inc.*, 340 F.R.D. 383, 389 (N.D. Cal. 2021). But the Sixth Circuit has recognized benefits of class treatment for TCPA claims that outweigh the convenience small claims courts, such as holding "businesses accountable when smaller recovery values provide fewer incentives for solo claims." *See* S*andusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc*., 863 F.3d 460, 473 (6th Cir. 2017), a*s corrected on denial of reh'g en banc* (Sept. 1, 2017). The Sixth Circuit has previously upheld superiority of class actions for TCPA claims because "[t]he denial of a plaintiff class sometimes defeats the case as a practical matter because the stakes are too small and the litigations costs are too high for the individual plaintiff to go forward." *In re Delta Air Lines*, 310 F.3d 953 at 957 (6th Cir. 2002). This defeats Humana's argument and Rule 23(b)(3)'s superiority requirement is met.

*C. Class Definition and Ascertainability*

"Although not specifically mentioned in [Rule 23], the definition of the class is an essential prerequisite to maintaining a class action." *Adams v. Fed. Materials Co.,* 2006 WL 3772065 at *3

(W.D.Ky. 2006) (quoting *Gevedon v. Purdue Pharma,* 212 F.R.D. 333, 335 (E.D. Ky. 2002)); *see also Bentley v. Honeywell Int'l, Inc.,* 223 F.R.D. 471, 477 (S.D. Ohio 2004) ("Before delving into the 'rigorous analysis' required by Rule 23, a court first should consider whether a precisely defined class exists and whether the named plaintiffs are members of the proposed class"). This includes the obligation to create a new definition *sua sponte* if the proposals are not adequate or accurate. *See Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) ("[C]ourts must be vigilant to ensure that a certified class is properly constituted. More to the point, district courts have broad discretion to modify class definitions"); *see, e.g., Schorsch v. Hewlett–Packard Co.*, 417 F.3d 748, 750 (7th Cir. 2005) ("Litigants and judges regularly modify class definitions"); *In re Monumental Life Ins.,* 365 F.3d 408, 414 (5th Cir. 2004) ("District courts are permitted to limit or modify class definitions to provide the necessary precision.").

Finally, "[t]he Sixth Circuit has held that 'Rule 23(b)(3) classes must also meet an implied ascertainability requirement.'" *Costello v. Mountain Laurel Assurance Co*., No. 2:22-CV-35, 2024 WL 239849, at *11 (E.D. Tenn. Jan. 22, 2024) (quoting *Hicks v. State Farm Fire & Cas. Co*., 965 F.3d 452, 464 (6th Cir. 2020)); *see also In re Sonic Corp.,* No. 20-0305, 2021 WL 6694843, at *2 (6th Cir. Aug. 24, 2021). "A class is ascertainable if the class definition is 'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class.'" *Costello*, 2024 WL 239849, at *11 (quoting *Hicks*, 965 F.3d at 464); *see also Tarrify Properties, LLC v. Cuyahoga Cnty., Ohio*, 37 F.4th 1101, 1106 (6th Cir. 2022) (defining ascertainability as "an implied requirement that the putative class members can be readily identified based on the class definition" (citation omitted)).

Elliot proposes a class definition that consists of

> All persons or entities throughout the United States (1) to whom Humana placed, or caused to be placed, a call (2) directed to a number assigned to a cellular

> telephone service, but not assigned to a current account holder of Humana (3) in connection with which Humana used an artificial or prerecorded voice, (4) four years from the filing of this action through the date of class certification.

[DE 114-1 at 1724]. To determine ascertainability the Court must determine if there is an administratively feasible process by which the court can determine if an individual is part of the proposed class. *Costello*, 2024 WL 239849, at *11. To provide notice to potential class members Verkhovskaya proposes:

> (1) Taking a list of phone numbers—identified by Humana's own records—that received prerecorded calls from Humana but had told Humana that it had the wrong number;
> (2) Confirming whether each number is assigned to a cellular telephone using third-party data processors to identify the names of all users associated with those phone numbers;
> (3) Employing a historical reverse lookup process to retrieve related data associated with those users/phone numbers;
> (4) Obtaining telephone carrier data to filter subscriber information (such as names, addresses, email addresses, subscription dates, and other plan-related information);
> (5) Cross-referencing reverse lookup data against bulk telephone carrier data, obtained by carrier subpoena, to identify discrepancies; and
> (6) Implementing a notice campaign using mail and email address information.

[DE 112-1, ¶ 8, 43–67, 68–78, 84–101].

Humana argues that the proposed class is not ascertainable because: (1) Elliot does not state whether "persons" from the class definition must be named subscribers of the phone numbers; (2) Elliot relies on the CGX database to prove a number went to someone without a Humana account; and (3) Elliot has not proved that he has a non-individualized way to show when Humana "used an artificial or prerecorded voice." [DE 147 at 2668-9].

As to Humana's first argument, the Court finds "noncustomers" of Humana to be sufficient and ascertainable for the class definition. Humana misreads the holding of *Warnick v. Dish Network LLC*, 301 F.R.D. 551, 559 (D. Colo. 2014). The Plaintiff in *Warnick* ignored the prior suggestion of the court and proposed an overbroad class definition requiring that "all of DISH call

records and all of its 25 million customer accounts be reviewed to find potential class members." *Id*. at 558. The Court found this massive undertaking to not be administratively feasible but stated that a class based on a "TCPA Tracker Dataset of 27,000+ individuals" might be a manageable class. *Id*. at 557. The class did not rely on a narrowed list of data as is the case here, and included both customers and non-customers, all of which led to the court's final determination of feasibility. *Id*. To the extent there is concern that family members or friends who consented to receive calls on behalf of account holders could be included in the class, the class definition can be amended to avoid this problem. *Powers,* 501 F.3d at 619. The Court will modify the definition to calls "directed to a number assigned to a cellular telephone service, but not assigned to a current account holder of Humana or person who consented to receive calls on behalf of an account holder."

Humana's second and third arguments make similar objections to those raised in predominance and attack the reliability of their own data for certification. Verkhovskaya uses Humana's own data, compiled by an employee, to determine which numbers received calls marked by Humana as "wrong number." [DE 181]. The Court has already addressed the reliability and admissibility of the underlying data used by Verkhovskaya and found it sufficiently reliable. [*Id*]. The Court sees no reason why review of Humana's own data and use of claim forms and affidavits cannot reliably ascertain the class and determine who qualifies as a class member. *Lyngaas v. Curaden AG*, 436 F. Supp. 3d 1019, 1023–25 (E.D. Mich. 2020), *aff'd,* 992 F.3d 412 (6th Cir. 2021). The process for class identification is administratively feasible and effective. The class definition is approved as amended by the Court as noted above, and the class is ascertainable.

## III. CONCLUSION

For the reasons set forth above, and the Court being otherwise sufficiently advised**, IT IS ORDERED** that

1. Humana's Motion to File Excess Pages [DE 155] is **GRANTED** and the proposed 35-page Response in Opposition to Plaintiff's Motion to Certify a Class, excluding the signature block and certificate of service, is accepted by the Court.
2. Humana Motion to File Sur-Reply [DE 163] is **GRANTED as set forth above**.
3. Elliot's Motion to Certify Class [DE 114] is **GRANTED but with the class definition modified by the Court in this order.** The Complaint shall be maintained as a class action under Fed. R. Civ. P. 23(b)(3) by the Plaintiff, David Elliot, as Class Representative, and Plaintiff's Counsel, James S. Wertheim, Michael C. Hartmere, and Brittany N. Clark, as Class Counsel on behalf of the class defined as:

> All persons or entities throughout the United States (1) to whom Humana placed, or caused to be placed, a call (2) directed to a number assigned to a cellular telephone service, but not assigned to a current account holder of Humana or person who consented to receive calls on behalf of an account holder (3) in connection with which Humana used an artificial or prerecorded voice, (4) four years from the filing of this action through the date of class certification.

4. Plaintiff's counsel shall file a proposed class notification form which complies with Fed. R. Civ. P. 23(c), together with a statement describing the method by which the notice will be provided to class members and a list of persons to whom the notice will be sent. The deadline for this submission will be discussed and set at the pretrial conference.



Rebecca Grady Jennings, District Judge
United States District Court

April 9, 2025