**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 9:24-cv-80702-RLR**

RICHARD MAROUS, individually and on behalf of all others similarly situated,

Plaintiff,

v.

NOW OPTICS HOLDINGS, LLC d/b/a STANTON OPTICAL,

Defendant.

_______________________________________/

**CLASS ACTION**

**JURY TRIAL DEMANDED**

**SECOND AMENDED CLASS ACTION COMPLAINT**[1]

Plaintiff Richard Marous brings this class action against Defendant Now Optics Holdings, LLC d/b/a Stanton Optical, and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

**NATURE OF THE ACTION**

1. This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. (the "TCPA").

2. To promote its goods and services, Defendant sent millions of text messages to advertise the rebranding of its stores and to encourage recipients to purchase its goods and services.

3. Defendant sent text messages to every person that had ever made a purchase at any of its 150 stores around the country. It did so without removing telephone numbers listed on the National Do-Not-Call Registry, determining whether the individuals it was texting had consented

[1] Filed with Defendant's written consent pursuant to Federal Rule of Civil Procedure 15(a)(2).

to receive text messages, or checking whether the consumers had an existing business relationship with Defendant.

4. Through this action, Plaintiff seeks injunctive relief to halt Defendant's unlawful conduct which has resulted in intrusion into the peace and quiet in a realm that is private and personal to Plaintiff and the Class members. Plaintiff also seeks statutory damages on behalf of himself and members of the Class, and any other available legal or equitable remedies.

## PARTIES

5. Plaintiff is, and at all times relevant hereto was, a citizen and resident of Alachua County, Florida.

6. Plaintiff is, and at all times relevant hereto was, an individual and a called party under the TCPA in that Plaintiff was the regular user of cellular telephone number that received Defendant's unwanted text messages.

7. Defendant is, and at all times relevant hereto was, a corporation with its principal place of business in Palm Beach County, Florida.

## JURISDICTION AND VENUE

8. This Court has federal question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331.

9. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of Defendant. Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each text message in violation of the TCPA, which, when aggregated among a proposed class numbering in the thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

10. Defendant is subject to personal jurisdiction in this Court because it is headquartered in this jurisdiction.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction, and because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTS

12. Starting in September 2023, Defendant rebranded its 150 My Eyelab locations to the Stanton Optical brand name.

13. As part of the rebranding effort, Defendant launched a text messaging campaign that was internally referred to as the "transitional" rebranding campaign.

14. The campaign consisted of four (4) text message blasts with the following dates, campaign names, and text message content:

> (1) **10/9/2023** – "**Welcome SMS**": ATTN: Your My Eyelab is converting to its sister brand: Stanton Optical! Same location & team, with faster service & better value. Questions? Call 800-305-9577
>
> (2) **10/16/2023** – "**Launch Day SMS**": It's Official! Your My Eyelab store has converted to its sister brand: Stanton Optical. Book your eye exam today: https://bit.ly/3LKLOIN 'STOP' to opt-out
>
> (3) **11/2/2023** – "**Transitional Reminder SMS**": Final Notice: My Eyelab is now Stanton Optical, its sister brand under the same company. Book your eye exam today: https://bit.ly/40mUNGm 'STOP' to opt-out
>
> (4) **1/17/2024** – "**Transitional Remarketing**": REMINDER: My Eyelab is Now STANTON OPTICAL! Same-Day Eye Exams and Walk-ins Available. Book Eye Exam Today: https://bit.ly/3vux7nZ 'STOP' to Opt-out

15. Each text message blast consisted of over 600,000 text messages to as many unique telephone numbers. In other words, over 2.4 million text messages were sent by Defendant to approximately 600,000 potential Class Members.

16. The rebranding text messages were sent to everyone within Defendant's database, and nothing was done to identify individuals that were due for an eye exam or whether they were current customers; Defendant instead text messaged everyone that had ever made a purchase at one of Defendant's locations at any point in time.

17. All of the rebranding text messages were sent by Defendant's Marketing Department utilizing the Emarsys text messaging software.

18. Defendant divided the rebranding campaign into 8 phases, which consisted of grouping approximately 150 My Eyelab stores by geographic location.

19. The text messages sent as part of all 8 phases of the rebranding campaign consisted of the same messages as the ones sent to Plaintiff; i.e., messages advertising the rebranding and availability of Defendant's services and eye exams.

20. Plaintiff was grouped into phase three of the campaign based on his prior visit to a My Eyelab location in Gainesville, Florida.

21. Notably, while three of the text message blasts refer to scheduling an eye exam, nothing was done to determine whether the recipients were in fact due for an exam.

22. Moreover, Defendant did not remove telephone numbers listed on the National Do-Not-Call Registry before sending the rebranding campaign text messages.

23. Defendant's text message records reflect four (4) successfully delivered rebranding text messages to Plaintiff's cellular telephone on the following dates:

- **10/9/2023**: ATTN: Your My Eyelab is converting to its sister brand: Stanton Optical! Same location & team, with faster service & better value. Questions? Call 800-305-9577

- **10/16/2023**: It's Official! Your My Eyelab store has converted to its sister brand: Stanton Optical. Book your eye exam today: https://bit.ly/3LKLOIN 'STOP' to opt-out

- **11/2/2023**: Final Notice: My Eyelab is now Stanton Optical, its sister brand under the same company. Book your eye exam today: https://bit.ly/40mUNGm ‘STOP’ to opt-out

- **1/17/2024**: REMINDER: My Eyelab is Now STANTON OPTICAL! Same-Day Eye Exams and Walk-ins Available. Book Eye Exam Today: https://bit.ly/3vux7nZ 'STOP' to Opt-out.

24. Defendant maintains records of each potential Class Member that was text messaged, including, but not limited to, (1) whether each potential Class Member opted in to receive text messages from Defendant, reflected by a “true” or “1” designation for yes, and “null” or “false” for no within the “PatientMobileSMSOptin” column; (2) the date and time each text message was sent, reflected in the “SentDate” column; (3) the content of the text message sent on a specific date, reflected in the “Message” column; and (4) the date each putative Class Member last made a purchase at one of Defendant’s stores, including the location of the purchase, reflected within the “PatientRecentPurchaseDate” and “PatientRecentPurchaseStoreName” columns.

25. Defendant also maintains customer history records reflecting the dates of an inquiries made by customers.

26. Defendant knows whether a telephone number that was text messaged was a cellular telephone number because the Emarsys software utilized to send the messages will reflect a “delivered” status as opposed to “undelivered” for landlines.

27. The purpose of Defendant’s text messages was to advertise, promote, and/or market Defendant’s property, goods, and/or services. The text messages were an attempt to solicit Plaintiff’s and Class Members’ business and patronage.

28. Specifically, the purpose of Defendant’s text messages was to encourage Plaintiff and the Class Members to schedule a visit with Defendant for an eye appointment at one of Defendant’s locations.

29. Indeed, with the exception of the first message, all of the messages sent by Defendant included a hyperlink to Defendant's website where Defendant promotes the availability of its services and the availability of eye exam appointments.

30. Had Plaintiff or any Class Member responded to Defendant's text solicitations by scheduling an appointment, Defendant would have charged them for the visit and/or for the purchase of eyeglasses, contact lenses, etc.

31. Plaintiff did not have an ongoing relationship with Defendant and did not require Defendant's services or products. Rather, Defendant was attempting to sell a new service/products for which Plaintiff would have to pay.

32. All of Defendant's text messages were a pretext for the sale of goods or services and, Defendant sent the texts to encourage Plaintiff and the Class Members to purchase Defendant's services and products as part of its rebranding efforts.

33. Defendant's text messages were not purely informational, and Defendant stood to gain financially from transactions with Plaintiff and the Class Members had they acted on the messages.

34. Plaintiff is the regular user of the cellular telephone number that received the above solicitations.

35. Plaintiff registered the cellular telephone number on the National Do-Not-Call Registry on January 7, 2021.

36. Plaintiff utilizes the cellular telephone number that received Defendant's text messages for personal purposes and the number is Plaintiff's residential telephone line and primary means of reaching Plaintiff at home.

37. Plaintiff does not have a business relationship with Defendant. Plaintiff last visited a My Eyelab location on October 16, 2021 and has made no inquiries to Defendant since that date.

38. Plaintiff never signed any type of written authorization permitting or allowing Defendant to send him text message solicitations.

39. Defendant's unlawful conduct resulted in intrusion into the peace and quiet in a realm that is private and personal to Plaintiff and the Class members.

## CLASS ALLEGATIONS

### PROPOSED CLASS

40. Plaintiff brings this lawsuit as a class action on behalf of Plaintiff individually and on behalf of all other similarly situated persons as a class action pursuant to Federal Rule of Civil Procedure 23. The Class that Plaintiff seeks to represent are defined as:

> **All persons in the United States who, on or about October 9, 2023, October 16, 2023, November 2, 2023, and/or January 17, 2024, (1) received two or more text messages; (2) where the person's cellular telephone number had been listed on the National Do Not Call Registry for more than thirty days prior to receipt of the first text message; (3) regarding the rebranding, conversion and/or transition of My Eyelab to Stanton Optical and/or the availability of eye exam appointments; and for whom Defendant's business records indicate that the person (4) did not opt in to receive text messages; (5) had not made a purchase from Defendant during the eighteen months immediately preceding the date of the second text message; and (6) had not made an inquiry regarding to Defendant regarding a product or service during the three months immediately preceding the date of the second text message.**

41. Defendant and its employees or agents are excluded from the Class.

### NUMEROSITY

42. Upon information and belief, Defendant has placed violative text message calls to telephone numbers belonging to at least 50 persons. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

43. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

COMMON QUESTIONS OF LAW AND FACT

44. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

(a) Whether Defendant initiated solicitation text messages to Plaintiff and the Class members who had registered their numbers on the National Do Not Call Registry;

(b) Whether Defendant is liable for damages, and the amount of such damages.

45. The common questions in this case are capable of having common answers, and Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

TYPICALITY

46. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

PROTECTING THE INTERESTS OF THE CLASS MEMBERS

47. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

SUPERIORITY

48. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual

lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

49. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**Violations of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d)**
**(On Behalf of Plaintiff and the Class)**

50. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 49 as if fully set forth herein.

51. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides in pertinent part that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

52. Per 47 C.F.R. § 64.1200(e), § 64.1200(c) is "applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

53. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

54. Defendants violated 47 C.F.R. § 64.1200(c) by initiating telephone solicitations to telephone subscribers such as Plaintiff and the Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

55. Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff and Class members received more than one message in a 12-month period from Defendants in violation of 47 C.F.R. § 64.1200.

56. As a result of Defendants' conduct as alleged herein, Plaintiff and the Class members suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

57. Plaintiff requests for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above, and appointing Plaintiff as the representative of the Class and Plaintiff's counsel as Class Counsel;

b) An award of statutory damages for Plaintiff and each member of the Class as applicable under the TCPA;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to comply with 47 C.F.R. § 64.1200(d) by (1) maintaining the required written policies; (2) providing training to their personnel engaged in telemarketing; and (3) maintaining a do-not-call list

e) Such further and other relief as the Court deems necessary.

**JURY DEMAND**

Plaintiff, individually and on behalf of the Class, hereby demands a trial by jury.

DATED: June 9, 2025

Respectfully submitted,

**DAPEER LAW, P.A.**
Rachel Dapeer, Esq.
Florida Bar No. 108039
20900 NE 30th Avenue, Ste. 417
Email: rachel@dapeer.com
Telephone: 305-610-5223

**HIRALDO P.A.**

*/s/ Manuel S. Hiraldo*
Manuel S. Hiraldo, Esq.
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954.400.4713